# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BLAIR IMANI, et al**
            **Plaintiffs**

**CIVIL ACTION No.:  3:17-cv-00439**

**VERSUS**

**JUDGE:  JOHN W. DEGRAVELLES**

**MAGISTRATE JUDGE:**
**ERIN WILDER-DOOMES**

**CITY OF BATON ROUGE, et al**
        **Defendants**

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO STRIKE

**MAY IT PLEASE THE COURT:**

Defendant, Sid J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux") and AIX Group, doing business as NOVA CASUALTY COMPANY ("Nova") move this Honorable Court to dismiss Plaintiffs' First Amended Complaint pursuant to FRCP Rule 12(b)(6) for failure to state a claim upon which relief can be granted and in the alternative to strike Plaintiffs' First Amended Complaint or certain parts thereof for the reasons set forth below. Plaintiffs allege that Nova is an insurance company which provides insurance to the East Baton Rouge Sheriff's Office.[1] Plaintiffs are bringing claims against Nova under the Louisiana Direct Action Statute, La. R.S. 22:655(B), to recover any and all sums Nova may be obligated to pay on behalf of its' insured, Sheriff Gautreaux.[2] Therefore, to the extent that any claims against Sheriff Gautreaux are dismissed, these claims should also be dismissed against Nova.

## I.     Preliminary Statement

---

[1] Rec. Doc. 5 Paragraph 61
[2] Rec. Doc. 5 Paragraphs 337-340

On July 9, 2017, plaintiffs Blair Imani, Akeem Muhammad, Raae Pollard, Sami Nichols, Tammy Cheney, Alexus Cheney, Victor Onuoha, Antonio Castanon Luna, Nadia Salazar Sandi, Karen Savage, Cherri Foytin, Dr. Daniel Liebeskind, Alisha Feldman, Finn Phoenix, and Leah Fishbein ("Plaintiffs") filed their original Complaint.[3] On July 21, 2017 Plaintiffs filed a First Amended Complaint.[4] In general, an amended complaint supersedes the original complaint replacing it in full and rendering it without effect.[5] Therefore, Sheriff Gautreaux is bringing this Motion to Dismiss and in the Alternative to Strike the First Amended Complaint, which supersedes the original complaint and replaces it in full.

Plaintiffs are bringing claims against Sheriff Gautreaux and other law enforcement defendants related to Plaintiffs' arrests during protests held on Sunday, July 10, 2016 that arose after the shooting death of Alton Sterling by Baton Rouge City Police Department officers.[6] Plaintiffs were charged with resisting arrest and either simple obstruction of a highway of commerce (La. R.S. 14:97) or obstructing public passages (La. R.S. 14:100.1).[7] Plaintiffs bring their action under 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of their First, Fourth, and Fourteenth Amendment rights as well as supplemental state law claims.[8]

Plaintiffs' First Amended Complaint should be dismissed and/or stricken because the 83 page, 340 paragraph complaint, with its attached 64 pages of exhibits, and over one-hundred

---

[3] Rec. Doc. 1
[4] Rec. Doc. 5
[5] *Wilson v. First Houston Inv. Corp.,* 566 F. 2d 1235, 1238 (5th Cir. 1978)
[6] Plaintiffs name the following **d**efendants in their First Amended Complaint: City of Baton Rouge, Parish of East Baton Rouge, Mayor Kip Holden, Sheriff Sid J. Gautreaux, III, Baton Rouge Chief of Police Carl Dabadie, Louisiana State Police, former Superintendent of Louisiana State Police, Mike Edmonson, current Superintendent of Louisiana State Police, Kevin Reeves, Sheriff Mike Cazes as Southern District Coordinator of the Louisiana Sheriff's Association Task Force and Homeland Security, Louisiana Sheriff's Association, several named police officers as well as John Doe law enforcement officers.
[7] Rec. Doc. 5 Page 6 Table 1
[8] Rec. Doc. 5 Paragraph 17

footnotes incorporating videos, affidavits and articles violates the mandate of Fed. R. Civ. Rule 8(a)(2) that a properly pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, Plaintiffs violate the mandate of Rule 8(d)(1) that pleadings be "simple, concise and direct." In the alternative, this Court should strike the exhibits, figures, and all material purportedly incorporated by reference in a footnote. These materials are immaterial, prejudicial and not the type of documentary evidence which Fed. R. Civ. 10 intended to be incorporated into a complaint.

In the event that this Court does not dismiss or strike Plaintiffs' entire First Amended Complaint for failure to comply with Rule 8, this Court should dismiss Plaintiffs' claims against Sheriff Gautreaux and Nova for failure to state a claim for which relief can be granted. Plaintiffs fail to allege any facts as to Sheriff Gautreaux's involvement in the arrests or detention of Plaintiffs. Therefore, Sheriff Gautreaux is entitled to qualified immunity, and Plaintiffs' Section 1983 claims against Sheriff Gautreaux in his individual capacity should be dismissed.  Further, Plaintiffs fail to allege a claim against Sheriff Gautreaux in his official capacity because they fail to allege facts to show a pattern of improper conduct related to handling protests by East Baton Rouge Parish Sheriff's Office ("EBRSO") deputies in order to support a claim that Plaintiffs' rights were violated as a result of *de facto* policies or customs.  Similarly, Plaintiffs have failed to allege a failure to train claim against Sheriff Gautreaux in his official capacity because they have not alleged a pattern of failure to train deputies resulting in similar alleged constitutional violations. Further, Plaintiffs fail to allege facts to state a Section 1985(3) conspiracy claim because they have not alleged specific facts relating to Sheriff Gautreaux entering into an agreement. They have not alleged that Sheriff Gautreaux agreed to deprive Plaintiffs of equal

protection of the laws and have not alleged that Sheriff Gautreaux was motivated by racial animus. Plaintiff, Alexus Cheney's claim for violation of the Louisiana Children's Code should be dismissed because under Louisiana law it is proper for a 17-year-old to be housed in an adult prison such as the East Baton Rouge Parish Prison. Further, Plaintiffs' state law claims against Sheriff Gautreaux, independent of any vicarious liability claims, should be dismissed because Plaintiffs have not alleged any individual involvement by Sheriff Gautreaux in the arrests or detention of Plaintiffs.   Therefore, Plaintiffs' claims against Sheriff Gautreaux and Nova, the alleged insurer of the East Baton Rouge Sheriff's Office, should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim for relief that is plausible on its face.

## II.      Law and Argument

### A.  Applicable Legal Standard

"Dismissal under Rule 12(b)(6) is appropriate when the plaintiff has failed to allege enough facts to state a claim to relief that is plausible on its face and fails to raise a right to relief above the speculative level."[9]  "A legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action."[10]  In order to avoid dismissal, for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations.[11]

A complaint fails to state a claim on which relief may be granted when the plaintiff does not plead enough facts to state a claim to relief that is plausible on its face.  The United States Supreme Court explained as follows:

---

[9] *National Bi-Weekly Admin. Inc. v. Belo Corp.,* 512 F. 3d 137, 140 (5th Cir. 2007)
[10] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)
[11] *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 667 F. 2d 1045 (5th Cir. 1982)

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement" but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and entitlement to relief.[12]

Further, pursuant to Fed. R. Civ. Rule 8(a)(2) a properly pled complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the … claim is and the grounds upon which it rests." [13] Rule 8(d)(1) clarifies that pleadings must be "simple, concise and direct." The notice pleading requirements of Rule 8(a) can be violated not only "when a pleading says too little," but also "when a pleading says too much."[14] The court may dismiss a complaint for failure to comply with Rule 8.[15]

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

### B.  Plaintiffs' Amended Complaint should be Dismissed and/or Stricken

Rule 8 serves the important purpose of requiring plaintiffs to state their claims intelligibly so as to inform the defendants of the legal claims being asserted. The Court in *McHenry v. Renne,* 84 F. 3d 1172, 1180 (9th Cir. 1996) explained as follows:

---

[12] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)
[13] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), quoting *Conley v. Gibson,* 355 U.S. 41, 78 S. Ct. 99 (1957).
[14] *Knapp v. Hogan,* 738 F. 3d 1106, 1109 (9th Cir. 2013) (citations omitted)
[15] *Mustafanos v. Nevada,* 2017 WL 991214 (D. Nev. 2017) citing *Simmons v. Abruzzo,* 49 F. 3d 83, 86 (2nd Cir. 1995); *Long v. JP Morgan Chase Bank Nat. Ass'n,* 848 F. Supp. 2d 1166, 1173 (D. Haw. 2012)

> Something labeled a complaint but written more as a press release,
> prolix in evidentiary detail, yet without simplicity, conciseness and
> clarity as to whom plaintiffs are suing for what wrongs, fails to
> perform the essential functions of a complaint.

In *Gordon v. Green,* 602 F. 2d 743, 746 (5th Cir. 1979) the Fifth Circuit directed the District Court to dismiss a verbose and scandalous pleading of over 4,000 pages stating that the purpose of Rule 8 is 'to [e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity." The Court in *Gordon* noted that there are numerous complaints that have been dismissed as being contrary to the letter and spirit of Rule 8 citing several cases including: *In re Carrigan v. California State Legislature,* 263 F. 2d 560 (9th Cir. 1959) cert denied 359 U.S. 980, 79 S. Ct. 901, 3 L. Ed. 2d 929 (upheld dismissal of complaint totaling 186 pages filled with hearsay statements, medical reports, and other extraneous material.); *Johnson v. Hunger,* 266 F. Supp. 590 (S.D.N.Y. 1967)(dismissing complaint as "a confusing and foggy mixture of evidentiary statements, arguments and conclusory matters."); *Benner v. Philadelphia Musical Society, Local 77, of the American Federations of Musicians,* 32 F.R.D. 197 (E.D. Penn. 1963) (dismissing without prejudice a 26 page complaint filled with "prolix, argumentative and conclusory paragraphs); *Martin v. Hunt,* 29 F.R.D. 14 (D. Mass. 1961)(dismissing complaint with 57 paragraphs containing "scandalous and vituperative" material).

"As opposed to the 'short and plain statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count "incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions."[16] Another characteristic of shotgun pleadings is that they fail to distinguish between the actions of the named

---

[16] *Copeland v. Axion Mortgage Group, LLC,* 2016 WL 4250431*4(SD. MS 2016) (citations omitted)

defendants.[17] In *Sahlein v. Red Oak Captial, Inc.,* 2014 WL 3046477 at *4 (N.D. Miss. July 3, 2014) the court dismissed a "shotgun pleading" when "numerous paragraphs in the complaint attribute discrete actions, such as the sending of a letter, or the public recording of a document, to all or multiple defendants without explaining the basis for such grouping or distinguishing between the relevant conduct of the named Defendants." The Fifth Circuit specifically discourages shotgun pleadings "where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick."[18] Shotgun complaints are subject to dismissal pursuant to FRCP Rule 12(b)(6).[19]

Plaintiffs' First Amended Complaint consists of 83 pages, 340 numbered paragraphs, and 106 footnotes, including and incorporating in the complaint links to numerous newspaper articles and videos, and affidavits of individuals other than Plaintiffs who attended protests related to the death of Alton Sterling filed in another matter. Enclosed in the body of the complaint are 44 (forty-four) "figures" which consist of photographs, video screenshots, and drawings. In addition, Plaintiffs attached five exhibits (64 pages total) to the complaint: Exhibit A, Letters from Michigan State Police and the New Mexico State Police to the Baton Rouge Police Department sent in 2005; Exhibit B, Photographic Timeline of Police Storming Ms. Batiste's Lawn; Exhibit C, Affidavits of Probable Cause; Exhibit D, ACLU guide entitled "Know Your Rights: Demonstrations and Protests; and Exhibit E, List of Arrestees arrested Friday, Saturday and Sunday from an article.

---

[17] Id
[18] *S. Leasing Partners, Ltd. V. McMullan,* 801 F. 2d 783, 788 (5th Cir. 1986)
[19] *See Paylor v. Hartford Fire Ins. Co.,* 748 F. 3d 1117, 1126-27 (11th Cir. 2014)

Plaintiffs' First Amended Complaint fails to comply with Rule 8's requirement that a properly pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that pleadings must be "simple, concise and direct."[20] Rather, much like the complaint in *Henry* which was dismissed for failure to comply with Rule 8,, Plaintiffs' First Amended Complaint is written more like a press release, with protracted evidentiary detail. It is filled with hearsay statements (news articles, and affidavits from third parties filed in another matter), videos, photos, diagrams and other extraneous material such that it is nearly impossible for the Defendants to ascertain exactly what legal and factual claims are being asserted against them.

Further, Plaintiffs' First Amended Complaint is an improper "shot gun" pleading because it names 24 defendants (not including "John Doe" defendants and insurers) without distinguishing between the actions of the named defendants. For instance, Plaintiffs allege that "Defendants lifted Finn off the ground by their neck, and then put them on the ground with a knee to the back."[21] However, clearly not all of the named Defendants in this case participated in this act. In fact, figure 41 purportedly is a photo of Finn's arrest and there are no EBRSO deputies, much less Sheriff Gautreaux in the photo.[22]  Further, in each count, Plaintiffs fail to distinguish between actions of the named defendants and allege all "Defendants" participated in each distinct act.   Further, Plaintiffs incorporate by reference every one of its numerous allegations into each count. Plaintiffs begin each and every count with the following statement:

---

[20] *See Gordon v. Green,* 602 F. 2d 743, 746 (5th Cir. 1979) and cases cited therein (Court directed the District Court to dismiss a verbose and scandalous pleading of over 4,000 pages stating that the purpose of Rule 8 is 'to [e]liminate prolixity in pleading and to achieve brevity, simplicity, and clarity.")
[21] Rec. Doc. 5 Paragraph 251 and Figure 41
[22] Rec. Doc. 5 Figure 41

"Plaintiff incorporate the allegations in each preceding and following paragraph."[23] Plaintiffs' First Amended Complaint is a shotgun pleading and this Court should dismiss Plaintiffs' First Amended Complaint in its entirety.

In addition, pursuant to Federal Rule of Civil Procedure 12(f) "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "For purposes of ruling on a motion to strike, immaterial matter is defined as that which has no essential or important relationship to the claim for relief, or a statement of unnecessary particulars in connection with that which is material."[24] The allegations must also be prejudicial to the defendant. Prejudice occurs when the challenged pleading or allegation confuses the issues or is so lengthy and complex that it places an undue burden on the responding party.[25]

Motions to strike are generally disfavored because they potentially serve only to delay.[26] However, when "motions to strike remove unnecessary, clutter from the case, they serve to expedite, not delay."[27] "The purpose of this rule is to streamline the pleadings and the litigation and to avoid unnecessary inquiry into immaterial matters."[28] "Accordingly, the Courts have applied Rule 12(f) to dismiss, on motion or sue sponte, and with leave to refile, excessively and burdensomely factual complaints, declining to 'accelerate the function of discovery to the pleadings stages' by requiring a defendant to answer such averments."[29] "Ordinarily only the objectionable portions of the pleading will be stricken. However, when the violation of Rule

---

[23] Rec. Doc. 5 Paragraphs 261, 268, 274, 279,285m 291,299,304,319, 321,326,328,332,336

[24] *Deanv. Gillette,* No. Civ. A. 04-2100 2004 WL 3202867 (D. Kansas 2004)

[25] *Id.*

[26] *Kugler v. Board of Education of the City of Chicago, 2017 WL 3169046 (N.D. Ill. 2017) citing Heller Fin., Inc. v. Powder co,* 883 F. 2d 1286, 1294 (7th Cir 1989)

[27] Id.

[28] *Baytown Christian Fellowship Church v. Underwriters at Lloyd's London,* 2012 WL 3129094, at 1 (S.D. Tex. 2012), citing *McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F. Supp. 393, 401 (E.D. Pa. 2002)

[29] *Brejcak v. County of Bucks,* No. civ. A. 03-4688, 2004 WL 377675 at*3 (E.D. Pa. Jan. 28, 2004)

8(e)(1) is such that a great deal of judicial energy would have to be devoted to eliminating the unnecessary matter and restructuring the pleading, the court will often take the easier path of striking the entire pleading and granting leave to replead." *Sefton v. Jew,* 204 F. R.D. 104 (W.D. Tex. 2000) citing 5 Wright & Miller Section 1281, at 522-3.

In this case, Plaintiffs' Amended Complaint is so riddled with redundant, immaterial, and impertinent matter that if allowed, would prejudice the Defendants by placing an undue burden on them to reply, such that the entire complaint should be stricken with leave to allow Plaintiffs to replead.

In the alternative, this Honorable Court should strike all pictures in the body of the Complaint as well as all of the attachments or links identified in footnotes and incorporated in the Complaint (photos, videos, affidavits of third parties filed in other matters and articles) and the exhibits as they are redundant and/or immaterial and prejudicial. The pictures and video links are redundant and/or immaterial to the written allegations and serve no useful purpose in the complaint. Including the pictures and video links is prejudicial to the Defendants because it creates confusion as to exactly what is being alleged and places an undue burden on them to answer.  For example, Figure 4 is a picture of a third party non-plaintiff, Javier Dunn, showing injuries, he allegedly obtained on July 9, 2016 during protests. This figure is clearly immaterial and prejudicial to Defendants. Further, Plaintiffs include numerous photos of themselves allegedly before during and after their arrests. These photos are redundant to the allegations and prejudicial to Defendants.   The videos contain lengthy, unauthenticated footage that is immaterial or redundant and has no place in a complaint. It would be extremely onerous, if not impossible for Defendants to answer the "allegations" contained in the video footage attached to

the Complaint.  The affidavits of third parties filed in other matters are also immaterial to the claims being made by these Plaintiffs, and are prejudicial to the Defendants because it places an undue burden on them to answer.  The newspaper articles are immaterial hearsay and their incorporation into the First Amending Complaints serves no legitimate purpose and is prejudicial to the Defendants because it places an undue burden on them to answer.  Finally, the exhibits attached to the First Amended Complaint are immaterial to the claims being made by Plaintiffs and/or are redundant and thus serve no useful purpose, and are prejudicial to the Defendants because it places an undue burden on them to answer. For example, Exhibits A, letters from Michigan and New Mexico State Police to BRPD in 2005, Exhibit B, an allegedly Photographic Timeline of Police Storming to Ms. Batistes' Lawn, Exhibit C Affidavits of Probable Cause, and Exhibit E, List of Arrestees are redundant to allegations made in the complaint.   Further, Exhibit D, ACLU guide entitled "Know Your Rights: Demonstrations and Protests is immaterial to the claims. The presentation of these items should be saved for the discovery phase of the litigation.

Further, these attachments and items incorporated into the First Amended Complaint are not properly included in Plaintiffs' First Amended Complaint under the Federal Rules of Civil Procedure. The Rules describe pleadings as containing "statements" and "allegations". See FRCP Rules 8 and 9 and such language does not contemplate photographs or other objects.[30] Rule 10, which is titled "Form of Pleadings" addresses exhibits to pleadings as follows: "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FRCP 10(c). Courts that have considered this issue have concluded that the Federal Rules of Civil Procedure do not contemplate the attachment of exhibits, such as photographs, that are not

---

[30] *Nkemakolam v. St. John's Military School,* 876 F. Supp. 2d 1240 (D. Kansas 20102); *Cabot v. Wal-Mart Stores, Inc.* 2012 WL 1378529 at*2-3,7 (D.N.M. April 10, 2012)

written instruments.[31] For instance the Third Circuit has stated: "The case law demonstrates, however, that the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence specifically contracts, notes and other writings on which a party's action or defense is based."[32] The Seventh Circuit stated with respect to a complaint before it as follows: "The newspaper articles, commentaries ad editorial cartoons which Perkins attached to the complaint referencing this 'scandal' are not the type of documentary evidence or 'written instruments' which Fed. R. Civ. P. 10(c) intended to be incorporated into, and made a part of, the complaint."[33]

Thus, this Honorable Court should strike all pictures in the body of the Complaint as well as all of the attachments or links identified in footnotes and incorporated in the Complaint (photos, videos, affidavits of third parties filed in other matters and articles) and the attached exhibits.

### C. Plaintiffs have Failed to State a Section 1983 Claim against Sheriff Gautreaux in his   Individual Capacity and Sheriff Gautreaux is Entitled to Qualified Immunity

In the event that this Court does not dismiss or strike Plaintiffs' entire First Amended Complaint for failure to comply with Rule 8's requirement that a properly pled complaint contain "a short and plain statement" and be "simple, concise and direct", this Court should dismiss Plaintiffs' claims against Sheriff Gautreaux for failure to state a claim for which relief can be granted. Plaintiffs have not alleged sufficient facts to state a Section 1983 claim against Sheriff Gautreaux in his individual capacity that is plausible on its face and he is entitled to qualified immunity.

---

[31] *Id; See also Rowan v. Sunflower Electric Power Corporation,* Case No. 15-cv-9227 2015 WL 8024320 (D. Kansas December 4, 2015)
[32] *Id* citing *Rose v. Bartle,* 871 F. 2d 331, 339 n. 3 (3rd Cir. 1989)
[33] *Id citing Perkins v. Silverstein,* 939 F. 2d 463 (7th Cir. 1991)

Qualified immunity "protects government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" [34] Thus, a public official is entitled to qualified immunity unless the plaintiff demonstrates that 1.) the defendant violated the plaintiff's constitutional rights, and 2.) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation.[35] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[36]

Qualified immunity questions should be resolved at the earliest possible stage in litigation.[37] Plaintiffs' complaint must set forth sufficient facts to overcome qualified immunity.[38] When a public official defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense.[39] It is well established that plaintiffs bringing a claim pursuant to § 1983 against public officials in their individual capacities are subject to a heightened pleading requirement. The Fifth Circuit has recognized that "liberal notions of pleading must ultimately give way to immunity doctrines that protect us from having the work of our public officials chilled or disrupted by participation in the trial or the pretrial development of civil lawsuits.[40] Therefore, the allegations in the plaintiff's complaint must be sufficient to negate

---

[34] *Pearson v. Callahan,* 555 U.S. 223, 231, 1129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800,818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))

[35] *Porter v. Epps,* 659 F. 3d 440 (2011)

[36] *Mendenhall v. Riser,* 213 F. 3d 226, 230 (5th Cir. 2000)

[37] *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed.2d 565 (2009)

[38] *Iqbal; Ashcroft v. al-Kidd,* 131 S. Ct. 2074 (2011)

[39] *Club Retro, L.L.C. v. Hilton,* 568 F. 3d 181, 194(5th Cir. 2009) (citing *McClendon v. City of Columbia,* 305 F. 3d 314, 323 (5th Cir. 2002)(en banc)

[40] *Mottison v. City of Baton Rouge,* 761 F. 2d 242, 244 (5th Cir. 1985)

the defendants' assertions of qualified immunity.[41]  Negating qualified immunity "demands more than bald allegations and conclusory statements."[42]

The plaintiff must allege facts specifically focusing on the conduct of the individual defendants which caused his/her injury.[43] Plaintiffs suing governmental officials in their individual capacities must allege specific conduct by the officials giving rise to a constitutional violation. Personal involvement is an essential element of a cause of action against a public official in his individual capacity.[44]

In this case, Plaintiffs do not allege any personal involvement by Sheriff Gautreaux in the alleged constitutional violations.  Plaintiffs' claims arise out of their arrests during protests on July 10, 2016. Plaintiffs claim alleged violations of their First, Fourth, and Fourteenth Amendment rights. Specifically, Plaintiffs makes the following claims against all Defendants: 1.) Violation of First Amendment Rights to Speech and Assembly;[45] 2.) Violation of Frist Amendment Freedom of Press[46]; 3.) First Amendment Retaliation[47]; 4.) False Arrest[48]; 5.) Violation of Fourth Amendment Rights to be free from Unlawful Search and Seizure[49]; and 6.) Excessive Force[50]. Plaintiffs also allege that all Defendants are liable for failing to intervene to prevent the violation of Plaintiffs' constitutional rights.[51]

---

[41] *Fleming v. Tunica County Miss.,* 2012 WL 4753381 (5th Cir. October 5, 2012); *Wiicks v. Miss. State Employment Services,* 41 F. 3d 991, 995 (5th Cir. 1995)
[42] *Id., Wicks,* 41 F. 3d at 995
[43] *Id.*
[44] *Thompson v. Steele,* 709 F. 2d 381 (5th Cir. 1983)
[45] Rec. Doc. 5 Count 1 Paragraphs 261-267
[46] Rec. Doc. 5 Count 2 Paragraphs 268-273
[47] Rec. Doc. 5 Count 3 Paragraphs 274-278
[48] Rec. Doc. 5 Count 4 Paragraphs 279-284
[49] Rec. Doc. 5 Count 5 Paragraphs 285-290
[50] Rec. Doc. 5 Count 6 Paragraphs 291-298
[51] Rec. Doc. 5 Count 7 Paragraphs 299-303

However, Plaintiffs fail to allege that Sheriff Gautreaux was personally involved in detaining or arresting them. Further, Plaintiffs do not even allege that Sheriff Gautreaux was at the scene of their arrests. Liability for failure to intervene will not attach where an officer is not present at the scene of the constitutional violation.[52]

To state an individual capacity claim against Sheriff Gautreaux and to defeat the defense of qualified immunity, Plaintiffs must allege specific facts focusing on Sheriff Gautreaux's conduct with respect to the alleged constitutional violations. Plaintiffs' conclusory allegations as to "Defendants" without specifying any particular facts as to Sheriff Gautreaux is not sufficient to state a Section 1983 individual capacity claim against Sheriff Gautreaux that is plausible on its face or to overcome the defense of qualified immunity. The Section 1983 individual capacity claims against Sheriff Gautreaux should be dismissed.

### D. Plaintiffs have Failed to State a Section 1983 Claim Against Sheriff Gautreaux in his Official Capacity

Plaintiffs assert a *Monell* claim against "Policymaker Defendants."[53]  Plaintiffs assert that they are suing Sheriff Gautreaux in his individual and official capacities.[54] Plaintiffs assert that Sheriff Gautreaux "is responsible for the supervision, administration, policies, practices, procedures, and customs of the East Baton Rouge Sheriff's Office ("EBRSO"). Plaintiffs further assert that Sheriff Gautreaux was responsible for the hiring, training, discipline, supervision and control of the EBRSO command staff, supervisors and deputies.[55]

A suit against a government official in his official capacity is the same as a suit against

---

[52] *Whitley v. Hanna,* 726 F. 3d 631 (5th Cir. 2013)
[53] Rec. Doc. 5 Count 9 Paragraphs 310-318
[54] Rec. Doc. 5 Paragraph 38
[55] Rec. Co. 5 Paragraph 38

the government entity of which he is an agent.[56]   Thus, to determine whether a public official is liable under Section 1983 in his official capacity, the Court looks to the jurisprudence discussing whether the municipality or local government entity is liable under Section 1983.[57]   Municipal liability under Section 1983 requires proof of three elements:  1.) an official policy or custom, of which 2.) a policymaker can be charged with actual or constructive knowledge, and 3.) a violation of constitutional rights whose "moving force" is the policy or custom.[58] In order for a municipality to be held liable under Section 1983, the plaintiff must identify an unconstitutional municipal policy or custom that caused her injury.[59]   "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity."[60]   Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights.[61]

Under *Monell* local governmental agencies cannot be liable for constitutional torts under Section 1983 pursuant to a theory of *respondeat superior.* Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for those deprivations resulting from the decisions of those officials whose acts may fairly be said to be those of the governmental entity.[62]

---

[56] *Burge v. Parish of St. Tammany,* 187 F. 3d 452, 466 (5th Cir. 1999)

[57] *Burge,* 187 F.3d at 470.

[58] *See Davis v. Tarrant County, Tex.,* 565 F.3d 214, 2009 U.S. App. LEXIS 7134, 2009 WL 931169 (5th Cir. 2009); *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)

[59] *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  *Parm v. Shumate,* 513 F. 3d 135, 142 (5th Cir. 2007), cert denied, 129 S.Ct. 42, 172 L.Ed.2d 21 (2008).

[60] *Colle v. Brazos County Texas,* 981 F.2d 245 (5th Cir. 1993).

[61] See e.g., *Murray v. Town of Mansura,* 76 Fed. App'x 547, 549 95th Cir. 2003); *Treece v. Louisiana,* 74 Fed. App'x 315, 316 (5th Cir. 2003).

[62] *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

An "official policy" may be either a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers *or* a persistent, widespread practice ... which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy."[63] "Isolated acts" generally cannot establish the existence of a custom or practice.[64] A pattern is tantamount official policy when it is "so common and well-settled as to constitute a custom that fairly represents municipal policy.[65] Where prior incidents are used to prove a pattern, they "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." [66] A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question."[67] A pattern also requires "sufficiently numerous prior incidents."[68]

"The description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts."[69] A plaintiff must demonstrate that the municipal policymaker had actual or constructive knowledge of the

---

[63] *Webster v. City of Houston,* 735 F.2d 838, 842 (*citing Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir.1984)).
[64] *Burge v. St. Tammany Parish,* 336 F. 3d 363, 370 (5th Cir. 2003).
[65] *Webster v. City of Houston,* 735 F. 2d 838, 841 (5th Cir. 1984) (en banc)
[66] *Id at 842*
[67] *Estate of Davis ex rel McCully v. City of North Richland Hills,* 406 F. 3d 375, 383 (5th Cir. 2005).
[68] *McConney v. City of Houston,* 863 F. 2d 1180, 1184 (5th Cir. 1989)
[69] *Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997) (citing *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992)).

custom.[70] Supervisory officials cannot be liable under Section 1983 for the actions of their subordinates on any theory of vicarious or respondeat superior liability.[71]

In this case, Plaintiffs make conclusory allegations that the misconduct alleged was caused by *de facto* policies and practices of "the Defendants" without specifying which alleged policies and practices are attributable to which Defendant, City/Parish, EBRSO or State Police.[72] Plaintiffs further allege that "Defendants" employed certain *de facto* policies and practices to suppress the Plaintiffs' exercise of their First Amendment rights and otherwise violate Plaintiffs' constitutional rights based on the allegations of wrongful conduct in the handling of the July 2016 protests at issue in this case such as 1.) criminalizing individuals who criticize law enforcement; 2.) targeting protest "leaders"; 3.) directing the creation of pre-printed forms of affidavit of arrest; 4.) the use of riot gear on protestors without just cause; 5.) allowing widespread practice of excessive force to continue. [73] Plaintiffs are improperly inferring a *de facto* policy or custom of Sheriff Gautreaux's based upon Plaintiffs' interaction with law enforcement during the July 2016 protests. Plaintiffs have failed to allege any other events prior to the July 2016 protests in which protestors' rights were allegedly violated by any EBRSO sheriff deputy. Plaintiffs have not alleged facts to suggest a pattern by EBRSO sheriff deputies of unconstitutional behavior in dealing with protestors like Plaintiffs. Plaintiffs have failed to allege prior events to show a pattern or practice was the moving force behind the alleged constitutional violations in this case.

---

[70] *Pineda v. City of Houston,* 291 F. 3d 325, 329 (5th Cir. 2002).
[71] *Estate v. Davis ex rel. McCully v. City of N. Richland Hills,* 406 F. 3d 375, 381 (5th Cir. 2005).
[72] Rec. Doc. 5 Paragraphs 311 and 312
[73] Rec. Doc. 5 Paragraph 257.

Plaintiffs make the conclusory assertion that the above-described widespread practices were so well settled to constitute *de facto* policies and show deliberate indifference of the Defendants based on the history of Defendant agencies described in the Complaint. However, the only "history" alleged by Plaintiffs as to the EBRSO, is a general conclusory allegation that EBRSO "has its own history, extending decades before the July 2016 protests, of excessive force and unconstitutional arrests."[74] Plaintiffs allege that more recently "allegations "of excessive force and unconstitutional arrests have been made. Plaintiffs cite only three cases filed between 2008 and 2016 allegedly documenting these "allegations"[75] However, none of these three cases dealt with arrests or detentions of protestors or alleged violations of first amendment rights. Further, as alleged by Plaintiffs, these three cases merely involve "allegations" of excessive force and/or unconstitutional arrests, and do not establish a pattern of excessive force or unconstitutional arrests in general, much less a pattern of a violation of the constitutional rights of those participating in or reporting on protests. See also *Carnaby v. City of Houston*, 636 F.3d 183, 189–90 (5th Cir. 2011) (no pattern: two reports of violations of a policy in four years in Houston); *Peterson*, 588 F.3d at 851 & n.4 (no pattern: twenty-seven complaints of excessive force over four years in Fort Worth); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (no pattern: eleven incidents of warrantless searches in Houston).

In addition, Plaintiffs allege that the above-described widespread practices were so well settled to constitute *de facto* policies and show deliberate indifference of the Defendants based upon the over 100 arrests of protestors in the two days prior to Plaintiffs' arrests.[76] Plaintiffs rely

---

[74] Rec. Doc 5 Paragraph 80
[75] Rec. Doc. 5 Paragraph 80
[76] Rec. Doc. 5 Paragraph 313

on a list attached as Exhibit E purportedly from a publication "The Advertiser" of others allegedly arrested during the protests of Alton Sterling's death on the two days prior to Plaintiffs' arrests. The list does not show what agency or under what circumstances the arrests were made. This allegation of other arrests of protestors protesting Alton Sterling's death during the same three-day time-period as Plaintiffs' arrests does not establish a pattern of conduct that occurred for so long or so frequent as to show that the course of conduct warrants the attribution to Sheriff Gatureaux of knowledge that the objectionable conduct is the expected, accepted practice of EBRSO employees.

Plaintiffs make the additional conclusory allegation against "Defendants" under a failure to train theory.[77] The official's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.[78]  A municipality's failure to train its employees must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."[79]  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."[80]  In order for liability to attach based on a claim for failure to train, the plaintiff "must allege with specificity how a particular training program is defective."[81]

Deliberate indifference for purposes of a failure to train claim "ordinarily" requires plaintiffs to prove a pattern of similar constitutional violations by untrained employees. Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional

---

[77] Rec. Doc. 5 Paragraph 257 (c) and (d)
[78] See *Connick v. Thompson*, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011)
[79] *Canton,* 489 U.S., at 388, 109 S. Ct. 1197
[80] Id., at 389, 109 S. Ct. 1197; Connick v. Thompson, 131 S. Ct. 1350, 1359-60, 179 L. Ed. 2d 417 (2011)
[81] *Goodman v. Harris County,* 571 F.3d 388, 395 (5th Cir.2009)

rights. The official may be liable for failure to supervise or train if: 1.) the supervisor either failed to supervise or train the subordinate official 2.) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and 3.) the failure to train or supervise amounts to deliberate indifference.[82] Similarly, a failure to adopt a policy claim requires a showing of deliberate indifference.[83] "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.[84]

In this case, Plaintiffs only make the conclusory allegation that the Defendants failed to train personnel on the importance of protecting and respecting First Amendment rights through assembly and protest and failed to implement clear, understandable policies regarding how to respond to mass demonstrations and protests.[85] Plaintiffs have not identified how the Defendants' training program with respect to protests was deficient. Plaintiffs have not alleged facts to show Sheriff Gautreaux acted with deliberate indifference to a need to train its officers or to implement additional policies with respect to First Amendment rights through assembly and protest. Plaintiffs have failed to allege sufficient facts to establish a pre-existing pattern of bad acts similar to the ones alleged to have transpired in this case. Plaintiffs have not alleged a pattern of pre-existing violations to put Sheriff Gautreaux on notice for the need of additional training and to implement additional training by alleging that numerous arrests were made during the same event, three days of protesting Alton Sterling's death. Plaintiffs have not alleged facts to show that Sheriff Gautreaux was deliberately indifferent to a need for additional training of

---

[82] *Porter,* 659 F.3d at 446
[83] *Rhyne v. Henderson County,* 973 F. 2d 386 (5th Cir. 1992) citing *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389-90, 109 S. Ct. at 1205
[84] *Porter, 659 F. 3d at 446 (quoting Ryne v. Henderson Cnty.,* 973 F. 2d 386, 392 (5th Cir. 1992)
[85] Rec. Doc. 5 Paragraphs 257 (c) and (d)

EBRSO deputies or policies as to the First Amendment rights of protestors. Plaintiffs have not alleged a pattern of prior constitutional violations by any EBRSO deputy as to the handling of protestors or that Sheriff Gautreaux had notice of a pattern of similar violations.[86] Plaintiffs' claims against Sheriff Gautreaux in his official capacity should be dismissed with prejudice.

### E. Plaintiffs Fail to Allege Sufficient Facts to Support a Section 1985 Conspiracy Claim against Sheriff Gautreaux

Plaintiffs allege a claim against all "Individual Defendants" pursuant to Section 1985(3) for a civil conspiracy to violate their civil rights.[87]   42  U.S.C.  Section  1985(3)  prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws."  To establish a claim under 42 U.S.C. Section 1985(3), a plaintiff must show (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[88] Moreover, the Fifth Circuit has unambiguously held that "[i]n this circuit, we require an allegation of a race-based conspiracy to present a claim under § 1985(3)."[89] The only type of conspiracy actionable under § 1985(3) is one motivated by racial animus.[90]

In this case, Plaintiffs have failed to allege any facts to suggest that Sheriff Gautreaux conspired with another person or otherwise entered into an agreement with another person to

---

[86] Plaintiffs make allegations regarding policies for obtaining street closing permits.  See Rec. Doc. 5 Paragrpah 257(i) and (j). However, these claims are related to policies of the City/Parish and not Sheriff Gautreaux.
[87] Rec. Doc. 5 Paragraphs 17 and 304-309
[88] *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983); *Hillard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Suttles v. United States Postal Service*, 927 F. Supp. 990, 1001 (S.D.Tex.1996).
[89] *Horaist v. Doctor's Hosp. of Opelousas,* 255 F. 3d 261, 271 (5th Cir. 2003)
[90] *Daigle v. Gulf States Utils. Co.*, 794 F.2d 974, 979-80 (5th Cir. 1986).

deprive them of the equal protection of the laws, much less that any such agreement was racially motivated.[91] "At a minimum, a claim under § 1985 must allege a factual basis for the allegation that defendants conspired together. A mere allegation of conspiracy, as Plaintiffs make in this case without factual specificity is insufficient." [92] The operative facts of an alleged conspiracy under Section 1985(3) must be pled with specificity; conclusory allegations such as those present in this case are insufficient to state a claim for conspiracy.[93]

Plaintiffs merely make a bare-bones conclusory assertion that each of the Individual Defendants conspired and "took concrete steps to enter into an agreement in July 2016 to unlawfully detain, arrest, and imprison the Plaintiffs, knowing they lacked probable cause to do so, and for the purpose of impeding Plaintiffs from exercising their First Amendment rights…"[94] Plaintiffs do not allege any facts as to when, where, or with whom an agreement was reached. Plaintiffs do not allege any facts to suggest that there was an agreement to deprive them of equal protection of the laws. Finally, Plaintiffs do not allege that there was an agreement that was racially motivated. Plaintiffs' bare bones allegation that Individual Defendants conspired to violate their constitutional rights is not sufficient to state a cause of action under Section 1985.[95] Therefore, Plaintiffs' Section 1985 conspiracy claim against Sheriff Gautreaux should be dismissed with prejudice.

### F. State Law Claims

---

[91] See *Green v. State Bar of Texas*, 27 F. 3d 1083, 1089 (5th Cir. 1994) (explaining that an "agreement among the parties" is a necessary element of a § 1985 claim).
[92] *Darian v. Cashe*, 2017 WL 3326976 (M.D. La. July 17, 2017) citing *Matthews v. Int'l House of Pancakes, Inc.*, 597 F. Supp. 2d 663, 674 (E.D. La. 2009).
[93] *Holdiness v. Stroud*, 808 F. 2d 417, 424 (5th Cir. 1987)
[94] Rec. Doc. 5 Paragraph 305
[95] See *Moore v. Melvin*, 42 F. 3d 642 (5th Cir. 1994) (finding that the plaintiff has offered "no allegations to support an agreement between any of the defendants to violate his constitutional rights")

**1. Defendants did not Violate La. Children's Code Article 306**

Plaintiffs claim that because Alexus Cheney was seventeen years old when arrested, Defendants were in violation of La. Children's Code Article by being held in an adult detention center.[96]

Under the present Louisiana law and the law at the time of Ms. Cheney's arrest, a 17 - year-old juvenile was not considered a "child" under the jurisdiction of the juvenile court and could be held in an adult jail or lockup. See Title VIII of Children's Code Article 804(1)(a) and Article 822. Title VIII, Article 804(1) provides in pertinent part as follows:

Art. 804. Definitions
As used in this Title:

(1)(a) "Child" means any person under the age of twenty-one, including an emancipated minor, who commits a delinquent act **before attaining seventeen years of age**. (emphases added)

Title VIII, Article 822 (C) provides in pertinent part: "No **child** subject to the jurisdiction of the juvenile court shall be held in an adult jail or lockup." (emphasis added). Ms. Cheney was 17 years of age and thus, not a child subject to the jurisdiction of the juvenile court. It was proper to bring and maintain Ms. Cheney in an adult jail, the East Baton Rouge Parish Prison. The Louisiana Supreme Court in *Lazaarad v. Foti,* 859 So. 2d 656 (La. 2003) recognized that a sheriff had a duty to transfer a sixteen-year-old juvenile detainee who was held in an adult prison under the mistaken belief he was seventeen years old to an appropriate juvenile detention center. In this case, Plaintiffs admit that Ms. Cheney was seventeen when she was arrested. Therefore, Sheriff Gautreaux had not duty to transfer her to a juvenile detention center.

---

[96] Rec. Doc. 5 Paragraph 334

Plaintiffs assert that Defendants are in violation of Children's Code Article 306. However, Article 306 is not applicable to Ms. Cheney. Article 306 pertains to cases where the juvenile courts are divested of jurisdiction in favor of criminal court jurisdiction after a juvenile is indicted or probable cause is found for certain serious crimes. Article 306 provides that prior to jurisdiction being divested from the juvenile court to criminal court, the child shall be in the custody at a juvenile detention center. Article 306 is not applicable.  Further, Plaintiffs assert that a "child' means a person who has not attained the age of eighteen years according to Children's Code Art. 116(3).  However, Article 116 is not applicable herein. Art. 116 provides the general definitions for the entire La. Children's Code.  Art. 116(3) provides "'Child' means a person who has not attained the age of eighteen years, **except as it is specially defined by a Title of this Code."** (emphasis added). The applicable title, Title VIII Delinquency, specifically defines "Child" in Article 804 as a person who commits a delinquent act before attaining seventeen years of age. Plaintiff, Alex Cheney's claim for violation of Children's Code should be denied.

### 2. Intentional and Negligent State Torts

Plaintiffs asserts that they are bringing the following claims against all Defendants: intentional infliction of emotional distress, negligent infliction of emotional distress, assault, battery, false imprisonment, malicious prosecution and negligence.[97] Plaintiffs bring all seven of these causes of action under one count, Count Eleven.  Plaintiffs only make conclusory allegations as to "Defendants' Conduct." Plaintiffs do not allege any factual allegations as to any involvement by Sheriff Gautreaux personally in the arrests or detention of the Plaintiffs. Therefore, Sheriff Gautreaux cannot be liable independently for these state law claims and they

---

[97] Rec. Doc. 5 Paragraphs 321-325

should be dismissed against him in his individual capacity.  Plaintiffs allege that "All Supervisor Defendants" are vicariously liable for the acts or omissions of those under their direction and control pursuant to Louisiana Civil Code article 2320 under the doctrine of *respondeat superior.*[98] Plaintiffs have not named any EBRSO sheriff deputy by name as a defendant. Plaintiffs name Law Enforcement Does 1-500 as defendants which Plaintiffs allege include officers of the EBRSO as well as the Baton Rouge Police Department and the State Police. Since this Court must accept all allegations as true for purpose of this Motion to Dismiss, Sheriff Gautreaux is not asking the Court to dismiss the state law vicarious liability claims against Sheriff Gautreaux at this time. However, the intentional and negligent state tort claims based on independent liability of Sheriff Gautreaux should be dismissed with prejudice.

However, should this Court dismiss Plaintiffs' federal law claims, Sheriff Gautreaux respectfully requests this Court to dismiss any remaining Louisiana state law claims.  When a court dismisses all federal claims before trial, the general rule in the Fifth Circuit is to dismiss any pendent state law claims as well.[99]

## III.    Conclusion

For the foregoing reasons, defendant, Sheriff Sid J. Gautreaux, III and AIX Group, doing business as NOVA CASUALTY COMPANY ("Nova") request that this Motion to Dismiss and in the Alternative Motion to Strike be granted and Plaintiffs' First Amended Complaint be dismissed or stricken in its entirety for violating Rule 8's mandate that a complaint contain a

---

[98] Rec. Doc. 5 Paragraphs 326, 327
[99] *Bass v. Parkwood Hosp.,* 180 F. 3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling,* 881 F. 2d 200, 204 (5th Cir. 1989).

short and plain statement of the claim and that it be simple, concise and direct.  In the alternative, Sheriff Gautreaux and Nova request that all exhibits, figures and material incorporated into the First Amended Complaint by reference in a footnote be stricken. In the event that this Court does not dismiss or strike the entire First Amended Complaint, Sheriff Gautreaux and Nova request that Plaintiffs' claims be dismissed against them with prejudice.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

*s/ Catherine S. St. Pierre*
MARY G. ERLINGSON (#19562)
CATHERINE S. ST. PIERRE (#18419)
TARA L. JOHNSTON (#28100)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone: (225) 218-4446
Facsimile: (225) 246-2876

CERTIFICATE OF SERVICE

I HEREBY certify that a copy of the above and foregoing Memorandum in Support of Motion to Dismiss and in the Alternative Motion to Strike has been served on counsel for all parties to this proceeding via the court's electronic service this 18th day of September, 2017.

Baton Rouge, Louisiana, this 18th day of September, 2017.

/s/   Catherine S. St. Pierre
Catherine S. St. Pierre