# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BLAIR IMANI, et al**                                        **CIVIL ACTION No.:  3:17-cv-00439**
                 **Plaintiffs**


**VERSUS**                                                            **JUDGE:  JOHN W. DEGRAVELLES**

                                                                               **MAGISTRATE JUDGE:**
                                                                               **ERIN WILDER-DOOMES**
**CITY OF BATON ROUGE, et al**
           **Defendants**

### <u>REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO STRIKE</u>

**MAY IT PLEASE THE COURT:**

Defendant, Sid J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux") and AIX Group, doing business as NOVA CASUALTY COMPANY ("Nova") (sometimes collectively referred to herein as "Sheriff Defendants") appear herein to  address certain arguments made by Plaintiffs in their Opposition to Sheriff and Nova's Motion to Dismiss and in the Alternative to Strike (Rec Doc 102-2).

Sheriff Defendants' arguments are not inconsistent as suggested by Plaintiffs. First, Sheriff Defendants assert that Plaintiffs' Second Amended Complaint should be dismissed and/or stricken for failure to comply with the Federal Rules of Civil Procedure, including Rules 8, 9, and 10(c) relating to properly pled complaints being short and plain statement of the claim. In the event that this Court does not dismiss or strike Plaintiffs' Second Amended Complaint for failing to comply with Rules 8,9 and 10(c), then Sheriff Defendants request that Plaintiffs' claims against Sheriff Gautreaux and Nova be dismissed for failure to state a claim for which relief can be granted.

1

### A. Plaintiffs' First Amended Complaint should be Dismissed and/or Stricken for Failing to be a Properly Pled Complaint

Plaintiffs misconstrue Sheriff Defendants' arguments related to dismissing and/or striking Plaintiffs' Second Amended Complaint for failing to comply with the Federal Rules of Civil Procedure relating to properly pled complaints.  First, Sheriff Defendants assert that Plaintiffs' First Amended Complaint should be dismissed pursuant to FRCP Art. 12(b)(6) in its entirety because the 82 page, 333 paragraph complaint, with its attached approximately 60 pages of exhibits, and over one-hundred footnotes incorporating videos, affidavits and articles violates the mandate of Fed. R. Civ. Rule 8(a)(2) that a properly pled complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Further, Sheriff Defendants assert that Plaintiffs violate the mandate of Rule 8(d)(1) that pleadings be "simple, concise and direct."[1] Plaintiffs' response is that a complaint of some length is required due to the complexity and scope of Plaintiffs' claim.[2]  However, Sheriff Defendants' objection to the complaint as violating Rule 8's requirement that pleadings must be simple, concise and direct is not based simply on the length of the Second Amended Complaint. Rather, as Sheriff Defendants point out Plaintiffs' Second Amended Complaint is written more like a press release, with protracted evidentiary detail. It is filled with hearsay statements (news articles, and affidavits from third parties filed in another matter), videos, photos, diagrams and other extraneous material such that it is nearly impossible for the Sheriff Defendants to ascertain exactly what legal and factual claims are being asserted against them.

---

[1] Rec Doc 96-1 pages 6-9
[2] Rec Doc 102-2 page 4

Second, Sheriff Defendants' assert that Plaintiffs' Second Amended Complaint should be dismissed pursuant to FRCP Rule 12(b)(6) as an improper "shot gun" pleading because it names 44 defendants (not including "John Doe" defendants and insurers) without distinguishing between the actions of the named defendants.[3] In their response, Plaintiffs admit that "shotgun pleadings" are objectionable, but assert that Sheriff Defendants are incorrect that Plaintiffs have failed to distinguish between actions of named defendants.  Plaintiffs admit that certain claims and defenses are against all Defendants. Plaintiffs assert that they have also grouped Defendants into categories such as "individual defendants" and "policy maker defendants" and that where they have facts to distinguish between the actions of specific Defendants, they have so alleged. Plaintiffs admit that the problem with "shotgun pleadings" is that they are unable to inform the defendant what plaintiff claims he has done.[4]

However, that is exactly the problem with Plaintiffs' Second Amended Complaint. It is drafted in such a way that if fails to inform each Defendant, such as Sheriff Gautreaux what plaintiff claims he has done to support each cause of action asserted against him.  The majority of Plaintiffs' causes of action, nine out of fifteen, are asserted against "All Defendants" and the rest are asserted against categories of defendants.[5] However, in all fifteen causes of action, Plaintiffs' allegations are against Defendants generally and collectively without specifying which facts support Plaintiffs' claims against each Defendant. For example, in Count One, "Violation of First Amendment Rights to Speech and Assembly" Plaintiffs assert that this cause of action is against "All Defendants." However, rather than specifying facts to support their claim against each

---

[3] Rec Doc 96-1 page 9
[4] Rec Doc 102-2 page 4
[5] Rec Doc 59 pages 69-81

Defendant, such as Sheriff Gautreaux, Plaintiffs allege that the protesters "were told by Baton Rouge law enforcement that they must move their demonstration out of the streets, and then off of the sidewalks." Plaintiffs allege that "[e]ach time Plaintiffs complied, Defendants then told them to disperse, declaring that it was 'no longer a peaceful protest.' Defendants swept in and arrested Plaintiffs."[6]  Count Two, "Violation of First Amendment Freedom of Press" is similarly brought against All Defendants based on the arrests of members of the press, Plaintiffs, Karen Savage and Cherri Foytlin. Plaintiffs allege that when told that Karen was a member of the press, "Defendant" said "f… you, journalist" several times.[7] These are just examples of the Plaintiffs' practice throughout the Second Amended Complaint of asserting causes of actions against all or multiple Defendants, without setting forth what each Defendant, such as Sheriff Gautreaux has done that would support the claims against him.

Further, Plaintiffs improperly incorporate by reference every one of their numerous allegations into each count such that it is impossible to determine which facts Plaintiffs are actually relying on to support each cause of action.  Plaintiffs begin each and every count with the following statement: "Plaintiffs incorporate the allegations in each preceding and following paragraph."[8] Plaintiffs' Second Amended Complaint is exactly the type of complaint that the courts have dismissed as a "shotgun pleading." See *Copeland v. Axion Mortgage Group, LLC,* 2016 WL 4250431* 4 (S.D. MS 2016) ("As opposed to the 'short and plain statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each

---

[6] Rec Doc 59 ¶ 260
[7] Rec Doc 59 ¶ 266
[8] Rec Doc 59 Paragraphs 258, 265, 271, 276,282, 288,296,301,307, 316,318,323,325,329

count "incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and conclusions.")

Third, Sheriff Defendants assert that Plaintiffs' Second Amended Complaint should be stricken in whole or in part pursuant to FRCP 12(f). Plaintiffs' response is that Sheriff Defendants' motion to strike should be denied as failing to meet the requirements of FRCP 7(b) because it does not state specifically the portions of the pleading to which objection is being made. However, FRCP 7(b) merely provides that motions and other papers must state with particularity the grounds for seeking the order. Sheriff Defendants' motion clearly states with particularity the grounds for seeking this Court to strike Plaintiffs' Second Amended Complaint in whole, or in the alternative, in part.

Sheriff Defendants assert that Plaintiffs' Second Amended Complaint should be stricken in its entirety with leave to allow Plaintiffs to replead, pursuant to FRCP Rule 12(f) because Plaintiffs' Second Amended Complaint is so riddled with redundant, immaterial, and impertinent matter that if allowed, would prejudice the Sheriff Defendants by placing an undue burden on them to reply.[9]  Sheriff Defendants assert that in the alternative, this Court should strike all pictures in the body of the Complaint as well as all of the attachments or links identified in footnotes and incorporated in the Complaint (photos, videos, affidavits of third parties filed in other matters and articles) and the exhibits as they are redundant and/or immaterial and prejudicial.[10] Further, as Sheriff Defendants assert, the exhibits and items  incorporated in the Second Amended Complaint by reference in a footnote are not properly included in a complaint under FRCP 8, 9 or 10(c).[11]

---

[9] Rec Doc 96-1 page 11
[10] Rec Doc 96-1 page 11
[11] Rec Doc 26-1 pages 12 and 13

Therefore, Plaintiffs' Second Amended Complaint should be dismissed in its entirety for failing to comply with Rules 8, 9, 10 (c) relating to properly pled complaints. In the alternative, this Court should strike the exhibits, figures, and all material purportedly incorporated by reference in a footnote. These materials are immaterial, prejudicial and not the type of documentary evidence which Fed. R. Civ. 10 intended to be incorporated into a complaint.

### B. Plaintiffs have Failed to State a Section 1983 Individual Capacity Claims against Sheriff Gautreaux and Sheriff Gautreaux is entitled to Qualified Immunity

When pleading a Section 1983 claim against officials in their individual capacity, the plaintiff must allege facts specifically focusing on the conduct of the individual defendants which caused his/her injury.[12] Plaintiffs suing governmental officials in their individual capacities must allege specific conduct by the officials giving rise to a constitutional violation. Personal involvement is an essential element of a cause of action against a public official in his individual capacity.[13]

Contrary to Plaintiffs' assertions, Plaintiffs have not alleged Sheriff Gautreaux's personal involvement in the alleged constitutional violations. Plaintiffs' claims arise out of their arrests during protests on July 10, 2016. Plaintiffs make claims against all Defendants, including Sheriff Gautreaux for violation of their First Amendment rights resulting from their arrests as well as claims for false arrest, unlawful seizure and excessive force. However, Plaintiffs fail to allege that

---

[12] *Fleming v. Tunica County Miss.,* 2012 WL 4753381 (5th Cir. October 5, 2012); *Wiicks v. Miss. State Employment Services,* 41 F. 3d 991, 995 (5th Cir. 1995)
[13] *Thompson v. Steele,* 709 F. 2d 381 (5th Cir. 1983)

Sheriff Gautreaux had any personal involvement in their arrests, seizures or the use of excessive force. Therefore, Sheriff Gautreaux is entitled to qualified immunity and these claims against Sheriff Gautreaux in his individual capacity should be dismissed.

Plaintiffs cite to their Paragraph 83 of their Second Amended Complaint wherein they allege that Sheriff Gautreaux, was the president of the Louisiana Sheriff's Association during the protests and that he, in combination with Defendant Cazes and Defendant Hurst, arranged for the presence of approximately 200 additional deputies from surrounding sheriff's offices to supplement local law enforcement's response to the protests.[14] However, allegedly arranging for additional deputies to supplement local law enforcement's response to the protests, does not constitute a constitutional violation. In fact, Plaintiffs have voluntarily dismissed the Louisiana Sheriff's Association, Defendant Cazes and Defendant Hurst.[15]

Next, Plaintiffs cite to paragraphs in their Second Amended Complaint, wherein they make general conclusory allegations that their rights were violated based upon law enforcement officers' actions pursuant to alleged policies and practices of the City/Parish, the BRPD, and the East Baton Rouge Sheriff's Office.[16] Plaintiffs allege that Sheriff Gautreaux is responsible for the supervision, administration, policies, practices, procedures, and customs of the East Baton Rouge Sheriff's Office.[17] The Fifth Circuit has held that lawsuits against supervisory personnel based on their positions of authority are claims of liability under the doctrine of *respondeat superior*, which

---

[14] Rec Doc 102-2 page 5
[15] Rec Doc 33
[16] Rec Doc 102-2 pages 5 and 6
[17] Rec Doc 102-2  page 6

does **not** apply in Section 1983 cases.[18]  In *Iqbal*, the Supreme Court rejected an argument that government officials may be held liable because they merely had knowledge of or acquiesced in their subordinate's misconduct, stating that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*  In a suit involving protests, in *Wood v. Moss,* 134 S. Ct. 2056 (2014), the Supreme Court held that Secret Service Agents were entitled to qualified immunity and noted that "individual government officials 'cannot be liable' in a *Bivens* suit 'unless they themselves acted [unconstitutionally]."(citing *Iqbal)* The Supreme Court in *Wood* held " [w]e therefore decline to infer from alleged instances of misconduct on the part of particular agents an unwritten policy of the Secret Service to suppress disfavored expression, and then to attribute that supposed policy to all field-level operatives."[19]

The supervisor must either be personally involved in the violation or otherwise have caused the violation.[20] See *Alford v. City of Wiggins, MS*, No. 1:16CV19-LG-RHW, 2017 WL 923405, at *4 (S.D.Miss.Mar.8,2017) ("Since Miles and Barnett were only involved because of their supervisory or policy-making roles in the City, any §1983 claim against them in their individual capacities should be dismissed.")

Plaintiffs fail to allege Sheriff Gautreaux was personally involved in making Plaintiffs' arrests or in the alleged use of excessive force against them or that he otherwise caused any alleged violations of Plaintiffs' rights. He is entitled to qualified immunity.

---

[18] *Williams v. Luna*, 909 F.2d 121, 122 (5th Cir. 1990); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 677, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Alton v. Texas A & M University,* 168 F. 3d 196, 200 (5th Cir. 1999)

[19] *Wood v. Moss, 2070*

[20] *Rios v. City of Del Rio*, 444 F.3d 417, 425 (5th Cir. 2006)

In any event, Plaintiffs' claims against Sheriff Gautreaux based on his role as supervisor also fail because Plaintiffs fail to allege any facts showing that any East Baton Rouge Parish Sheriff deputy arrested, seized, or used excessive force against any Plaintiff. Plaintiffs assert in their opposition that their complaint "shows sheriffs' deputies acting in unison with other agencies to surround, seize, detain, and incarcerate peaceful protestors standing on private property, referencing Figure 44.[21] However, the caption to Figure 44 does not mention East Baton Rouge Parish Sheriff's deputies. The caption merely provides that it is three frames from a video that "shows lines of police officers blocking off East Blvd. (left and right) and St. France St. (middle)" Further, the pictures are blurry, such that it is impossible to tell which law enforcement agencies were represented in Figure 44. Finally, even if the video showed East Baton Rouge Sheriff deputies standing in a line on the street during the protests, this alleged fact, would not establish a constitutional violation or that the deputies participated in arresting, detaining, or using excessive force on any of the Plaintiffs.

Further, Plaintiffs incorrectly state that it is clearly established that officers standing in a line and marching in lock-step to surround peaceful protestors is a constitutional violation based on *Cox v. Louisiana,* 379 U.S. 536, 558 (1965).[22] *Cox* involved whether a law enforcement officer's *arrest* of a peaceful protestor was constitutional. Plaintiffs do not allege that Sheriff Gautreaux or any East Baton Rouge Parish Sheriff Deputy arrests them.

Plaintiffs do not address Sheriff Gautreaux's argument that the failure to intervene claim against him should be dismissed because Plaintiffs do not allege that Sheriff Gautreaux was at the

---

[21] Rec Doc 102-2 page 6
[22] Rec doc 102-2 page 6

scene of their arrests.[23]  Liability for failure to intervene will not attach where an officer is not present at the scene of the constitutional violation.[24] Plaintiffs have not alleged that Sheriff Gautreaux was at the scene of Plaintiffs' arrests. Failure to Intervene claim against Sheriff Gautreaux should be dismissed with prejudice.

Plaintiffs have not alleged sufficient facts to overcome Sheriff Gautreaux's defense of qualified immunity and the claims for violation of their First Amendment rights resulting from their arrests (Counts One, Two and Three) as well as claims for false arrest and imprisonment (Count Four), unlawful search and seizure (Count Five), excessive force (Count Six), and failure to intervene (Count Seven) should be dismissed with prejudice.

### C.  Plaintiffs have Failed to State a Section 1983 Claim Against Sheriff Gautreaux in his Official Capacity

Contrary to Plaintiffs' assertions in their opposition, Sheriff Gautreaux did not and does not agree that Plaintiffs have sufficiently pled the basic elements of a *Monell* /official capacity claim. Municipal liability under Section 1983 requires proof of three elements:  1.) an official policy or custom, of which 2.) a policymaker can be charged with actual or constructive knowledge, and 3.) a violation of constitutional rights whose "moving force" is the policy or custom.[25] Plaintiffs have failed to establish an official policy or custom of Sheriff Gautreaux that was the moving force behind a violation of their constitutional rights.

---

[23] Rec Doc 96-1 page 16
[24] *Whitley v. Hanna,* 726 F. 3d 631 (5th Cir. 2013)
[25] *See Davis v. Tarrant County, Tex.,* 565 F.3d 214, 2009 U.S. App. LEXIS 7134, 2009 WL 931169 (5th Cir. 2009); *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)

Plaintiffs mistakenly assert that Sheriff Defendants are relying on the heightened pleading standard for *Monell* claims that was struck down by the Supreme Court in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993) when Sheriff Defendants assert that Plaintiffs' complaint is inadequate because it doesn't 1.) specify which policies and practices are attributable to which law enforcement agency; 2.) allege other prior events in which Sheriff's deputies violated protestor's rights; and 3.)  detail the precise specifics of how the Sheriff's training program was deficient.[26]

Sheriff Defendants are relying on Fifth Circuit law and the standard set forth in *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 979 (2007) that "[a] legally sufficient complaint does not need to contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action." Under the law of the Fifth Circuit, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts."[27] Plaintiffs have pleaded no facts to show there was an officially adopted policy of Sheriff Gautreaux that was the moving force behind a violation of Plaintiffs' constitutional rights.

In addition, contrary to Plaintiff's assertion, Plaintiff must specify a policy or custom attributed to Sheriff Gautreaux, not just to the Defendants/law enforcement agencies in general. Under *Monell* local governmental agencies cannot be liable for constitutional torts under Section 1983 pursuant to a theory of *respondeat superior.* Locating an official "policy" or

---

[26] Rec Doc 102-2 page 7
[27] *Spiller v. City of Tex. City, Police Dep't,* 130 F.3d 162, 167 (5th Cir.1997) (citing *Fraire v. Arlington,* 957 F.2d 1268, 1277 (5th Cir.1992)). See also *Stroman v. Ard,* 2015 WL 6680874 (M.D. La. November 2, 2015).

"custom" ensures that a local government entity will be held liable only for those deprivations resulting from the decisions of those officials whose acts may fairly be said to be those of the governmental entity.[28]

In addition, Plaintiffs have pleaded no facts to support his allegation that there is a de facto policy or custom. Contrary to Plaintiffs' assertion, Plaintiffs must allege a pattern of other prior events to establish a de facto policy or custom. This Court in *Stroman* at [*]5 explained as follows:

> The Fifth Circuit has "consistently held … that '[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy.'" *Matthews v. Bowie Cty., Tex.,* 600 Fed. Appx., 933, 934 (5th Cir. 2015)(unpublished) (citing *Fraire v. City of Arlington,* 957 F. 2d 1268, 1278 (5th Cir. 1992). This is because '[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Fraire,* 957 F. 2d at 1278 (5th Cir. 1992) (citing *Bennett v. City of Slidell,* 728 F. 2d 762, 768 n. 3 (5th Cir. 1984), *cert. denied,* 472 U.s. 1016, 105 S. Ct. 3476, 87 L. Ed. 2d 6112 (1985).[29]

Citing *Brown v. Bryan Cty., Okla.,* 219 F. 3d 450, 461 (5th Cir. 2000), Plaintiffs assert that prior incidents are not even necessary to prove a *Monell* claim.[30] However, as explained by this Court in *Stroman* at [*]5 the single incident exception "is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand." Citing *Burge v. St. Tammany Par.,* 336 F. 3d 363, 373 (5th Cir. 2003). This Court explained the narrow single incident exception from *Brown* as follows:

> In Brown, the Fifth Circuit found the single incident exception to apply when there was an utter failure to train and supervise. *Brown v. Bryan County, Okla,* 219 F. 3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council,* 279 F. 3d 273 (5th Cir. 2002), that the single incident exception applied in

---

[28] *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[29] *Stroman v. Ard,* 2015 WL 6680874 (M.D. La. Nov. 2, 2015)
[30] Rec Doc 40 page 8

> Brown because the county in that case "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo,* 279 F. 3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a complete failure to train as in [Brown] and a failure to train in one limited area."[31]

In this case, the exception in *Brown* does not apply because Plaintiffs do not allege that there was an utter failure to train and supervise East Baton Rouge Parish Sheriff deputies. Plaintiffs' official capacity claims should be dismissed because of Plaintiffs' failure to allege facts of other prior events to establish a custom or de facto policy.

In addition, contrary to Plaintiffs' assertion, Plaintiffs must allege specifics of how the Sheriff's training program was deficient. Under Fifth Circuit jurisprudence, in order for liability to attach based on a claim for failure to train, the plaintiff "must allege with specificity how a particular training program is defective."[32] In this case, Plaintiffs only make the conclusory allegation that the Defendants failed to train personnel on the importance of protecting and respecting First Amendment rights through assembly and protest.[33] Plaintiffs have not identified how the Defendants' training program with respect to protests was deficient. Plaintiffs have not alleged a pattern of prior constitutional violations by any EBRSO deputy as to the handling of protestors or that Sheriff Gautreaux had notice of a pattern of similar violations. Accordingly, Plaintiffs failure to train claims should be dismissed.

Finally, Plaintiffs have not even alleged any facts to show that any EBRSO deputy was directly involved in any of their arrests. Therefore, any alleged policy, practice, or lack of training

---

[31] *Bibbins v. City of Baton Rouge,* 489 F. Supp. 2d 562, 584 (M.D. La. 2007)
[32] *Goodman v. Harris County,* 571 F.3d 388, 395 (5th Cir.2009)
[33] Rec. Doc. 5 Paragraphs 257 (c) and (d)

by Sheriff Gautreaux could not be the moving force behind the Plaintiffs' alleged constitutional violations.  Plaintiffs' claims against Sheriff Gautreaux in his official capacity should be dismissed with prejudice.

### D.  Plaintiffs' Conspiracy Claims Should be Dismissed

Plaintiffs claim in their opposition that they are bringing conspiracy claims under 42 U.S.C. Section 1983, State Common law and 42 U.S.C. Section 1985(3).[34] However, Plaintiffs' Second Amended Complaint does not state that Plaintiffs are bringing a Section 1983 conspiracy claim or a State Common Law conspiracy claim.  However, this Court should disregard Plaintiffs' arguments regarding Section 1983 and state conspiracy claims.  Plaintiffs do state in their Second Amended Complaint that they are bringing a Section 1985(3) claim.[35] In any event, Plaintiffs have failed to allege sufficient facts to state a cause of action for conspiracy against Sheriff Gautreaux under any theory.

First, Plaintiffs have failed to plead sufficient facts to state a conspiracy claim under Section 1985(3).  42 U.S.C. Section 1985(3) prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws." As a prerequisite to an equal protection claim, the plaintiff must prove that similarly situated individuals were treated differently.[36] To establish a claim under 42 U.S.C. Section 1985(3), a plaintiff must show (1) a conspiracy involving two or more persons, (2) for the purpose of depriving, either directly or indirectly, a person or class of persons of the equal protection of the

---

[34] Rec Doc 102-2 page 8
[35] Rec Doc 59 ¶ 17
[36] *Wheeler v. Miller,* 168 F. 3d 241 (5th Cir. 1999)

laws; and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.[37] Plaintiffs pleading a § 1985 conspiracy claim "must plead the operative facts upon which their claim is based."[38] "The operative facts of an alleged conspiracy under Section 1985(3) must be pled with specificity; conclusory allegations such as those present in this case are insufficient to state a claim for conspiracy.[39]

Plaintiffs merely make a bare-bones conclusory assertion that each of the Individual Defendants "**took concrete steps to enter into an agreement** in July 2016 to unlawfully detain, arrest, and imprison the Plaintiffs, knowing they lacked probable cause to do so, and for the purpose of impeding Plaintiffs from exercising their First Amendment rights…"(emphasis added)[40] Plaintiffs do not allege any of the operative facts as to exactly when, where, how or with whom an agreement was reached; Plaintiffs only make the conclusory allegation that each of the individual defendants took concrete steps to enter into an agreement in July 2016.  Plaintiffs assert that the alleged conspiracy "was accomplished" by using excessive force to unlawfully effect Plaintiffs' arrests, fabricating evidence against the Plaintiffs, and approving trumped up charges against them.[41] Plaintiffs do not allege that Sheriff Gautreaux entered into an agreement with anyone to take any of these actions. Plaintiffs have failed to plead the specific operative facts of the alleged conspiracy.

---

[37] *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983); *Hillard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Suttles v. United States Postal Service*, 927 F. Supp. 990, 1001 (S.D.Tex.1996)**.**
[38] *Body* citing *Holdiness v. Stroud,* 808 F. 2d 424 (5th Cir. 1987)
[39] *Holdiness v. Stroud,* 808 F. 2d 417, 424 (5th Cir. 1987)
[40] Rec. Doc. 5 Paragraph 305
[41] Rec Doc 40 page 9

Further, the only type of conspiracy actionable under § 1985(3) is one motivated by racial animus.[42] "Stated differently, to state a claim under Section 1985(3), the plaintiff must allege sufficient facts showing defendants conspired to discriminate against the plaintiff on the basis of his or her race."[43] "Discriminatory purpose'"… "implies more than intent as volition or intent as awareness of consequences. It implies that a decisionmaker…selected or reaffirmed a particular course of action at least in part 'because of its adverse effects upon an identifiable group."[44]

Plaintiffs have not alleged any facts to suggest that there was an agreement whose purpose was to deprive any person or class of persons of the equal protection of the laws. Further, Plaintiffs have not alleged any facts to suggest that there was an agreement based on race or that the EBRSO Defendants conspired with anyone to discriminate against Plaintiffs on the basis of his or her race.

Plaintiffs admits in their opposition that a Section 1985(3) civil conspiracy claim requires racial motivation.[45] Plaintiffs do not assert that they specifically pled that the alleged conspiracy was racially motivated. Instead, Plaintiffs assert "the Complaint contains enough to infer at least plausible motivation, because it describes an extraordinary overreaction by law enforcement to a Black-led march involving Black Lives Matter protesting the shooting of a Black man."[46] Plaintiffs do not cite to any place in their complaint where they allege that the protest was a Black-led march, involving Black Lives Matter. Nevertheless, these allegations would not be sufficient to show that

---

[42] *Daigle v. Gulf States Utils. Co.*, 794 F.2d 974, 979-80 (5th Cir. 1986).
[43] *Duncan v. United Services Automobile Association Ins.,* 2016 WL 3952091 (July 22, 2016) citing *Newsome v. EEOC*, 301 F. 3d 227, 232 (5th Cir. 2002)
[44] *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 271-72, 113 S. Ct. 753, 122 L. Ed. 2nd 34 (1993)
[45] Rec Doc 102-2 page 9
[46] Rec Doc 40 page 10

the Defendants entered into an agreement to discriminate against Plaintiffs based on their race or that there was any agreement among the Defendants that was motivated by racial animus.

Plaintiffs claim in their opposition, but not in their complaint, that their civil conspiracy claim is also based on Section 1983. To this extent that this Court considers this claim, plaintiffs have failed to state a cause of action for a Section 1983 conspiracy.  Plaintiffs cite *Cinel v. Connick,* 15 F. 3d 1338, 1343 (5th Cir. 1994) as listing the elements of a Section 1983 civil conspiracy. A Section 1983 conspiracy is often used to hold non-state actors liable under Section 1983 if they have conspired with state actors**.** *Cinel v. Connick* involved a conspiracy between state and private actors. The court held that to support his conspiracy claims, facts must be alleged to suggest: 1.) an agreement between the private and public defendants to commit an illegal act, and 2.) an actual deprivation of constitutional rights. Clearly, Plaintiffs have not alleged a conspiracy claim under the elements outlined in *Cinel v. Connick* as they claim because they have not alleged a conspiracy between state and private actors. Further, to succeed on a claim for civil conspiracy under Section 1983, the plaintiff cannot rely on mere conclusory allegations; rather he must make reference to material facts. [47]A plaintiff must allege specific facts to show an agreement.[48] In addition, **to** succeed on a § 1983 claim for civil conspiracy, the plaintiff must prove the deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy.[49] Plaintiffs' bare-bones conclusory allegations that each of the Individual Defendants took concrete steps to enter into an agreement are conclusory and devoid of the material facts of the agreement. In addition, Plaintiffs

---

[47] *Brinkman v. Johnston,* 793 F.2d 111, 113 (5th Cir.1986); *Gopalam v. Smith,* No. CIV.A. 12-542-JJB, 2014 WL 518199, at *3 (M.D. La. Feb. 6, 2014), aff'd, 575 F. App'x 442 (5th Cir. 2014)
[48] *Priester v. Lowndes County,* 354 F. 3d 414, 421 (5th Cir. 2004)
[49] *Pfannstiel v. City of Marion,* 918 F.2d 1178, 1187 (5th Cir.1990) *abrogated on other grounds by Martin v. Thomas,* 973 F.2d 449, 455 (5th Cir.1992).

assert in their opposition that the Defendants who were parties to the alleged conspiracy are Defendants Holden, Dabadie, Gautreaux and Edmondson.[50] However, Plaintiffs do not allege that any of these defendants were actually involved in the arrests of, detention of, or use of excessive force on any of the Plaintiffs. To the extent that this Court determines that Plaintiffs have made a conspiracy claim under Section 1983, this claim should be dismissed.

Plaintiffs assert in their opposition, but not in their compliant, that their civil conspiracy claim is also based on State Common Law.[51] To the extent that this Court considers this claim, Plaintiffs have failed to state a cause of action based on State Law conspiracy. Louisiana Civil Code Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." As the Louisiana Supreme Court has explained, Article 2324 "does not by itself impose liability for a civil conspiracy," for " '[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.' " *Ross v. Conoco, Inc.*, 828 So. 2d 546, 552 (La. 2002)(quoting *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 4/8/98) 710 So. 2d 1171, 1174, *writ denied*, 98-1247 (La. 6/19/98), 721 So. 2d 473); *see also Currier v. Entergy Servs., Inc.*, 11-2208, 2014 WL 4450360, at *2 (E.D. La. Sept. 10, 2014).

Thus, "[i]n order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury ... The

---

[50] Rec Doc 102-2  page 8
[51] Rec Doc 102-2  page 8

plaintiff must establish that there was an agreement as to the intended outcome or result." *Butz*, 97-2166 at *6, 710 So. 2d at 1174 (citing *Silver v. Nelson*, 610 F. Supp. 505, 516—17 (E.D. La. 1985); *Walker v. American Honda Motor Co., Inc.*, 93–1659, p. 6 (La. App. 3 Cir. 6/1/94); 640 So. 2d 794, 797, *writ denied*, 94–1741 (La.10/7/94); 644 So.2d 644).

Plaintiffs do not state what tort they allege the conspirators agreed to perpetrate. Plaintiffs have failed to allege sufficient facts to give rise to an inference "that there was an agreement as to the intended outcome or result." To the extent that this Court determines that Plaintiffs have made a conspiracy claim under State common law, this claim should be dismissed.

Further, Plaintiffs allege that in the implementation of the conspiracy the officers, deputies and troopers employed the customs and policies of the law enforcement agencies.[52] Plaintiffs assert that Sheriff Defendants cannot explain why this allegation contradicts Plaintiffs' allegation that these officers, deputies and troopers were acting in accordance with and in furtherance of a conspiracy. On the contrary, in order to allege a conspiracy claim, Plaintiffs must allege that the wrongful conduct was the result of *an agreement* between law enforcement officers to violate their rights. Plaintiffs' allegations that the officers acted pursuant to customs and policies of law enforcement agencies contradicts their assertion that the officers acted pursuant to *an agreement* among the law enforcement agencies to violate the Plaintiffs' rights.

In addition, Sheriff Gautreaux is entitled to qualified immunity as to the claims against him based on a Section 1985 conspiracy. Plaintiffs have not alleged sufficient facts to show that a reasonable official in Sheriff Gautreaux's position would have known with any certainty that he

---

[52] Rec. Doc. 59 ¶ 304

was violating Plaintiffs' constitutional rights. [53] Plaintiffs seek to distinguish the facts in *Ziglar v. Abbasi,* from the facts alleged herein. However, Sheriff Defendants cite *Ziglar* for the proposition that qualified immunity is applicable to a Section 1985(3) claim and that a reasonable official in Sheriff Gautreaux's position would have to have known with certainty that what he was doing was violating Plaintiffs' constitutional rights. Therefore, Plaintiffs' Section 1985 conspiracy claim against Sheriff Gautreaux should be dismissed with prejudice.

### E.  State Law Claims

Plaintiffs admit that they are not alleging that Sheriff Gautreaux was personally involved in their arrests.[54] Plaintiffs assert that, instead, his tort liability arises from his negligent or intentional creation of policies and practices that he knew or should have known would lead to Plaintiffs' illegal arrests.[55] However, Plaintiffs do not allege that any EBRSO sheriff deputy was directly involved in making their arrests, or the alleged use of excessive force. Plaintiffs once again rely solely on Figure 44 in the Complaint as their allegation of EBRSO sheriff deputies "direct involvement in their arrests."[56] However, the caption to Figure 44 does not mention East Baton Rouge Parish Sheriff's deputies. The caption merely provides that it is three frames from a video that "shows lines of police officers blocking off East Blvd. (left and right) and St. France St. (middle)" Further, the pictures are blurry, such that it is impossible to tell which law enforcement agencies were represented in Figure 44. Finally, even if the video showed East Baton Rouge

---

[53] The Supreme Court applied qualified immunity to a Section 1985(3) conspiracy in *Ziglar v. Abbasi,* 137 S. Ct. 1843, 198 L. Ed. 2d 290 (June 19, 2017) ("reasonable officials in petitioner's positions would not have known and could not have predicted that Section 1985(3) prohibited their joint consultations and the resulting policies that caused the injuries alleged.")
[54] Rec Doc 102-2 page 10
[55] Rec Doc 102-2 page 10
[56] Rec Doc 102-2 page 10

Sheriff deputies standing in a line on the street during the protests, this alleged fact, would not establish that the deputies participated in arresting, detaining, or using excessive force on any of the Plaintiffs.

Plaintiffs state law claims against Sheriff Gautreaux should be dismissed.

**F.  Claims against Nova**

Since Nova is only sued as the insurer of the Sheriff Gautreaux, to the extent that any and/or all claims are dismissed against Sheriff Gautreaux they should also be dismissed against Nova. Plaintiffs are bringing claims against Sheriff Gautreaux's insurer, Nova, under the Louisiana Direct Action Statute, La. R.S. 22: 1269, to recover any and all sums Nova may be obligated to pay on behalf of its' insured, Sheriff Gautreaux.[57]

Plaintiffs assert that Nova cannot avail itself of Sheriff Gautreaux's defense of qualified immunity because it is a personal defense. However, qualified immunity is not a personal defense, as the term has been defined in Louisiana jurisprudence, and thus the defense is available to Nova, as the insurer of Sheriff Gautreaux.

The cases cited by Plaintiffs doe not address the issue herein of whether the defense of qualified immunity is available to the insurers of individual government defendants sued pursuant to Section 1983. The Court in *Burge v. Parish of St. Tammany,* 1994 WL 665063 (E.D. La. 1994) squarely addresses this issue.  The court in *Burge* found that the defense was not a personal defense under as contemplated by Louisiana law and was available to the insurers. Contrary to Plaintiffs' assertion, the Court in *Burge* did address the Louisiana Supreme Court's decision in *Descant v. Adm'rs of Tulane Educ. Fund,* 639 So. 2d 246 (La. 1994).

---

[57] Rec. Doc. 59 ¶¶ 330, 333

The court in *Burge* quoted the Louisiana Supreme Court in *Descant,* 639 So. 2d at 250 that personal defenses are those:

> granted to all members of a specific class and do not depend on the nature of the accident. For example, interspousal immunity applies to all married persons and prohibits all tort litigation between spouses during marriage.[58]

The court in *Burge* concluded that the qualified immunity defense is not a personal defense because it is not a blanket immunity automatically granted to a government employee. The court explained: "Both the Section 1983 liability of the individual defendants and the availability of the qualified immunity defense arise from their status as government employees, but the application of that defense depends on the facts of this case, *i. e.,* did the defendants act in an objectively reasonable manner given the circumstances they faced."[59] The court explained further that qualified immunity is a substantive, not just a procedural defense and that a defendant's successful use of qualified immunity terminates a plaintiff's cause of action against the official in his individual capacity. Therefore, the court in *Burge,* concluded that qualified immunity is not a personal defense, as that term has been defined in Louisiana jurisprudence; and thus, the defense is available to insurers of individual government defendants.

Plaintiffs' reliance on *Descant v. Adm'rs of Tulane Educ. Fund,* 639 So. 2d 246, fn. 9 (La. 1994) and *Marcel v. Delta Shipbuilding Co.,* 45 So. 3d 634, 640 (La. Ct. App. 4th Cir. 2010) is misplaced. These cases merely cited the types of defenses that have been determined to be personal by Louisiana courts and did not address specifically the the qualified immunity defense to Section

---

[58]*Burge,* at page 2
[59] *Burge,* at page 3

1983 claims.  Further, the cases that actually held that state law governmental immunity was a personal defense did so based upon the then in place state governmental immunity defense that governmental entities were in every circumstance immune from suit.[60] The court's rational was that if a governmental entity purchased liability insurance and the court permitted an insurer to raise the immunity of the entity in every lawsuit against it, the entity would have paid its premiums for nothing at all. The court explained as follows:

> [The insurer] has received from the New Orleans City Park Association a valuable consideration. If the defense of immunity from suit is available to it in this case, this insurance company is, in truth and in fact, receiving public moneys without consideration, for we cannot imagine any case sounding in tort which might successfully be prosecuted against it under the insurance contract.[61]

Unlike the then existing state law governmental immunity defense, qualified immunity is not a defense to liability available to every public official no matter the facts of the particular case. Rather, the defense of qualified immunity is based upon whether the public official acted in an objectively reasonable manner given the circumstances he faced.  Unlike governmental immunity, once recognized under Louisiana law, qualified immunity is a substantive and not a procedural defense. Therefore, unlike "governmental immunity," Section 1983 qualified immunity is not a personal defense because it is not applicable to all governmental officers; but is based on the facts of each case.

Plaintiffs cite several federal cases as holding that qualified immunity is a personal defense. However, these cases are not on point. None of these cases involve whether qualified immunity is

---

[60] See *Rome v. London & Lancashire Indem. Co. of America,* 169 So. 132 (La. Ct. App., Orleans, 1936);
[61] *Rome*, at 137

a personal defense as that term has been defined n Louisiana jurisprudence for determining whether the defense can be asserted by an insurer. For instance, in *Stallworth v. Slaughter,* 436 Fed. App'x 337, 340 (5th Cir. 2011) the court merely stated that "the personal defense of qualified immunity does not apply to official-capacity claims." In *Woodfox v. LeBlanc,* 14-cv-662, 2015 WL 1650281, at*4 (M.D. La. April 14, 2015), the court stated: "Qualified immunity is a personal defense. In order to impose liability under Section 1983, Mr. Woodfox must sufficiently allege that each prison official sued was personally and directly involved in conduct causing the alleged deprivation of an inmate's constitutional rights." The cases cited by Plaintiffs do not address whether qualified immunity is a personal defense as the term has been defined in Louisiana jurisprudence for determining whether it is a defense that can be asserted by an insurer.

Therefore, to the extent that the claims against Sheriff Gautreaux or dismissed, these claims should also be dismissed as to his insurer, Nova.

### G.  Plaintiff should be denied leave to amend

Plaintiffs assert that in the event the Court decides that Plaintiffs' claims lack sufficient factual support, Plaintiffs request leave to amend the Complaint to remedy the error.[62] Plaintiffs have already had sufficient opportunity to amend their Complaint to address any deficiencies asserted by Sheriff Defendants. Sheriff Defendants filed a Motion to Dismiss Plaintiffs' First Amended Complaint on September 28, 2017. (Rec Doc 26) Plaintiffs filed their Second Amended Complaint on January 2, 2018. (Rec Doc 59). Any deficiencies asserted by Sheriff Defendants should have been addressed therein. Sheriff Defendants then filed a Motion to Dismiss the Second Amended Complaint. Unlike in this case, the case cited by Plaintiffs, *Public Health Equip. &*

---

[62] Rec Doc 102-2 page 12

*Supply Co., v. Clarke Mosquito Control Equip. Inc.,* 410 Fed. Appx. 738, 740 (5th Cir. 2010), was the plaintiff's first request for leave to amend and the Court noted, "Public's motion was not merely a bare request to amend appended to the end of a response to a motion to dismiss, but was instead clearly set out and titled in a section of its response."

Plaintiffs' request for leave to amend their Complaint if this Court finds they have not alleged sufficient facts to state a claim for relief should be denied.

## H.  Conclusion

For the foregoing reasons and the reasons set forth in their memorandum in support of motion to dismiss, defendant, Sheriff Sid J. Gautreaux, III and AIX Group, doing business as NOVA CASUALTY COMPANY ("Nova") request that their Motion to Dismiss and in the Alternative Motion to Strike be granted and Plaintiffs' Second Amended Complaint be dismissed or stricken in its entirety for violating Rule 8's mandate that a complaint contain a short and plain statement of the claim and that it be simple, concise and direct.   In the alternative, Sheriff Gautreaux and Nova request that all exhibits, figures and material incorporated into the Second Amended Complaint by reference in a footnote be stricken. In the event that this Court does not dismiss or strike the entire Second Amended Complaint, Sheriff Gautreaux and Nova request that Plaintiffs' claims be dismissed against them with prejudice for the reasons set forth in their Memorandum in Support of Motion to Dismiss and in the Alternative Motion to Strike and this Reply Memorandum in Support of Motion to Dismiss and in the Alternative Motion to Strike.

Respectfully submitted:

**ERLINGSON BANKS, PLLC**

*s/ Catherine S. St. Pierre*
MARY G. ERLINGSON (#19562)

25

CATHERINE S. ST. PIERRE (#18419)
TARA L. JOHNSTON (#28100)
One American Place
301 Main Street, Suite 2110
Baton Rouge, Louisiana 70801
Telephone: (225) 218-4446
Facsimile: (225) 246-2876

<u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that a copy of the above and foregoing Reply Memorandum in Support of Motion to Dismiss and in the Alternative Motion to Strike has been served on counsel for all parties to this proceeding via the court's electronic service this 26th day of April , 2018.

Baton Rouge, Louisiana, this 26th day of April 2018.

<u>/s/   Catherine S. St. Pierre</u>
Catherine S. St. Pierre