UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BLAIR IMANI, ET AL.

CIVIL ACTION

VERSUS

NO. 17-439-JWD-EWD

CITY OF BATON ROUGE, ET AL.

## RULING AND ORDER ON MOTION TO STAY DISCOVERY

Before the court is a Motion to Stay Discovery[1] filed by defendants, Sid. J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux") and AIX Group, d/b/a/ NOVA Casualty Company ("Nova") (collectively, the "EBRSO Defendants"). The Motion to Stay Discovery is opposed by plaintiffs, Blair Imani, Akeem Muhammad, Raae Pollard, Samantha Nichols, Tammy Cheney, Alexus Cheney, Victor Onuoha, Antonio Castanon Luna, Nadia Salazar Sandi, Karen Savage, Cherri Foytlin, Dr. Daniel Liebeskind, Alisha Feldman, Finn Phoenix, and Leah Fishbein ("Plaintiffs")[2] and the EBRSO Defendants have filed a Reply.[3] For the reasons set forth herein, the Motion to Stay Discovery[4] is **GRANTED IN PART**.

**IT IS HEREBY ORDERED** that discovery in this matter, with the exception of written discovery between Plaintiffs and the non-moving defendants (*i.e.*, parties other than EBRSO Defendants), is **STAYED** pending resolution of the issues raised in the Motion to Dismiss.[5]

### I.    Background

This suit arises out of the July 5, 2016 shooting of Alton Sterling and the subsequent protests that occurred in Baton Rouge, Louisiana on July 8-10, 2016. Plaintiffs are thirteen

---

[1] R. Doc. 92.

[2] R. Doc. 101.

[3] R. Doc. 109.

[4] R. Doc. 92.

[5] R. Doc. 96.

protestors and two reporters[6] who were allegedly unlawfully arrested at or near the intersection of East Boulevard and France Street in Baton Rouge on July 10, 2016.[7] Plaintiffs assert they were "arrested with perjurious affidavits of probable cause that are facially false and contradictory"[8] and that while they were written up for "resisting arrest" and either "obstruction of a highway" or "obstruction of a public passageway," there was no correlation between where each Plaintiff was standing and which crime they were charged with.[9] Plaintiffs contend that the policies and practices of the City of Baton Rouge and Parish of East Baton Rouge (the "City/Parish"), the Baton Rouge Police Department (the "BRPD"), and the East Baton Rouge Sheriffs' Office (the "EBRSO") caused violations of their constitutional rights[10] and in addition to asserting a *Monell* claim,[11] assert claims pursuant to 42 U.S.C. § 1983 for violation of their First Amendment rights of speech and assembly,[12] freedom of the press,[13] and retaliation.[14] Additionally, Plaintiffs assert claims for false arrest and imprisonment,[15] unlawful search and seizure in violation of the Fourth

---

[6] Second Amended Complaint, R. Doc. 59, ¶ 10.

[7] R. Doc. 59, ¶ 4. *See also*, R. Doc. 59, ¶ 92 ("Three primary incidents occurred that Sunday that give rise to Plaintiffs' claims. The first is the peaceful protest at France Blvd. and East St., in which most of the Plaintiffs were arrested while standing on private property after clearing the streets and sidewalks in compliance with law enforcement orders. The second is the separation and arrest of Tammy Cheney and her 17-year-old daughter Alexus Cheney, and the seizure of Tammy Cheney's five-year-old son. The third is the violent takedown and arrest of Antonio Castanon Luna and his wife Nadia Salazar Sandi, who were standing at a street corner a few blocks from the protest.").

[8] R. Doc. 59, p. 46.

[9] R. Doc. 59, ¶¶ 180-181. Plaintiffs further contend that their affidavits of arrest contain false locations and other information and false descriptions of Plaintiff's conduct. R. Doc. 59, ¶¶ 183 (alleging false information contained in affidavits of arrest for all plaintiffs other than Onuoha and Sandi).

[10] R. Doc. 59, ¶¶ 253-257.

[11] R. Doc. 59, ¶¶ 307-315. Plaintiffs assert this claim against "policymaker defendants." Plaintiffs do not define the term "policymaker defendants" in their Second Amended Complaint.

[12] R. Doc. 59, ¶¶ 258-264.

[13] R. Doc. 59, ¶¶ 265-270. This claim is only asserted by Karen Savage and Cherri Foytlin against all Defendants.

[14] R. Doc. 59, ¶¶ 271-275.

[15] R. Doc. 59, ¶¶ 276-281.

Amendment,[16] excessive force,[17] and failure to intervene.[18] Plaintiffs further allege that all defendants engaged in a civil conspiracy to violate Plaintiffs' civil rights,[19] and assert commensurate claims of violations of the Louisiana state constitution,[20] as well as claims for various torts.[21]

Plaintiffs name (1) the City of Baton Rouge and the Parish of East Baton Rouge (referred to by Plaintiffs as the "City/Parish");[22] (2) Melvin "Kip" Holden, former Mayor-President of the City/Parish, in his individual capacity;[23] (3) Sheriff Gautreaux in his individual and official capacity;[24] (4) Carl Dabadie Jr., the former Chief of the BRPD, in his individual capacity;[25] (5) Jonny Dunnam, the former Interim Chief of the BRPD, in his official capacity;[26] (6) the Louisiana State Police ("LSP");[27] (7) Col. Michael Edmonson, the former Superintendent of the Louisiana State Police ("LSP"), in his individual capacity only;[28] (8) Kevin Reeves, the Superintendent of the LSP, in his individual capacity only;[29] (9) Nova, the alleged insurer of the LSA and some of

---

[16] R. Doc. 59, ¶¶ 282-287.

[17] R. Doc. 59, ¶¶ 288-295.

[18] R. Doc. 59, ¶¶ 296-300.

[19] *See*, 42 U.S.C. § 1985(3); R. Doc. 59, ¶¶ 301-306.

[20] R. Doc. 59, ¶¶ 316-317.

[21] R. Doc. 59, ¶¶ 318-322 (asserting infliction of emotional distress, negligent infliction of emotional distress, assault, battery, false imprisonment, malicious prosecution, and negligence).

[22] R. Doc. 59, ¶¶ 35 & 36.

[23] R. Doc. 59, ¶ 37.

[24] R. Doc. 59, ¶ 38.

[25] R. Doc. 59, ¶ 39.

[26] R. Doc. 59, ¶ 40.

[27] R. Doc. 59, ¶ 41.

[28] R. Doc. 59, ¶ 42.

[29] R. Doc. 59, ¶ 43.

its members, including the East Baton Rouge Sheriff's Office ("EBRSO");[30] and (10) various individual officers.[31]

The EBRSO Defendants have moved to dismiss Plaintiffs' Second Amended Complaint.[32] In support of their Motion to Dismiss, the EBRSO Defendants assert, *inter alia*, that Plaintiffs' claims against Sheriff Gautreaux in his individual capacity should be dismissed because Sheriff Gautreaux is entitled to qualified immunity.[33] The EBRSO Defendants further assert in support of their Motion to Dismiss that NOVA, as the insurer of Sheriff Gautreaux, is also entitled to qualified immunity.[34]

---

[30] R. Doc. 59, ¶ 58.

[31] R. Doc. 59, ¶¶ 44-56 (naming Billy Walker P10177, Jonathan Abadie P10439, Officer Reab Simoneaux Jr. P10121, Officer William Alexander P10539, Sgt. Derrick Williams P7021, Officer Curtis Wilson P1057, Officer Taylor Giroir P10410, Officer Alex Bell P10508, Officer Travis Norman P10420, Corporal Willie Williams P10178, Officer Darren Hunt, Officer Earl Lapeyrouse, Sgt. Jeff Pittman, Cpl. Jason Dohn, Lt. Kenny Brewer, Cpl. Richard McCloskey, Officer James Thomas, Officer Earnest Jones, Sgt. Kirk Glover, Cpt. Keith Wilson, Alaina Mancuso, Lt. Beau Comeaux, Sgt. Herman Newell, Trooper William Seymour, Sgt. Kevin Cannatella, Sgt. John Clary, Tpr. Joe Dessens, Sgt. Mark Dennis, Sgt. Michael Dowden, Tpr. Jonathan James, Sgt. Gerald Varnado, Tpr. Sanuel Capaci, Tpr. Herman Newell, and Sgt. Kevin Curlee). Plaintiffs identify some of these officers by their affiliation. R. Doc. 59, ¶ 51 (identifying Pittman, Dohn, Brewer, McCloskey, Thomas, Jones, Glover, Wilson as BRPD officers); ¶¶ 53-56 (identifying Comeaux, Newell, Seymour, Cannatella, Clary, Dessens, Dennis, Dowden, James, Varnado, Capaci, Newell, and Curlee as LSP Personnel). The Second Amended Complaint also names unknown "officers of the BRPD, EBRSO, LSP, and other law enforcement agencies…." R. Doc. 59, ¶ 57. On January 12, 2018, the City/Parish, Holden, Dabadie, Dunnam and BRPD officers Alex Bell, Darren Hunt, Earl Lapeyrouse, Jonathon Abadie, Taylor Giroir, Derrick Williams, Keith Wilson, Travis Norman, Earnest Jones, Kenny Brewer, William Alexander, James Thomas, Kirk Grover (improperly named "Kirk Glover"), Willie Williams, Jason Dohm, Reab Simoneaux, Jr., Alaina Mancuso, Jeff Pittman, Richard McCloskey, Billy Walker, and Curtis Wilson filed a Motion to Strike the Second Amended Complaint. R. Doc. 64. LSP and the LSP officers, Colonel Kevin Reeves, Superintendent of the Louisiana State Police, Michael Edmonson, former Superintendent of the Louisiana State Police, Lt. Beau Comeaux, Master Trooper Herman Newell, Trooper William Seymour, Senior Trooper Joe Dessens, Sgt., Mark Dennis, Trooper Jonathan James, Sgt. Gerald Varnado, Master Trooper Samuel Capaci, Sgt. Kevin Curlee, Sgt. Kevin Cannatella, Sgt. John Clary have also filed a Motion to Strike. R. Doc. 68. Based on the responsive pleadings, it appears that the individual officer defendants are either affiliated with BRPD or LSP.

[32] R. Doc. 96.

[33] R. Doc. 96-1, pp. 13-17.

[34] R. Doc. 96-1, pp. 28-30.

On the same day the EBRSO Defendants sought dismissal of Plaintiffs' claims,[35] they also filed the instant Motion to Stay Discovery.[36] The EBRSO Defendants assert that in light of the assertion of qualified immunity, all discovery should be stayed until the court rules on their Motion to Dismiss.[37] In opposition to the EBRSO Defendants' request to stay discovery pending resolution of the Motion to Dismiss, Plaintiffs argue that (1) the Motion to Stay should be denied because the EBRSO Defendants have "proffered no evidence of the required showing of annoyance, embarrassment, oppression, or expense;"[38] and because a stay of these proceedings would unreasonably prejudice Plaintiffs[39] (2) the EBRSO Defendants' assertion of qualified immunity is not likely to succeed[40] and depends on resolution of fact issues such that discovery should be allowed;[41] and (3) NOVA, as an insurer, cannot enjoy the benefits of Sheriff Gautreaux's defense of qualified immunity.[42]

## II.    Law and Analysis

### A.    General Precepts Regarding Stays Are Inapplicable and Plaintiffs' Concern Regarding Prejudice Is Unpersuasive in Light of Fifth Circuit Jurisprudence Regarding the Assertion of Qualified Immunity

"Qualified immunity shields 'government officials performing discretionary functions' from civil liability for claims under federal law 'insofar as their conduct does not violate clearly

---

[35] *See*, R. Doc. 91 (Motion for Leave to File Memorandum in Excess of Page Limit attaching proposed Motion to Dismiss and in the alternative Motion to Strike).

[36] R. Doc. 92.

[37] R. Doc. 92-1, p. 4 ("Defendants object to any and all discovery in this case until this Court has had the opportunity to determine whether Plaintiffs' pleadings assert facts which, if true, would overcome the defense of qualified immunity.").

[38] R. Doc. 101, p. 2.

[39] R. Doc. 101, pp. 9-10.

[40] R. Doc. 101, p. 3.

[41] R. Doc. 101, pp. 8-9.

[42] R. Doc. 101, p. 9.

established statutory or constitutional rights of which a reasonable person would have known.'"[43] "[Q]ualified immunity constitutes an 'immunity from suit' rather than a mere defense to liability."[44] The issue of qualified immunity should be resolved at the earliest possible stage of litigation because "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive."[45]

The Fifth Circuit has long held that an assertion of qualified immunity shields a government official from discovery that is "avoidable or overly broad."[46] Significantly, "it is only when the district court 'is unable to rule on the immunity defense without further clarification of the facts' and when the discovery order is 'narrowly tailored to uncover only those facts needed to rule on the immunity claim,' that an order allowing limited discovery is neither avoidable nor overly broad."[47] Although discovery on the issue of qualified immunity is possible, such discovery "must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[48] "If the complaint alleges facts to

---

[43] *Randle v. Lockwood*, 666 Fed. Appx. 333, 335 (5th Cir. 2016) (internal citations omitted).

[44] *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).

[45] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

[46] *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987).

[47] *Wilson v. Sharp*, Civil Action No. 17-84, 2017 WL 4685002, at * 2 (M.D. La. Oct. 17, 2017) (citing *Lion Boulos*, 834 F.2d at 507-508).

[48] *Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir. 1995). *See also*, *Baker v. Ephion*, Civil Action 15-838, 2017 WL 3996415, at *2 (M.D. La. Sept. 11, 2017) (staying discovery in light of defendant's asserted qualified immunity defense and explaining that "discovery on the issue of qualified immunity 'must not proceed until the district court *first* finds that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.") (citing *Wicks*); *Lee v. Ard*, Civil Action No. 17-23, 2017 WL 5349493, at * 7 (M.D. La. Nov. 13, 2017) ("When the defense of qualified immunity is raised in a Rule 12(b)(6) motion, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness.' The plaintiff must support his claim with 'sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.' When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity. 'The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.'") (internal citations and quotations omitted).

overcome the defense of qualified immunity, the district court may then proceed under *Lion Boulos* to allow the discovery necessary to clarify those facts upon which the immunity defense turns."[49]

Accordingly, the Fifth Circuit permits discovery only *after* a determination has been made that the plaintiff has alleged facts sufficient to state a claim against the defendant. Even discovery limited to the issue of qualified immunity is allowed only if the court is unable to rule on the qualified immunity defense without additional facts and then only such discovery as is necessary to rule on the qualified immunity defense is permitted.

Plaintiffs first argue that the EBRSO Defendants must show good cause and reasonableness for their requested stay of discovery, and that pursuant to Federal Rule of Civil Procedure 26(c), "the party requesting stay must shows [sic] that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay."[50] None of the cases relied upon by Plaintiffs in support of their position that the EBRSO Defendants must make this showing involve the question of a stay pending resolution of the qualified immunity defense.[51] Rather than

---

[49] *Id.* at 995. *See also*, *Backe*, 691 F.3d at 648 ("a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity. *After* the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.'") (citing *Lion Boulos*, 834 F.2d at 507-508); *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("The district court failed to make an initial determination that the plaintiffs' allegations, if true, would defeat qualified immunity, falling short of the finding required by *Backe* and *Wicks*; and unlike the court in *Lion Boulos*, the district court did not identify any questions of fact it needed to resolve before it would be able to determine whether the defendants were entitled to qualified immunity."); *Randle*, 666 Fed. Appx. 336, n. 6 (noting that the "narrow exception to the general rule that qualified immunity should be decided as early in the litigation as possible" is only applicable where the district court first determines that "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity" and second finds that despite plaintiff's pleadings it is still unable to rule on the immunity defense without further clarification of the facts.).

[50] R. Doc. 101, p. 2.

[51] R. Doc. 101, pp. 2-3. *See*, *Von Drake v. National Broadcasting Co., Inc.*, No. 3-04-CV-0652, 2004 WL 1144142 (N.D. Tex. May 20, 2004) (considering general rules applicable to stays pending a motion to dismiss filed in a *pro se* race and age discrimination case); *Feldman v. Flood*, No. 97-51-Civ-J-10C, 176 F.R.D. 651 (M.D. Fl. Sept. 2, 1997) (declining to stay action pending motion to dismiss shareholder derivative action); *Parish of Jefferson, Louisiana v. Southern Recovery Management, Inc.*, Civ. A 96-0230, 1996 WL 144400 (E.D. La. March 27, 1996) (staying discovery unrelated to jurisdictional issues); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) (explaining generally that "the power to stay proceedings is incidental to the power inherent in every court to control the

considering the general precepts relative to the court's inherent power to control its docket and manage proceedings before it, Fifth Circuit jurisprudence is clear that when a defendant asserts the defense of qualified immunity, a stay of discovery pending resolution of the defense is appropriate. To the extent Plaintiffs rely on more generalized rules regarding the appropriateness of stays pending resolution of motions to dismiss, the undersigned finds that the more specific instructions set forth in this Circuit regarding the assertion of qualified immunity control. Further, the Supreme Court has explained that "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"[52] In light of that consideration, Plaintiffs' argument that not allowing discovery to proceed would be prejudicial to them is unpersuasive.[53] There is no indication that a ruling on the Motion to Dismiss will be so significantly delayed that deposition testimony will be unreliable, and in any event such concern is present in any case where a stay is imposed pending resolution of the qualified immunity defense. Further, with respect to Plaintiffs' concern that records will be lost, the undersigned agrees with the EBRSO Defendants that "preservation of evidence can be accomplished by

---

disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *AXA Equitable Life Ins. Co. v. Infinity Financial Group, LLC*, No. 08-806110CV, 2012 WL 602709 (S.D. Fl. Feb. 23, 2012) (considering motion to lift stays over case and arbitration related to criminal proceedings). Plaintiffs also cite *Wilson v. Sharp*, Civil Action No. 17-84, United States District Court, Middle District of Louisiana, R. Doc. 38. In the document cited by Plaintiffs, this court denied a motion to stay discovery pending resolution of motion to dismiss for misjoinder, or, in the alternative, sever inmate plaintiffs' claims. Significantly, this court later stayed discovery pending resolution of a Motion to Dismiss asserting the defense of qualified immunity based on the Fifth Circuit jurisprudence discussed herein. *See, Wilson*, 2017 WL 4685002, at * 2.

[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236, (1991) (KENNEDY, J., concurring in judgment)).

[53] Plaintiffs contend that a stay would be unreasonably prejudicial to them because "[t]he reliability of deposition testimony is improved the closer in time it is taken to the events at hand" and that "a delay in discovery also runs the risk of physical evidence, phone records, text messages, voice mails, and emails, being destroyed." R. Doc. 101, pp. 9-10.

instructing the defendants to preserve evidence in this matter, which Plaintiffs have done in this case."[54]

**B. Plaintiffs' Arguments Regarding the Merits of the EBRSO Defendants' Qualified Immunity Defense and the Need for Discovery Regarding Qualified Immunity Are More Appropriately Considered in the Context of the EBRSO Defendants' Motion to Dismiss**

Plaintiffs spend a significant amount of time in their briefing in opposition to the Motion to Stay Discovery addressing the likely success of Sheriff Gautreaux's qualified immunity defense.[55] Plaintiffs argue that their rights were clearly established and that their Complaint alleges facts against Sheriff Gautreaux sufficient to overcome qualified immunity.[56] Plaintiffs contend that "Defendants will not be able to avail themselves of qualified immunity given the facts plead in the complaint."[57] Plaintiffs further assert that the qualified immunity defense turns on fact issues such that "should the court decide to impose a stay, it should order discovery tailored to the fact issues necessary to resolve qualified immunity…."[58]

The EBRSO Defendants have filed a Motion to Dismiss based on, *inter alia*, the assertion of qualified immunity, and that Motion to Dismiss is pending before the District Judge. Plaintiffs' arguments regarding the sufficiency of their allegations and the viability of the qualified immunity defense are more appropriately directed to the District Judge in the context of that Motion to Dismiss. As explained herein, the Fifth Circuit has "established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary

---

[54] R. Doc. 109, p. 9.

[55] R. Doc. 101, pp. 3-8.

[56] *See*, R. Doc. 101, p. 5 ("Defendants argue that discovery should be stayed until the Court first determines if the pleaded facts overcome Gautraux's assertion of qualified immunity. But Plaintiffs have alleged facts sufficient to overcome the defense.").

[57] R. Doc. 101, p. 8.

[58] R. Doc. 101, p. 9.

to ascertain the availability of that defense."[59]  "First, the district court must determine that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[60]  "When reviewing a complaint that meets this standard, the district court may defer its qualified immunity ruling and order limited discovery if the court remains unable to rule on the immunity defense without further clarification of the facts."[61]  Plaintiffs' instant arguments regarding the sufficiency of their pleadings and the need for fact discovery with respect to the qualified immunity defense put the cart before the horse.  First, the District Judge must consider the sufficiency of Plaintiffs' allegations.  Only after Plaintiffs have crossed this threshold hurdle, does the question of limited discovery potentially arise.[62]  Here, the District Judge has not yet determined the sufficiency of the allegations in Plaintiffs' complaint.  Until that necessary first step occurs, it is premature to consider allowing even limited discovery.

---

[59] *Hinojosa v. Livingston*, 807 F.3d 657, 664 (5th Cir. 2015).

[60] *Id.*

[61] *Id.*

[62] Plaintiffs cite case law supporting this method.  *See*, R. Doc. 101, p. 8 (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) ("[T]his court has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense….a district court must first find that the plaintiffs pleadings assert facts which, if true, would overcome the defense of qualified immunity….After the district court finds a plaintiff has so pleaded, if the court remains unable to rule on the immunity defense without further clarification of the facts, it may issue a discovery order narrowly tailored to uncover only those facts needed to rule on the immunity claim.") (internal citations and quotations omitted).

### C. Because Nova Has Also Asserted the Defense of Qualified Immunity, A Stay of Discovery As to Nova is Appropriate

Plaintiffs contend that the defense of qualified immunity is "personal" to Sheriff Gautreaux and therefore cannot be asserted by defendant's insurer, NOVA.[63] Plaintiffs' argument regarding NOVA's ability to benefit from the qualified immunity defense has been raised by Plaintiffs in opposition to the Motion to Dismiss,[64] and, much like Plaintiffs' assertions regarding the sufficiency of their allegations and the likely success of Sheriff's Gautreaux's qualified immunity defense, will be determined by the District Judge in the context of that Motion to Dismiss. Accordingly, while that issue is pending before the District Judge, it is appropriate to stay discovery as to Nova.[65]

### D. A Stay of All Discovery, With the Exception of Written Discovery to the Non-Moving Defendants, Is Appropriate

Finally, Plaintiffs contend that this court "should not apply the stay to the thirty-eight defendants who have not claimed qualified immunity."[66] In their Reply, the EBRSO Defendants state that they "have no objection to the other thirty-eight defendants engaging in *written* discovery with Plaintiffs;" however, the EBRSO Defendants "object to the Plaintiffs and other defendants taking depositions in this case while Sheriff Defendants' motion to dismiss is pending."[67] The EBRSO Defendants further assert that they "would be compelled to participate in the depositions of the other defendants and/or fact witnesses if they are taken while their motion to dismiss

---

[63] R. Doc. 101, p. 9.

[64] R. Doc. 104, pp. 11-12.

[65] In any event, it is unclear what discovery from Nova Plaintiffs would seek. Nova, as the alleged insurer of Sheriff Gautreaux, presumably would not have any knowledge regarding the underlying facts of this suit.

[66] R. Doc. 101, p. 9.

[67] R. Doc. 109, pp. 2-3.

asserting qualified immunity is pending, which would be contrary to the protections afforded public officials by qualified immunity."[68]

As to Plaintiffs' assertion that a stay of discovery should only apply to the EBRSO Defendants, the Supreme Court has explained that "[t]he basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'"[69] "It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery as to the other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position. Even if petitioners are not yet themselves subject to discovery orders, then, they would not be free from the burdens of discovery."[70]

---

[68] R. Doc. 109, p. 3.

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 685 (2009) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236, (1991) (KENNEDY, J., concurring in judgment)).

[70] *Id.* at 685-686. *See also*, *Wilson*, 2017 WL 4685002, at * 2 (staying discovery against all defendants because "staying all discovery to permit resolution of the qualified immunity defense that has been asserted by Sgt. Sharp, Lt. Oliveaux and Capt. Spurlock furthers their interests in being shielded from the burdens of being required to participate in discovery (even discovery that is not directed specifically to them), pending resolution of the defense. For example, even if this Court were to limit the stay order to only discovery directed to Sgt. Sharp, Lt. Oliveaux and Capt. Spurlock, those individuals might still feel compelled to participate in the discovery process related to others, such as depositions of other witnesses that may be scheduled prior to resolution of the qualified immunity issues.") (internal citation omitted). Plaintiffs cite cases prior to *Iqbal* wherein courts refused to stay discovery related to other defendants who were not entitled to claim qualified immunity. *See*, *O'Dwyer v. Louisiana*, Civil Action No. 06-7280, 582 F.Supp.2d 789, 791 (E.D. La. Sept. 25, 2008) (refusing to stay proceedings in light of certain defendants' appeal); *Estate of Sorrells v. City of Dallas*, No. 3-99-CV-1185, 192 F.R.D. 203, 210 n. 8 (N.D. Tex. Feb. 25, 2000) (allowing discovery against municipality and noting "parties who may be entitled to conduct discovery to the full extent allowable under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Until the qualified immunity issue is decided, discovery from Nassar must be limited as outlined in this order."); *Gauglitz v. City of Dallas*, No. Civ.A 3:95-CV-3123, 1997 WL 786246, at * 2 n. 3 (N.D. Tex. Dec. 15, 1997) (noting that while defendants were correct that discovery as to defendants asserting qualified immunity could not proceed until after a determination of the defense, discovery as to the City could proceed); *Gilbert v. City of Dallas*, No. Civ. 3:99CV1463, 2000 WL 748153, at * 3 (N.D. Tex. June 8, 2000) (stating that City of Dallas was not entitled to qualified immunity and therefore discovery against the City could proceed). In light of Plaintiffs' conspiracy allegations, the undersigned finds the *Iqbal* Court's concerns regarding discovery as to other defendants particularly applicable.

Here, although only the EBRSO Defendants have moved to stay discovery, the undersigned finds that staying discovery as to all parties in this suit would "further[] [the EBRSO Defendants'] interests in being shielded from the burdens of being required to participate in discovery (even discovery that is not directed specifically to them), pending resolution of the defense."[71] Especially in light of Plaintiffs' allegations that all defendants participated in a civil conspiracy in violation of Plaintiffs' civil rights, the undersigned finds that the EBRSO Defendants would feel compelled to participate in discovery efforts, such as depositions of other witnesses, prior to resolution of the Motions to Dismiss. However, in light of the EBRSO Defendants' assertion that they do not object to the non-moving defendants and Plaintiffs engaging in written discovery, the court will allow such written discovery to proceed.

### III. Conclusion

For the reasons set forth herein, the Motion to Stay Discovery filed by the EBRSO Defendants[72] is **GRANTED IN PART**.

**IT IS HEREBY ORDERED** that discovery in this matter, with the exception of written discovery between Plaintiffs and the non-moving defendants (*i.e.*, parties other than EBRSO Defendants), is STAYED pending resolution of the issues raised in the Motion to Dismiss.[73]

Signed in Baton Rouge, Louisiana, on May 14, 2018.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[71] *Wilson*, 2017 WL 4685002, at * 2.

[72] R. Doc. 92.

[73] R. Doc. 96.