**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

**BLAIR IMANI, ET AL**

**VERSUS**

**CITY OF BATON ROUGE, ET AL**

**CIVIL ACTION**

**NO.: 17-CV-439-JWD-EWD**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER**

**MAY IT PLEASE THE COURT:**

Defendants, City of Baton Rouge/Parish of East Baton Rouge, Former Mayor Melvin Lee Holden, Former Chief Carl Dabadie, Jr., Chief Murphy Paul, Billy Walker, Jonathan Abadie, Reab Simoneaux, William Alexander, James Thomas, Derrick Williams, Curtis Wilson, Taylor Giroir, Alex Bell, Travis Norman, Willie Williams, Darren Hunt, Earl Lapeyrouse, Alaina Mancuso, Jeff Pittman, Jason Dohm, Kenny Brewer, Richard McCloskey, James Thomas, Earnest Jones, Kirk Glover, Keith Wilson, (collectively referred to as "the City of Baton Rouge" or "the City/Parish"), through undersigned counsel, respectfully submits this memorandum in support of their Motion for Protective Order for the reasons stated herein.

**FACTUAL BACKGROUND**

On July 10, 2016, Plaintiffs Blair Imani, Akeem Muhammad, Raae Pollard, Sami Nichols, Tammy Cheney, Alexus Cheney, Victor Onuoha, Antonio Castanon Luna, Nadia Salazar Sandi, Karen Savage, Cherri Foytlin, Dr. Daniel Liebeskind, Alisha Feldman, Finn Phoenix, and Leah Fishbein were arrested during the July 10, 2016, protest on East Boulevard and France Street (near Government Street) in Baton Rouge, Louisiana, following the death of Alton Sterling. Their action was filed against several law enforcement agencies,[1] including the Baton Rouge Police Department

---

[1] Louisiana State Police and East Baton Rouge Sheriff's Office

("BRPD") and its officials alleging claims under 42 U.S.C. § 1983, Section 1985(3), and state law. Plaintiffs assert multiple civil rights violations, including but not limited to false arrest, excessive force, and obstruction of free speech, that allegedly occurred during the protest.

Specifically, plaintiffs allege that this lawsuit centers on three connected events that occurred on July 10, 2016. (Doc. 59 at ¶ 14). The first is the protest at France St. and East Blvd., in which most of the Plaintiffs were arrested while standing on private property after allegedly clearing the streets and sidewalks in compliance with law enforcement orders. (*Id*.). The second is the arrest of Tammy Cheney and her daughter Alexus Cheney, who were arrested near their vehicle. (*Id*.). The third is the arrest of Antonio Castanon Luna and his wife Nadia Salazar Sandi, who were allegedly standing at a street corner a few blocks from the protest. (*Id*.).

Plaintiffs further allege the following: on July 10, 2016, a peaceful, youth-led protest marched to the State Capitol building. (*Id*. at ¶ 4). Afterwards, the protesters marched back down Government St., but encountered a roadblock at the intersection of Government St. and East Blvd., which allegedly caused them to turn onto East Blvd. (*Id*.). A block down, the protesters stopped at the intersection of East Blvd. and France St. where they allegedly gathered to continue their protest. (*Id*.).

Purportedly, law enforcement officers by the score gathered across from the protesters, wielding automatic weapons, body armor and gas masks, and an acoustic weapon (LRAD) mounted on an armored vehicle. (*Id*. at ¶ 5). Law enforcement officers then allegedly blocked off the streets, ordered protesters out of the streets, and consequently, ordered protesters off the sidewalks. (*Id*. at ¶¶ 5–7). Plaintiffs allege that this in turn caused them to enter Ms. Lisa Batiste's yard, who had given them permission to use her property. (*Id.* at ¶ 7). Thereafter, law enforcement ordered the protesters to disperse. (*Id*. at ¶¶ 8–9). And those who did not disperse were arrested.

(*Id*.). Plaintiffs were arrested and charged with "Obstructing a Public Passageway" or "Obstruction of a Highway" and "Resisting Arrest." (*Id*. at ¶ 9).

## DISCOVERY BACKGROUND

On December 12, 2018, the parties met and conferred regarding, *inter alia*, the City/Parish's responses to Plaintiffs' First Set of Requests for Production of Documents ("RFP") propounded to the City of Baton Rouge Defendants. Particularly, Requests Nos. 52 and 61 requested the entire BRPD Policy and Procedure Manual, and "[a]ll Internal Affairs Preliminary Forms, Accountability Forms, and Investigation Reports with an Incident Date or Date Occurred of July 10, 2016," respectively.

With respect to RFP No. 52, the BRPD Policy and Procedure Manual is a law enforcement document, just shy of 900 pages, containing confidential and/or sensitive law enforcement material concerning matters that could jeopardize law enforcement strategies and officer safety. The City/Parish responded with a request that Plaintiffs narrow the scope of the information sought within the Manual to better determine the exact information sought. Instead, Plaintiffs requested a copy of the entire Manual. In a Supplemental Response, the City/Parish provided the Table of Contents of the Manual in effect in 2016, and requested that Plaintiffs request particular General Orders.

With respect to RFP No. 61, a redacted version of an IA investigative report regarding at least three BRPD officers who anonymously filed a complaint against another BRPD officer who allegedly engaged in "Conduct Unbecoming an Officer" during PPT processing at BRPD headquarters on the day of the July 10, 2016 protest was produced by the City/Parish. Plaintiffs requested the unredacted version of the report. In a Supplemental Response, the City/Parish provided that the complainants in the IAD Investigation agreed to waive their anonymity subject

to a protective order. The complainants only agree to disclose their identities to the Plaintiffs and to the Court; therefore, this motion merely seeks to bar disclosure to the general public, including the media. No BRPD officer involved in the IAD Investigation is currently a party to this litigation.

## LAW AND ARGUMENT

A party seeking a protective order must show good cause and a specific need for protection. *Bucher v. Richardson Hosp. Authority*, 160 F.R.D. 88, 92 (N.D. Tex. 1994)(citing *Landry v. Air Line Pilots Association,* 901 F.2d 404, 435 (5th Cir. 1990); *Harris v. Amoco Production Co.,* 768 F.2d 669, 684 (5th Cir.1985)). "Good cause" exists when justice requires the protection of "a party or person from any annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c); *Landry,* 901 F.2d at 435. The court must balance the competing interests of allowing discovery and protecting parties and deponents from undue burdens. *Farnsworth v. Procter & Gamble Co.,* 758 F.2d 1545, 1547 (11th Cir.1985); *Dow Chemical Co. v. Allen,* 672 F.2d 1262, 1277-78 (7th Cir.1982). The burden is upon the movant to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Choice, Inc. of TX v. Graham*, 226 F.R.D. 545, 547 (E.D. La. 2005) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted)).

In this case, disclosure of information and documentation related to confidential and/or sensitive law enforcement material concerning matters that could jeopardize law enforcement strategies and officer safety places an undue burden on the Baton Rouge Police Department who must fight to preserve such information for the safety of its officers and the public at large. Likewise, disclosure of anonymous complainants within the BRPD places an undue burden on the

department and officers investigating interdepartmental complaints. The City/Parish simply asserts that any documents produced in whole should remain confidential.

Specifically, this Court should grant the City/Parish's Motion for Protective Order as follows:

1. No party shall intentionally contact or communicate with any member of the media (published, televised, or otherwise) or openly discuss "confidential information" knowing that the media is present. Neither shall any party post any comment or information pertaining to said "confidential information" on the internet.

2. Confidential information includes information and documentation related to confidential and/or sensitive law enforcement material, and the law enforcement officers' confidential personnel information;

3. Any discovery of confidential information will be used only for purposes of the litigation;

4. Any disclosure of such confidential information is limited to those with a legitimate and reasonable need to obtain it for purposes of conducting the litigation;

5. The City/Parish provides that its method for identifying confidential documents produced pursuant to a protective order is with a **CONFIDENTIAL** stamp; and

6. The City/Parish requests that all discovery be returned or destroyed at the end of the case.

The City/Parish proposes that "confidential information" be defined as documents and other tangible things to be produced in this litigation and/or that have been produced in this litigation, which contain personal information, financial information, information intended by those involved to be secret, or other law enforcement sensitive or safety related information. Under the City/Parish's proposed order, any party producing confidential documents subject to the protective order stamps the confidential document "confidential" and must undertake, in good faith, to designate as confidential only those documents which they believe contain "confidential information" as defined above.

Moreover, this procedure is reasonable and is precisely the kind of blanket protective order that permits the parties to protect documents that they in good faith believe contain personal or

other confidential information, which is regularly approved by the courts. See *Holland v. Summit Autonomous, Inc.*, 2001 WL 930879, at *6 (E.D. La. Aug. 14, 2001) ("Such protective orders are routinely agreed to by the parties and approved by the courts in commercial litigation."), *citing Bayer AG and Miles, Inc. v. Barr Laboratories*, 162 F.R.D. 456, 465 (S.D.N.Y. 1994); see also *Blanchard and Company, Inc. v. Barrick Gold Corp.*, 02-3721, 2004 WL 737485, at * 5-6 (E.D. La. Apr. 5, 2004). Indeed, as the court in *Holland* observed, "'[b]lanket' protective orders are essential to the functioning of civil discovery." *Id*.

## CONCLUSION

For the foregoing reasons, the City/Parish prays that this Honorable Court issue a protective order herein protecting any information sought during the discovery process deemed confidential.

**RESPECTFULLY SUBMITTED:**

**ANDERSON O. "ANDY" DOTSON, III
INTERIM PARISH ATTORNEY**

/s/ Candace Ford
**Candace Ford** (#37686)
Assistant Parish Attorney
**Tedrick K. Knightshead** (#28851)
First Assistant Parish Attorney
**A. Gregory Rome** (#21062)
Director of Litigation/Risk Management
222 St. Louis Street, 9th Floor
Baton Rouge, LA 70802
(225) 389-3114 - Telephone
(225) 389-8736 - Facsimile
cford@brla.gov - Email
tknightshead@brla.gov - Email
grome@brla.gov – Email

## **CERTIFICATE**

I hereby certify that a copy of the foregoing was this date electronically filed with the Clerk of Court using the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Baton Rouge, Louisiana this **14th** day of **March**, 2019.


        **/s/ Candace Ford**
            **CANDACE B. FORD**