UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| BLAIR IMANI, *et al.* | ) ) ) ) ) ) ) ) ) ) ) | Docket No. 17-cv-00439-JWD-EWD |
| Plaintiffs, | | |
| v. | | |
| CITY OF BATON ROUGE, *et al.* | | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi hereby submit this memorandum in support of their *Motion for Partial Summary Judgment* on their claims of excessive force in violation of the Fourth Amendment.

## I.    INTRODUCTION

Since 2000, it has been "clearly established" in this Circuit that it is "objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive." *Trammell v. Fruge*, 868 F. 3d 332, 343 (5th Cir. 2017). Since Defendant officers Hamilton, Blust, and Crockett did *exactly* that to Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi, summary judgment should follow.

On July 10, 2016, Mr. Luna and Ms. Sandi attended a peaceful protest related to the killing of Alton Sterling by Baton Rouge Police Department officers. Once they observed police in full riot gear who were escalating actions against protesters, they decided to leave the protest area. They made it as far as the sidewalk on the corner of Government Street and Maximillian Street where a police barricade prevented them from leaving. At that point, Mr. Luna and Ms. Sandi stopped to wait for a friend before finding a way to get to their car to leave.

1

Mr. Luna and Ms. Sandi joined in some chants as they waited, but they stayed on the sidewalk and out of the road, in compliance with police orders to clear the roads. Despite this, three Baton Rouge Police Department officers targeted and tackled Mr. Luna and Ms. Sandi to the ground without warning, held them down on the ground, and wrenched Mr. Luna's ankle and knee, injuring him. Defendants used zipties to restrain each Plaintiff; they were tied so tight to the hands of Mr. Luna and Ms. Sandi that their hands tuned purple and went numb. Despite requests for medical care, neither Plaintiff was given any medical attention for hours.

It is undisputed that several Baton Rouge officers tackled Mr. Luna and Ms. Sandi even though they were not fleeing, not violent, and not aggressive. Accordingly, Mr. Luna and Ms. Sandi respectfully request that this Court grant them partial summary judgment on the issue of excessive force.

## II.    LEGAL STANDARD

Summary judgment is appropriate when there "is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322, 106 S.Ct. 2548. The non-movant must offer "specific facts" rather than "mere allegations or denials" in order to defeat a motion for summary judgment. Fed. R. Civ. P. 56(e).

### III.     UNDISPUTED FACTUAL BACKGROUND

On July 10, 2016, Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi participated in the protest march to the state capitol building. Ex. A ("Declaration of Nadia Salazar Sandi"); Ex. B ("Declaration of Antonio Castanon Luna"). The police had closed several streets in the area. *Id*. After the march, Plaintiffs had trouble returning to their vehicle that was parked near the interstate and Government Street. *Id*. They stopped at the intersection of East Boulevard and France Street when they encountered a group of police equipped with riot gear. *Id*. They were unable to reach their vehicle and the police steered them back into the protest. *Id.*

Mr. Luna and Ms. Sandi joined protesters near Lisa Batiste's yard. *Id.* While there, the police ordered the protesters to clear the area and told them they would be arrested if they did leave. R. Doc. 59 at ¶ 106. When law enforcement advanced on Ms. Batiste's property, Plaintiffs saw law enforcement violently throw protesters to the ground and arrest them. Ex. A at 6, B at 6. Plaintiffs left the intersection and made their way to the sidewalk on the corner of Government Street and Maximillan Street; at that corner, the police blocked them again. Ex. A at 7, B at 7. They stopped there to wait for a friend before finding a way to get to their car to leave, as police had directed. *Id*. at 8. While waiting, they joined in some of the protest chants. *Id*. They believed that they were following police orders by standing on the sidewalk. *Id.* at 9. At no point did either Mr. Luna and Ms. Sandi stand in the roadway. *Id.*

Then Officer Alan Hamilton, Cpl. Brandon Blust, and Ofc. James Crockett tackled Mr. Luna and Ms. Sandi to the ground. *Id*. at 10; Ex. C at Int. 22 ("Supplemental Answers to Plaintiffs' Fourth Set of Interrogatories to Chief Murphy Paul").

News video confirms that Mr. Luna and Ms. Sandi were standing on the sidewalk at the time of the tackle, with Ms. Sandi's hand on a sign-post. Figure 1, below, shows the moment at which an officer initiates the use of force. The subsequent figures show the sequence of events. These figures are screenshots taken from videos attached here as Exhibits D, E, and F.



**Figure 1:** Nadia and Antonio (red circle) holding onto the street sign post as an officer (right) tackles Nadia from behind.

**Figure 2:** Ofc. Alan Hamilton, Cpl. Brandon Blust, and Ofc. James Crockett tackle Nadia and Antonio to the ground.

**Figure 3:** The officers complete the tackle.



**Figure 4:** Nadia and Antonio lay limp and compliant as the officers ziptie their hands together.



**Figure 5:** Antonio is dragged by the officers for transport to the parish jail.



Video shows both Plaintiffs hitting the ground hard and being held down by the officers. Ex. D at 10:40, E at 00:58, F at 05:40. Mr. Luna and Ms. Sandi were pushed into the ground as officers ziptied their hands. Exhibits A at 11, B at 12, D at 10:40, E at 00:58, F at 05:40. Before long, both Plaintiffs experienced numbness from the zipties and Ms. Sandi's hands began to turn purple. Ex. A at 11, B at 12. Throughout this, bystanders can be heard on video asking the police what Mr. Luna and Ms. Sandi had done wrong. Ex. F at 06:00.

5

According to their arrest documentation, Mr. Luna and Ms. Sandi were arrested for obstructing public passages under La. R.S. 14:100:1, as well as resisting an officer under La. R.S. 14:108. Exhibits G, H.

## IV.   DISCUSSION

The Fourth Amendment creates a "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012); *accord* U.S. Const. amend. IV. A plaintiff alleging excessive force must prove three elements for a successful claim of excessive force: (1) an injury; (2) that the injury was a direct result of the use of force; and (3) that the use of force was clearly unreasonable. *See*, *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir., 2017); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

Determining whether a particular use of force was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). These factors are judged through an objective lens of a reasonable officer on the scene at that time. *Id*. at 396-397.

The Fifth Circuit has laid down a clear marker for a specific set of facts for what constitutes excessive force. In *Trammell v. Fruge*, 868 F. 3d 332, 343 (5th Cir. 2017), the court held that it has been "clearly established" since at least 2013 that it is "objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive."

A. <u>Injuries sustained by Mr. Luna and Ms. Sandi as a result of the excessive force are cognizable and were a direct result of the use of force.</u>

The first two elements of an excessive force claim are (1) an injury (2) resulting from a use of force. *Trammell, supra,* at 340. "[T]he extent of injury necessary to satisfy the injury

6

requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 Fed.Appx. 69, 79 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434–35 (5th Cir. 1996). As a result, *any* injury suffered from an unreasonable use of force "necessarily exceeds the *de minimus* threshold." *Id*. Relatively insignificant physical injuries as well as "purely psychological injuries" are cognizable so long as the officer's use of force was unreasonable. *Brown*, 524 Fed. Appx. at 79.

Mr. Luna and Ms. Sandi's injuries easily exceed this low threshold. Defendants tackled both Plaintiffs onto a concrete surface. Exhibits A at 10, B at 10, D at 10:40, E at 00:58, F at 05:40. Officers held both Plaintiffs on the ground, injuring both Plaintiffs and wrenching Mr. Luna's ankle and knee. *Id*. Those undisputed facts, alone, are sufficient for a claim of unreasonable force. Yet Plaintiffs continued to suffer after that point, including their hands turning purple due to the cuffs cutting off circulation. Ex. A at 11. Mr. Luna experienced swelling of his ankle so severe that blood could not flow to his feet. Ex. B at 13. Ms. Sandi reported fearing for her life and being terrified that the last time she would ever see Mr. Luna, who was her husband when they were forcefully separated at the hands of Defendants. Ex. A at 12.

Just considering the injury from the tackle itself and excluding the subsequent resulting injuries, Plaintiffs' injuries equal or exceed those found to exceed the *de minimus* threshold. *See, e.g., Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir., 2017) (Officers tackled Plaintiff, pinning him into the concrete, and manipulated his torso, neck, and head); *Sam v. Richard*, 887 F.3d 710 (5th Cir., 2018) (Plaintiff suffered a slap and minor bleeding from a scrape); *Bone v. Dunnaway* , 657 Fed.Appx. 258, 262 (5th Cir. 2016) (Plaintiff suffered bruising and a swollen cheek); *Schmidt v. Gray*, 399 Fed.Appx. 925, 928 (5th Cir. 2010) (Plaintiff's finger was swollen and bruised after being slammed in a car door by Defendant); *Williams v. Bramer*, 180 F.3d 699,

7

704 (5th Cir. 1999) (Plaintiff suffered dizziness, coughing, and a loss of breath after being choked by Defendant). Summary judgment should follow.

> B. Defendants' use of force was unreasonable because it is identical to what the Fifth Circuit ruled "objectively unreasonable" in *Trammell*.

The third element of an excessive force claim is that the use of force was clearly unreasonable. *Trammell, supra,* at 340. Police officers are permitted to use some degree of force when seizing an individual for arrest, but the amount of force must be objectively reasonable considering the context "without regard to [the officers'] underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Reasonableness depends on "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Minor offenses will "militat[e] against the use of force." *Trammell, supra*, 868 F.3d at 340.

Here, it is undisputed that Mr. Luna and Ms. Sandi were standing on a sidewalk at the time of the use of force. Ex.A at 10, B at 10, D at 10:40, E at 00:58, F at 05:40. Each were arrested and booked for obstructing public passages under La. R.S. 14:100:1, as well as resisting an officer under La. R.S. 14:108. Ex. G, H. Charges against both of them were dropped. Exhibits J at Int. 16, 17 ("Nadia Salazar Sandi Responses to Interrogatories") and K at Int. 16, 17 ("Antonio Castanon Luna Responses to Interrogatories"). These minor, non-violent offenses do not justify the degree of force used by Defendants. Defendants tackled Mr. Luna and Ms. Sandi to the ground, held them down forcefully, and ziptied their hands so tight that they went numb and turned purple. Exhibits A at 10-11, B at 10-12. Mr. Luna's knee and ankle were wrenched and injured as a result of Defendants tackling him. Ex. B at 11. Even assuming they *did* obstruct a public passageway, there is no relation between this high degree of force and their actions as alleged by the arresting officers. Such a use of force has been declared "objectively unreasonable." *Trammell v. Fruge*, 868 F. 3d 332, 343 (5th Cir. 2017) ("objectively

8

unreasonable" for "several officers to tackle an individual who was not fleeing, not violent, not aggressive.")

As for the allegation of resisting an officer, such a claim does not give law enforcement a free pass to use any amount of force. *Trammell*, 868 F.3d at 341. When an individual *passively* resists arrest, use of force is unreasonable. *Id*.; see also *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734, 740 (5th Cir. 2000). An officer must also give an individual a reasonable about of time to comply with an order before resorting to force. *Trammell*, 868 F.3d at 342.

Video of the incident shows that both Mr. Luna and Ms. Sandi were standing on a sidewalk when they were tackled by officers. Ex. D at 10:40, E at 00:58, F at 05:40. A witness can be heard on one video confirming this, stating that Mr. Luna "was just standing there. He was just standing there." Ex. F at 7:20. At no point in the video can you hear or observe the officers giving either Mr. Luna or Ms. Sandi an order to comply; indeed, you can hear an order given over a loudspeaker only *after* they were both tackled to the ground. Ex. D, F.

According to Baton Rouge Police Department General Order No. 135, "Less Lethal Force," passive resistance is defined as "[p]assive physical actions such as going limp, refusing to place hands in a position to be hand-cuffed **or what is commonly considered to be demonstrator resistance**." Ex. I (emphasis added). The video footage of the arrest does not show Mr. Luna resisting at all (Ex. D, E, F) – even assuming all facts in favor of Defendants, he barely reaches the level of passive resistance as defined in the General Order. Ex. I. Even assuming Mr. Luna's actions could be construed as passive resistance, use of force would be improper. *Trammell*, 868 F.3d at 342.

Further, *even if* Mr. Luna or Ms. Sandi had actively resisted arrest, the tackle which is the basis of this Motion occurred *before* any alleged resistance while he was being handcuffed. As

9

shown in the video footage, Plaintiffs were standing on the sidewalk, nowhere near law enforcement when Defendants Blust, Hamilton, and Crockett tackled them from behind. Ex, D, E, and F. Defendants cannot allege resistance retroactively to justify their use of force – the force must be reasonable **when it occurred**. *Trammell*, 868 at 340 (emphasis added).

Because the degree of force greatly exceeded what was objectively reasonable in light of the circumstances, Defendants violated Mr. Luna and Ms. Sandi's Fourth Amendment right to be free from excessive force during a seizure.

C. <u>Defendants are not entitled to qualified immunity.</u>

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This immunity only applies when (1) law enforcement's conduct violated a constitutional right, and (2) that right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). That Defendants' conduct violated Mr. Luna and Ms. Sandi's Fourth Amendment rights to be free from excessive force was discussed in Parts IV-A and IV-B, so a qualified immunity defense will only succeed if Defendants can show that the right was not clearly established law.

For a right to be considered clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "Although this does not mean that 'a case directly on point' is required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). This inquiry primarily focuses on whether the Defendant had fair warning that the action constituted a violation. *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013).

10

By July 2016, the Fifth Circuit concluded that law enforcement violated the Fourth Amendment for similar uses of force in situations involving passive resistance and low-level offenses that posed no threat to officers. See, e.g., *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 734, 740 (5th Cir. 2000).

Most on-point of all is *Trammell v. Fruge*, 868 F. 3d 332 (5th Cir. 2017). In that case, an intoxicated motorcyclist in 2013 refused to comply with two direct orders by an officer. *Id*. at 335. The motorcyclist resisted arrest by pulling his arm away from the officer, and then was tackled to the pavement by several officers. *Id*. at 337. The Fifth Circuit reversed a grant of defendants' summary judgment because it was "clearly established" since at least 2000 that it is "objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive." *Id*. at 343 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000)).

Here, as detailed above, Plaintiffs were not fleeing, not violent, not aggressive. Ex. A at 10, B at 10, D at 10:40, E at 00:58, F at 05:40. They were standing on a sidewalk, holding onto each other and a street sign. *Id*. They were tackled from behind to the pavement by three officers, apparently on suspicion for the low-level offense of misdemeanor blocking of a street or public passage. *Id.* Accordingly, the officers' use of force was "objectively unreasonable" under the state of the law in 2016. *See, e.g., Goodson*, 202 F.3d at 740.

Furthermore, these officers would each have been trained on and aware of Baton Rouge Police Department General Order No. 135 titled "Less-Lethal Force." Ex. I. As stated in the policy section of that Order:

> It is the policy of the department that the use of force will be limited to situations involving resistance to arrest, defense against physical assault or to perform official duties, and that only force which is reasonable and necessary may be used to achieve these objectives.

> It is the responsibility of each employee to become knowledgeable of the provisions of this article and to guide his actions based on this policy and his training.
> …
> The use of force should follow a prescribed continuum: physical presence, verbal direction, aerosol subject restraint, soft empty hand control, hard empty hand control, TASER, intermediate weapons and finally when appropriate the use of deadly force.

*Id.* The officers' actions of tackling Plaintiffs – whether justified or not – most closely align with the definition of "Hard empty hand control," which is defined in the Order as "[e]mpty hand control techniques which have a probability of causing bruising or minor lacerations to the skin" rather than the level just below that on the continuum, "Soft Empty Hand Control" which are "hand control techniques which do not have a probability of injury (i.e. transport wrist locks, pressure points or simple strength techniques)." *Id*. The next level on the continuum is "TASER" followed by "Intermediate Weapons." *Id*. Defendants Blust, Hamilton, and Crockett would have been trained in this continuum and yet still chose to employ "Hard empty hand control" to respond to Plaintiffs allegedly obstructing a public passageway, far exceeding the response mandated under the General Order.

Defendants ignored both clearly established law and their own department policies when they bypassed the first four levels on the continuum and immediately engaged in hard empty hand control by tackling Mr. Luna and Ms. Sandi, holding them on the concrete, and wrenching their limbs into physical compliance. They are therefore not entitled to qualified immunity.

## V.     CONCLUSION

Even if Defendants' characterization of the events at issue are taken as true, the use of force by Baton Rouge Police Department officers Alan Hamilton, Cpl. Brandon Blust, and Ofc. James Crockett against Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi was clearly unreasonable. Therefore, Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi urge this

12

Court to grant the *Motion for Partial Summary Judgment* on their claims of excessive force in violation of the Fourth Amendment.

        Respectfully submitted,

*/s/ David Lanser*
DAVID LANSER
Louisiana Bar No. 37764
WILLIAM MOST
Louisiana Bar No. 36914
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

JOHN ADCOCK
Louisiana Bar No. 30372
P.O. Box 750621
New Orleans, LA 70175
Tel: (504) 233-3125
Fax: (504) 308-1266
Email: jnadcock@gmail.com

JACK M. RUTHERFORD
Louisiana Bar No. 34968
1700 S. Rampart St.
New Orleans, LA 70113
T: (415) 794-5639
F: (504) 407-2131
Email: jack@rfordlaw.com

Exhibits:

**Ex. A**: Declaration of Nadia Salazar Sandi

**Ex. B**: Declaration of Antonio Castanon Luna

**Ex. C**: Supplemental Answers to Plaintiffs' Fourth Set of Interrogatories to Chief Murphy Paul.

**Ex. D**: Video entitled "Juvenile Justice Information Exchange.mp4" which can be viewed at https://www.dropbox.com/s/cq5vkkr7roq0xz2/Juvenile%20Justice%20Information%20Exchange.mp4?dl=0

**Ex. E**: Video entitled "Hundreds arrested BLM MSNBC.mp4" which can be viewed at https://www.dropbox.com/s/gi7syejcs78lm3u/Hundreds%20arrested%20BLM%20MSNBC.mp4?dl=0

**Ex. F**: Video entitled "Christine L. Dixon was live2 (Antonio & Nadia).mp4" which can be viewed at

https://www.dropbox.com/s/pba6r962ke5axca/Christine%20L.%20Dixon%20was%20live2%20%28Antonio%20%26%20Nadia%29.mp4?dl=0

**Ex. G**: Affidavit of Probable Cause for the Arrest of Antonio Castanon Luna.

**Ex. H**: Incident Report for Nadia Salazar Sandi.

**Ex. I**: Baton Rouge Police Department General Order No. 135, "Less-Lethal Force."

**Ex. J**: Nadia Salazar Sani Responses to Interrogatories

**Ex. K**: Antonio Castanon Luna Responses to Interrogatories