UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BLAIR IMANI, ET AL                                CIVIL ACTION

VERSUS                                            NO.: 17-CV-439-JWD-EWD

CITY OF BATON ROUGE, ET AL
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>MEMORANDUM IN OPPOSITION OF MOTION FOR SUMMARY JUDGMENT</u>

MAY IT PLEASE THE COURT:

Defendants, CITY/PARISH, JAMES CROCKETT, BRANDON BLUST, and ALAN HAMILTON, respectfully submit this memorandum in opposition of the Partial Motion for Summary Judgment and in support thereof would respectfully show the Court the following:

<u>FACTS AND PROCEDURAL HISTORY</u>

Plaintiffs Antonio Castanon Luna and Nadia Salazar Sandi filed the instant case against Baton Rouge Police ("BRPD") Officers Alan Hamilton, Brandon Blust and James Crockett seeking damages under state law and 42 U.S.C. 1983 for false arrest and use of excessive force in violation of the Fourth and Fourteenth Amendment.

On July 10, 2016, a group of protestors participated an organized march which travelled to the State Capitol. After the march ended, a large number of protestors congregated at or around the intersection of East Boulevard and France Street in Baton Rouge, Louisiana (hereafter referred to as "July 10th protest"). This unplanned protest was not coordinated with BRPD. Protestors at this protest intentionally impeded the flow of traffic in the area and began throwing objects at law enforcement officers.[1]

---

[1] 1 Exhibit A, Affidavit of James Crockett, ¶ 4; Exhibit B, Affidavit of Brandon Blust, ¶ 4; and Exhibit C, Affidavit of Alan Hamilton, ¶ 4.

Officers Brandon Blust, Alan Hamilton, and James Crockett were present the July 10th protest.[2] Due to the illegal actions of numerous protestors, BRPD officers issued multiple dispersal orders to the crowd of protestors.[3] During the July 10th protest, plaintiffs Luna and Sandi intentionally stood in the roadway, and Luna loudly encouraged other protestors to disobey the dispersal orders and was verbally aggressive towards police officers.[4] Officers Blust and Hamilton commanded Luna to stop and ordered his arrest while he was standing in the roadway.[5] Luna disregarded these commands and eluded arrest by fleeing into/behind the crowd of protestors that he was standing in front of.[6] Due to officer safety concerns, Officers Blust and Hamilton could not pursue Luna after their commands because of the unruly nature of the crowd the and the fact that size of the crowd greatly outnumbered law enforcement officers on scene.[7]

Subsequently, additional law enforcement officers arrived on scene. Once a sufficient amount of officers were present, law enforcement was able to move towards the crowd of protestors to attempt to effect arrests and disperse the crowd.[8] Officers Crockett, Hamilton and Blust subsequently spotted the plaintiffs standing around the corner of Government Street and Maximillan Street in a continued effort to protest with other persons.[9] Officers Crockett, Blust and Hamilton joined together to apprehend Luna as a result of his earlier illegal actions and his

---

[2] Exhibit A, Affidavit of James Crockett, ¶ 3; Exhibit B, Affidavit of Brandon Blust, ¶ 3; and Exhibit C, Affidavit of Alan Hamilton, ¶ 3.
[3] Exhibit A, Affidavit of James Crockett, ¶ 5; Exhibit B, Affidavit of Brandon Blust, ¶ 5; and Exhibit C, Affidavit of Alan Hamilton, ¶5.
[4] Exhibit A, Affidavit of James Crockett, ¶ 6; Exhibit B, Affidavit of Brandon Blust, ¶ 6; and Exhibit C, Affidavit of Alan Hamilton, ¶ 6.
[5] Exhibit A, Affidavit of James Crockett, ¶ 7; Exhibit B, Affidavit of Brandon Blust, ¶ 7; and Exhibit C, Affidavit of Alan Hamilton, ¶ 7.
[6] Exhibit A, Affidavit of James Crockett, ¶ 8; Exhibit B, Affidavit of Brandon Blust, ¶ 8; and Exhibit C, Affidavit of Alan Hamilton, ¶ 8.
[7] Exhibit B, Affidavit of Brandon Blust, ¶ 9; and Exhibit C, Affidavit of Alan Hamilton, ¶ 9.
[8] Exhibit A, Affidavit of James Crockett, ¶ 9; Exhibit B, Affidavit of Brandon Blust, ¶ 10; and Exhibit C, Affidavit of Alan Hamilton, ¶ 10.
[9] Exhibit A, Affidavit of James Crockett, ¶ 10; Exhibit B, Affidavit of Brandon Blust, ¶ 11; and Exhibit C, Affidavit of Alan Hamilton, ¶ 11.

continued refusal to disperse from the area.[10] Because of Luna's earlier attempts to flee from arrest, Officers Crockett, Blust and Hamilton attempted apprehend Luna by quickly approaching him from out of his sightline.[11] Officer Crockett ran up and initially grabbed ahold of Luna.[12] As he tried to restrain him, Luna wrapped his arm around Sandi, pulled her to the ground, and fell on top of Officer Crocket while still holding on to Sandi.[13] Officers Blust and Hamilton were required to physically separate Luna's continued hold of Sandi.[14] Both Luna and Sandi were moved to a prone position to be handcuffed.[15] Luna and Sandi were lifted after being restrained with handcuffs and escorted away from Government Street to be processed for arrest.[16] No other force on Antonio Castanon Luna and/or and Nadia Salazar Sandi was alleged.[17]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce

---

[10] Exhibit A, Affidavit of James Crockett, ¶ 11; Exhibit B, Affidavit of Brandon Blust, ¶ 12; and Exhibit C, Affidavit of Alan Hamilton, ¶ 12.
[11] Exhibit A, Affidavit of James Crockett, ¶ 12; Exhibit B, Affidavit of Brandon Blust, ¶ 13; and Exhibit C, Affidavit of Alan Hamilton, ¶ 13.
[12] Plaintiffs; exhibit E Video entitled "Hundreds arrested BLM MSNBC.mp4 at 0:58-1:06.
[13] Exhibit A, Affidavit of James Crockett, ¶ 13; Exhibit B, Affidavit of Brandon Blust, ¶ 14; and Exhibit C, Affidavit of Alan Hamilton, ¶ 14.
[14] Exhibit A, Affidavit of James Crockett, ¶ 14; Exhibit B, Affidavit of Brandon Blust, ¶ 15; and Exhibit C, Affidavit of Alan Hamilton, ¶ 15.
[15] Exhibit A, Affidavit of James Crockett, ¶ 15; Exhibit B, Affidavit of Brandon Blust, ¶ 16; and Exhibit C, Affidavit of Alan Hamilton, ¶ 16.
[16] Exhibit A, Affidavit of James Crockett, ¶ 16; Exhibit B, Affidavit of Brandon Blust, ¶ 17; and Exhibit C, Affidavit of Alan Hamilton, ¶ 17.
[17] Exhibit A, Affidavit of James Crockett, ¶ 17; Exhibit B, Affidavit of Brandon Blust, ¶ 18; and Exhibit C, Affidavit of Alan Hamilton, ¶ 18.

evidence of the existence of a genuine issue for trial. *Id.* A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Beck v. Somerset Technologies, Inc.*, 822 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

**Plaintiff's § 1983 Claims Are Barred from Recovery under Qualified Immunity Doctrine**

The qualified immunity defense shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Once a defendant raises the defense of qualified immunity, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). This burden is satisfied if the plaintiff can show (1) that the defendant committed a constitutional violation under current law and (2) that the defendant's actions were objectively unreasonable in light of the law that was clearly established at the time of the alleged misconduct. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir.2009). The court has the authority to decide which prong of the qualified immunity inquiry to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). The following undisputed facts demonstrate the BRPD officers are entitlement to qualified immunity against the plaintiff's § 1983 claims.

*Excessive Force*

To prevail on an excessive force claim, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir.

2016), *citing, Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). Evaluating the reasonableness of the force used requires a case-specific balancing exercise in which "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest ...all play a part." *Hill v. Carroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009), citing, *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396. "[A]n officer's subjective motivation and intent are irrelevant" in evaluating an excessive force claim. *Id.* at 397, 109 S.Ct. 1865. A court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts. *Hill*, 587 F.3d at 234. Moreover, negligent or accidental conduct by police officers does not rise to the level of a constitutional violation. *Brower v. County of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378. 103 L.Ed.2d 628 (1989).

In this case, the officers were attempting to apprehend Luna, who continuously fled from officers' initial attempts of arrest, in a hostile environment. The evidence demonstrates that Luna was non-compliant with officers' instructions and actively resisted arrest multiple times. The evidence also shows that there were crowds of individuals, who were already challenging law enforcement actions, in close proximity to the arresting officers, which caused safety concerns. Quick restraint was necessary to ensure officer and public safety. A review of the video shows that Officer Crocket did not "tackle" Luna to the ground, but instead tried to quickly grab and restrain Luna, who in turn grabbed onto Sandi causing both plaintiffs to fall backwards onto Crocket and onto the ground. The video also shows that neither Officers Blust nor Hamilton brought Luna or

Sandi to the ground, but only assisted in the subsequent restraint.[18] The video shows that minimal force was used to separate Luna's hold on Sandi and place them in prone positions. Plaintiffs have failed to show that any of the force used was unreasonable in light of the circumstances and at very least a disputed issue of material fact exists as to the reasonableness of force used. *See*: *Cadena v. Ray*, 728 Fed. Appx. 293, 296 (5th Cir. 2018) (officers were justified in the "take down" because they had reason to believe arrestee posed a threat to their safety and resisted arrest when he was ordered to place his hands behind his back, but instead backed away from officers). Moreover, none of the acts of Officers Blust and Hamilton caused Luna to fall to the ground. Officers Blust and Hamilton only separated Luna's hold of Sandi and directed them to a prone position for handcuffing. Plaintiffs have not demonstrated any undisputable fact that those acts were unreasonable. As such, the plaintiffs' claim is barred by qualified immunity.

To the extent that plaintiff rely on *Trammell v. Fruge*, 868 F. 3d 332 (5th Cir. 2017), such an argument is without merit as: 1) the facts are readily distinguishable from the instant case, and 2) the Court did not make a finding that the force was objectively unreasonable, but rather determined that a dispute material fact existed as to the reasonableness of force used. In *Trammell*, the Court questioned the takedown measure due to the misdemeanor nature of the crime, the a danger the plaintiff presented to himself or others, and the lack of clarity on his attempt to flee/resist arrest.[19] In this case, officers had probable cause to charge Luna for participating/inciting a riot under LSA-R.S. 329.1 and 329.1. Luna had also previously vocalized aggression towards officers and repeatedly demonstrated to the defendant officers that he would attempt to run away if they approached him. Even if Officer Crockett's actions were deemed a

---

[18] Plaintiffs' exhibit E, Video entitled "Hundreds arrested BLM MSNBC.mp4 at 0:58-1:06.
[19] *Trammell*, 868 F.3d at 340-341.

takedown maneuver, which is contested by the defendants, such a maneuver would have been reasonable.

In the alternative, the plaintiffs have failed to provide any evidence that they suffered an injury directly and only as a result of this alleged event. Plaintiff Luna alleged that he suffered injury to his ankle, knee, and wrists as a result of this incident. To succeed on an excessive force claim, the plaintiff bears the burden of demonstrating an injury more than a *de minimis* injury which is evaluated in the context in which the force was deployed. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). In *Burton v. City of Senatobia*, CIV.A. 2:06CV216-P-A, 2008 WL 619301, at *9 (N.D. Miss. Mar. 3, 2008), the court held that a plaintiff must have medical proof that he was in fact injured. Because the plaintiff submitted no medical proof that he was injured during alleged arrests, the court found the injuries to be *de minimis* injuries which did rise to the level of excessive force as a matter of law. Similarly in *Kennedy v. City of Shreveport*, CIV.A. 07-1049, 2008 WL 2437043, at *4 (W.D. La. June 13, 2008), the Court found an officer was entitled to qualified immunity, as the facts alleged, taken in the light most favorable to the plaintiff, did not show more than a *de minimus* injury. The Court noted that while the plaintiff alleged physical pain as a result of the incident, he could only state that his back was tight for about a week and his medical records did not support a visit to a physician following this incident for complaints of physical pain. See also: *Jamison v. City of Shreveport*, CV 15-0267, 2016 WL 3920439, at *4 (W.D. La. July 18, 2016) (no constitutional violation of excessive force was found where plaintiff admitted in his deposition that his physical injuries were a head knot on his forehead, skin burns on the back and front of his arms, knee scuffs, and concrete burns on his shin areas but did not seek any medical treatment for his injuries). Because the plaintiffs in this case has failed to set

forth any substantive evidence of a resulting injury, they can establish no more than a *de minimus* injury and his excessive force should be dismissed.

To the extent the plaintiffs are seeking a claim based on overly tight handcuffs, the plaintiffs have failed to establish the necessary elements. First, the injuries alleged (hands turning purple with no medical treatment) would be categorized as a de minimus injury. *Jordan v. Liddell*, 3:16CV467TSL-RHW, 2017 WL 4582343, at *3 (S.D. Miss. Oct. 13, 2017) *citing*, *Lockett v. New Orleans City*, 607 F.3d 992, 999 (5th Cir. 2010) (bruising from overly tight handcuffs a de minimis injury); *Glenn v. City of Tyler*, 242 F.3d 307. 314 (5th Cir. 2007) (evidence of officers "twisting [the plaintiff's] arms behind her back while handcuffing her, 'jerk[ing] her all over the carport,' and apply[ing] the handcuffs too tightly" insufficient to make out claim where only bruising resulted); *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) ("[m]inor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); *Barnes v. Corr. Corp. of Am.*, No. CIV.A 5:09CV178-MTP, 2010 WL 2090106, at *2 (S.D. Miss. May 21, 2010) (sore shoulder, anxiety and a bruised ego are clearly de minimis injury which did not amount to constitutional violation).

Moreover, the plaintiff have not identified a specific officer who caused the handcuffs to be too tight, nor have they produced any evidence to establish that the officers acted maliciously or purposely used handcuffs to inflict harm upon him. *Jones v. Taylor*, 683 Fed. Appx. 299, 300 (5th Cir. 2017).

In the event the Court finds that denial of the plaintiff's motion is improper, the Court should defer judgment as premature under Fed.R.P Rule 56(d). Summary judgment is usually premature unless the parties have "had a full opportunity to conduct discovery." Denial of summary judgment may be appropriate if the moving party shows "by affidavit or declaration that,

for specified reasons, [they] cannot present facts essential to justify [their] opposition." Fed. R. Civ. P. 56(d). A party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citation omitted). Instead, a party must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* at 894. Rule 56(d) thus allows the court to deny or continue a premature motion for summary judgment so that a party might have additional time to gather evidence to oppose the motion.

Neither the plaintiffs nor the defendant officers have been deposed in this matter.[20] As demonstrated by the officers' recount of the events stated above, the plaintiffs' testimonies regarding their actions at the East/France Street protest are critical to the defense against their claims, including the force used by the officers. Depositions have not been requested by the undersigned counsel because, as the Court record shows, that there is still a pending motion to dismiss against the plaintiffs filed by another law enforcement agency and no scheduling order setting discovery deadlines has been issued. For efficiency purposes, depositions should not be scheduled until it is known what law enforcement parties remain in the lawsuit. Based on these circumstances, the motion for summary judgment is premature and should be denied.

**Accordingly,** the defendants pray that the plaintiff's motion for partial summary judgment be denied.

---

[20] Exhibit D, Declaration of Deelee Morris

By Attorneys:

ANDERSON O. "ANDY" DOTSON, III
PARISH ATTORNEY

/s/ Deelee S. Morris
Deelee S. Morris (#28775)
Special Assistant Parish Attorney
222 St. Louis Street, 9th Floor
Baton Rouge, LA 70802
Telephone: (225) 389-3114
Facsimile: (225) 389-8736
Email: dsmorris@brla.gov

## CERTIFICATE

I hereby certify that a copy of the foregoing Opposition to Plaintiffs' Motion for Partial Summary Judgment was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

Baton Rouge, Louisiana this 22th day of April, 2020.

/s/ Deelee S. Morris
DEELEE S. MORRIS