UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


**BLAIR IMANI, ET AL**             **: CIVIL ACTION**

**VS.**                    **: NO. 17-CV-439**

**CITY OF BATON ROUGE, ET AL**     **: HON. JOHN W. DEGRAVELLES**

                                  **: SEPTEMBER 19, 2020**

RELATED CASES:

3:16-CV-00439-JWD-EWD

3:16-CV-00520-JWD-EWD

3:17-CV-00436-JWD-EWD

3:17-CV-00328-JWD-EWD

3:17-CV-00324-JWD-EWD

3:17-CV-00438-JWD-EWD

3:17-CV-00443-JWD-EWD

=================================================================
MOTION HEARING VIA VIDEOCONFERENCING
=================================================================

A P P E A R A N C E S

**FOR THE PLAINTIFFS:**

    MR. WILLIAM B. MOST
    MR. DAVID J. LANSER
    LAW OFFICE OF WILLIAM MOST
    201 ST. CHARLES AVENUE, SUITE 114 #101
    NEW ORLEANS, LOUISIANA  70170

    MR. JOHN N. ADCOCK
    LAW OFFICES OF JOHN N. ADCOCK
    3110 CANAL STREET LA
    NEW ORLEANS, LOUISIANA  70119

1   *APPEARANCES CONTINUED:*

2

3   FOR PLAINTIFF GELLER:

4      MR. JOHN K. ETTER
       RODNEY & ETTER, LLC
5      935 GRAVIER
       SUITE 2110
6      NEW ORLEANS, LA 70112

7

8

9   **FOR SID J. GAUTREAUX, III, EAST BATON ROUGE PARISH SHERIFF'S**

10  **OFFICE & AIX INS. CO.:**

11     MS. CATHERINE S. ST. PIERRE
12     ERLINGSON BANKS, PLLC
       ONE AMERICAN PLACE, SUITE 2110
13     BATON ROUGE, LOUISIANA  70801

14

15

16

17

18

19

20

21

22          **REPORTED BY: GINA DELATTE-RICHARD,CCR**

23          **UNITED STATES COURTHOUSE**
            **777 FLORIDA STREET**
24          **BATON ROUGE, LOUISIANA 70801**
            **(225) 389-3564**

25

1   ***BLAIR IMANI, ET AL V. CITY OF BATON ROUGE, ET AL 17-CV-439***

2           **THE COURT:**  WE'RE HERE IN *BLAIR IMANI VERSUS CITY OF*

3   *BATON ROUGE*, WHICH IS 17-439.  WILL COUNSEL ENTER AN

4   APPEARANCE FOR THE RECORD.

5           **MR. MOST:**  YES, WILLIAM MOST ON BEHALF OF THE

6   PLAINTIFFS.

7           **MR. ADCOCK:**  AND JOHN ADCOCK ON BEHALF OF THE

8   PLAINTIFFS.

9           **MR. LANSER:**  AND DAVE LANSER ALSO ON BEHALF OF THE

10  PLAINTIFFS.

11          **MS. ST. PIERRE:**  AND CATHERINE ST. PIERRE ON BEHALF

12  OF SHERIFF GAUTREAUX, THE INDIVIDUAL EAST BATON ROUGE

13  SHERIFF'S OFFICE DEPUTIES AND NOVA AIS INSURANCE COMPANY.

14          **THE COURT:**  ALL RIGHT.  MR. ETTER, YOU ARE NOT

15  PARTICIPATING BUT PRESENT?

16          **MR. ETTER:**  RIGHT.

17          **THE COURT:**  WHO DO YOU REPRESENT?

18          **MR. ETTER:**  PLAINTIFF GELLER.

19          **THE COURT:**  OKAY, FOLKS.  AS YOU KNOW, WE DID A

20  SECOND ORAL ARGUMENT NOTICE, WHICH I'M GOING TO REFER TO AS

21  SOAN.  YOU'RE WELCOME TO CALL IT WHAT YOU WANT, BUT IN ANY

22  EVENT, THE POINT I'M MAKING IS YOU DON'T NEED TO GUESS AS TO

23  WHAT -- HOW THE COURT SEES THE LEGAL ISSUES IN THIS CASE.  THE

24  OTHER THING IS I'VE THOROUGHLY REVIEWED THE PLEADINGS.  AND I

25  AM -- YOU DON'T NEED TO FILL ME IN ON ANYTHING FACTUALLY.  AND

1  SO YOU'RE WELCOME TO HAVE 20 MINUTES EACH IN TERMS OF

2  ARGUMENT.  UNLESS SOMETHING IS VERY SURPRISING IN YOUR

3  ARGUMENT, I'M PROBABLY GOING TO RULE.  I'M PREPARED TO RULE.

4  I MAY HAVE SOME QUESTIONS, BUT WE'LL SEE.  SO WITH THAT,

5  WHOEVER IS GOING TO ARGUE FOR THE MOVER, YOU MAY BEGIN.

6       **MS. ST. PIERRE:**  YES.  GOOD MORNING, JUDGE.  THIS IS

7  CATHY ST. PIERRE ON BEHALF OF SHERIFF GAUTREAUX AND THE EAST

8  BATON ROUGE PARISH SHERIFF'S OFFICE DEPUTIES.

9       FIRST, I JUST WANT TO ADDRESS THE FACT THAT THE

10  CLAIMS AGAINST THE INDIVIDUAL SHERIFF'S DEPUTIES ARE PURELY

11  BASED UPON PRESENCE AT THE INTERSECTION DURING CERTAIN

12  ARRESTS.  NOW, THE SPECIFIC CLAIMS AGAINST THE INDIVIDUALS,

13  WHICH I'LL CALL THE MOBILE FIELD FORCE DEPUTIES -- WHICH ARE

14  MENOU, JAMISON, BANKS, PRATER, MCCALL, AND JONES IN THE

15  COMPLAINT -- ARE THAT THEY WERE PRESENT AT THE INTERSECTION OF

16  GOVERNMENT AND MAXIMILLIAN DURING THE TAKEDOWN AND ARREST OF

17  PLAINTIFF ANTONIO CASTANON LUNA AND NADIA SALAZAR SANDI.  AND

18  THAT'S REC. DOC. 59, PAGE 10, WHICH IS THEIR CHART AND ALSO

19  PARAGRAPH 56-A.  AND THAT'S THE ONLY SPECIFIC FACTUAL

20  ALLEGATIONS AS TO THOSE SHERIFF DEPUTY DEFENDANTS.

21       THE ONLY FACTUAL ALLEGATIONS AS TO THE OTHER TWO

22  SHERIFF'S DEPUTY DEFENDANTS, WHO ARE PRISON TRANSPORT

23  DEPUTIES, HARRY HOWARD AND JUSTIN WALKER, IS THAT THEY WERE

24  PRESENT AT THE INTERSECTION OF EAST AND FRANCE DURING MASS

25  ARRESTS.  AND THAT'S REC. DOC. 59, PAGE 10, WHICH IS THE CHART

1 AND PARAGRAPH 56(B).

2 SO THE PLAINTIFFS MAKE CLAIMS FOR FAILURE TO

3 INTERVENE AGAINST THESE DEPUTIES. HOWEVER, MERE PRESENCE AT

4 AN INTERSECTION DURING THE ARRESTS IS NOT ENOUGH, UNDER THE

5 CASES CITED BY THE COURT ON PAGE 7 AND 8 IN THE SOAN. THE

6 SPECIFIC ALLEGATION -- THE SPECIFIC ARGUMENTS, I SHOULD SAY,

7 AS TO THESE DEFENDANTS IN THE PLAINTIFF'S OPPOSITION ARE THAT

8 THE PRISON TRANSPORT DEPUTIES, HARRY HOWARD AND WALKER, COULD

9 HAVE INTERVENED AT MULTIPLE STAGES BEFORE ARRESTS WHEN LAW

10 ENFORCEMENT FORMS LINES TO CONSTRICT MOVEMENT IMMEDIATELY

11 FOLLOWING THE ORDERS TO DISPERSE AND AFTER PROTESTERS BEGAN

12 GETTING TACKLED AND ARRESTED, PRIOR TO START ARRESTING

13 PROTESTERS EN MASSE AND ONCE THE MASS ARRESTS BEGAN.

14 HOWEVER, THEIR ONLY ALLEGATION IS THAT THESE TWO

15 PRISON TRANSPORT DEPUTIES WERE PRESENT AT THE INTERSECTION OF

16 FRANCE AND EAST DURING MASS ARRESTS. THEY DON'T MAKE ANY

17 ALLEGATIONS TO SHOW THAT THEY KNEW THAT THERE WERE ANY

18 CONSTITUTIONAL VIOLATIONS THAT WERE MADE OR ABOUT TO BE MADE.

19 AND TO SUGGEST THAT THEY WERE SOMEHOW -- THESE PRISON

20 TRANSPORT DEPUTIES WERE SOMEHOW GOING TO STOP MASS ARRESTS

21 THAT WERE ABOUT TO BE MADE JUST IS NOT REASONABLE.

22 THESE FACTS DON'T SHOW THEY HAD A REASONABLE

23 OPPORTUNITY TO KNOW THAT THERE WAS A CONSTITUTIONAL VIOLATION

24 OR A REASONABLE OPPORTUNITY TO PREVENT ANY TYPE OF

25 CONSTITUTIONAL VIOLATIONS. IF THE COURT WERE TO CONSIDER THE

1    DISCOVERY RESPONSES, THESE DEPUTIES MAKE IT CLEAR THAT THEIR

2    JOB WAS TO TRANSPORT ARRESTEES TO THE JAIL, AND THAT'S IT.

3         AS TO THE OTHER DEPUTIES, WHO I'LL CALL THE MOBILE

4    FIELD FORCE DEPUTIES, BECAUSE THEY'RE THE ONES IN THE PICTURES

5    THAT HAVE ON THE FULL MOBILE FIELD FORCE UNIFORMS, THEY CLAIM

6    THAT THEY FAILED TO INTERVENE TO PREVENT ANTONIO AND NADIA'S

7    ARRESTS AND THE USE OF FORCE.  AND THAT -- AND THEY ARGUE IF

8    THEY HAD INTERVENED WHEN THE LAW ENFORCEMENT AGENCY ORDERED

9    THAT THE PROTESTS WERE UNLAWFUL OR ONCE THEY WERE TACKLED, TO

10   PREVENT THE INJURIES.

11        WELL, THEY ONCE AGAIN, JUST ARGUE THAT THEY WERE

12   PRESENT AT THE INTERSECTION OF GOVERNMENT AND MAXIMILLIAN

13   WHERE THESE ARRESTS TOOK PLACE.  THEY DON'T ALLEGE ANY OTHER

14   FACTS THAT THEY KNEW WHY THEY WERE ARRESTED, HOW FAR AWAY THEY

15   WERE FROM THE ARREST, THAT THEY ACTUALLY WITNESSED THE ARREST,

16   OR THAT THEY HAD AN OPPORTUNITY TO -- SO THAT THEY WOULD HAVE

17   AN OPPORTUNITY TO INTERVENE.

18        THEY DON'T EVEN ALLEGE THAT THEY HEARD THE

19   ANNOUNCEMENT THAT THE PROTESTS WERE UNLAWFUL OR THAT THEY

20   SOMEHOW WOULD HAVE KNOWN AFTER THAT ANNOUNCEMENT THAT THESE

21   PLAINTIFFS WERE GOING TO BE ARRESTED BECAUSE OF THAT

22   ANNOUNCEMENT.  THEY JUST SIMPLY HAVEN'T ALLEGED OR EVEN ARGUED

23   SUFFICIENT FACTS TO SHOW THAT THEY HAD A REASONABLE

24   OPPORTUNITY TO REALIZE THAT THERE WAS GOING TO BE AN UNLAWFUL

25   USE OF FORCE OR ARREST OF THESE TWO PLAINTIFFS OR THAT THEY

1  HAD A REASONABLE OPPORTUNITY TO PREVENT IT.

2          AND, FURTHERMORE, ALL OF THESE DEPUTIES WOULD BE

3  ENTITLED TO QUALIFIED IMMUNITY BECAUSE NO REASONABLE OFFICER

4  IN THESE DEPUTIES' POSITION WOULD HAVE UNDERSTOOD THAT WHAT

5  THEY WERE DOING WAS VIOLATING THESE PLAINTIFFS' CONSTITUTIONAL

6  RIGHTS.  PLAINTIFFS HAVEN'T POINTED TO ANY SUFFICIENTLY

7  ANALOGOUS CASE LAW DEMONSTRATING THAT EVERY REASONABLE OFFICER

8  IN THESE DEFENDANTS' POSITION THAT WERE PRESENT AT A

9  LARGE-SCALE PROTESTS, THAT WERE TRANSPORT DEPUTIES, OR OTHER

10  DEPUTIES STANDING IN FORMATION WOULD KNOW THAT THEIR CONDUCT

11  WAS UNLAWFUL IN LIGHT OF CLEARLY ESTABLISHED LAW.

12          NOW, IN THIS CASE, PLAINTIFFS ALSO ASSERT IN THEIR

13  OPPOSITION THAT THEY'RE MAKING CLAIMS AGAINST THE SHERIFF'S

14  DEPUTIES FOR -- IN ADDITION TO FAILURE TO INTERVENE, FOR

15  VIOLATING THESE PLAINTIFFS' FIRST AMENDMENT RIGHTS.  NOW, THE

16  COMPLAINT BASES THEIR CAUSES OF ACTIONS FOR FIRST AMENDMENT

17  RIGHTS VIOLATIONS ON THE ARREST AND THE USE OF FORCE.  THEY

18  DON'T -- THEY DON'T MAKE A CLAIM IN THE COMPLAINT THAT IT WAS

19  BASED UPON ANY OTHER ACTIONS BY THE DEFENDANTS.

20          BUT IN THEIR OPPOSITION, THEY ARGUE THAT PRISON

21  TRANSPORT DEPUTIES, HARRY HOWARD AND JUSTIN WALKER, VIOLATED

22  THEIR FIRST AMENDMENT RIGHTS BY PARTICIPATING IN THE PERIMETER

23  OF LAW ENFORCEMENT OFFICERS, WHO DECLARED THE PROTESTS

24  ILLEGAL.  NOT THAT THEY DECLARED IT ILLEGAL, BUT THESE OTHER

25  OFFICERS DID AND THEY SOMEHOW PARTICIPATED IN THE PERIMETER,

1    AND THAT THEY OBSERVED AND WERE PRESENT IN LINE PREVENTING THE

2    PLAINTIFFS FROM EXITING THE PROPERTY.

3           THESE ASSERTIONS ARE NOT ALLEGED IN THE COMPLAINT

4    AND EVEN THE PICTURES THAT WERE NOT PART OF THE COMPLAINT, BUT

5    THAT ARE PART OF THE DISCOVERY RESPONSES OF THESE TWO PRISON

6    TRANSPORT DEPUTIES, DOES NOT SHOW THEM IN A LINE WITH ANY

7    OTHER DEPUTIES OR EVEN ANY OTHER TYPE OF LINE PREVENTING ANY

8    PROTESTERS FROM LEAVING THE AREA.  THE PICTURES SHOW THEM

9    STANDING -- STANDING IN THE STREET A GOOD DISTANCE AWAY FROM

10   WHAT'S GOING ON ON MS. BATISTE'S LAWN.

11          AND THEN IF YOU CONSIDER THE RESPONSES TO THE

12   DISCOVERY AND THIS EVIDENCE OUTSIDE THE PLEADINGS, THEY ALSO

13   EXPLAINED THAT THEY WERE NEARBY -- THEY WERE NEAR THE PRISON

14   TRANSPORT BUS AND THEY WERE JUST WAITING FOR ARRESTEES TO

15   BRING THEM TO THE BUS.

16          AS FAR AS THE MOBILE FIELD FORCE DEPUTIES THAT I

17   DISCUSSED EARLIER, THE PLAINTIFFS ALLEGE THAT THEY FORMED A

18   LINE TO PREVENT -- OR THEY ASSERT IN THEIR OPPOSITION -- THEY

19   DON'T ALLEGE IT -- FORMED A LINE TO PREVENT PROTESTERS'

20   MOVEMENT TO PREVENT ANTONIO AND NADIA FROM RETURNING TO THEIR

21   VEHICLE.  ONCE AGAIN, THEY ONLY ALLEGE THAT THEY WERE PRESENT

22   AT THE INTERSECTION.  PICTURES SHOW THEM IN A LINE, BUT

23   THERE'S NO INDICATION THAT THEY WERE PREVENTING ANTONIO OR

24   NADIA FROM RETURNING TO THEIR VEHICLE OR OTHERWISE RESTRICTING

25   THEIR FREEDOM TO PROTEST.

1    IN FACT, THE PLAINTIFFS ALLEGED IN THEIR COMPLAINT
2    THAT THE REASON WHY THEY WERE WAITING AT THAT INTERSECTION WAS
3    BECAUSE THEY STOPPED TO LOOK FOR A FRIEND SO THEY COULD GET IN
4    THE CAR AND LEAVE, AND THEN WHILE WAITING FOR THE FRIEND THEY
5    LED CHANTS AND THEN ALL OF A SUDDEN THEY WERE TACKLED.  SO
6    THEY DON'T EVEN ALLEGE THAT THEY WERE PREVENTED BY ANYONE FROM
7    RETURNING TO THEIR CAR AND THAT'S THE BASIS OF THEIR FIRST
8    AMENDMENT VIOLATIONS.

9    SO PLAINTIFFS DON'T ALLEGE ANY FACTS TO SHOW THAT
10   ANY EBRSO DEFENDANTS TOOK ANY ADVERSE ACTION OR RETALIATION
11   FOR THE EXERCISE OF PROTEST -- THESE ACTIVITIES OR PLACED ANY
12   RESTRICTIONS ON PLAINTIFFS' EXERCISE OF FREE SPEECH.  SO THEY
13   HAVEN'T ALLEGED A CLAIM BASED UPON A FIRST AMENDMENT VIOLATION
14   AGAINST THESE EBRSO DEPUTIES.  AND IF THEY DID, THESE DEPUTIES
15   WOULD BE ENTITLED TO QUALIFIED IMMUNITY, PARTICULARLY BASED
16   UPON THE FACTS OF THE COMPLAINT, THAT THEY WERE MERELY PRESENT
17   AT THE PROTESTS AT THESE INTERSECTIONS.  AND SO WHAT -- THEY
18   WOULD NOT HAVE UNDERSTOOD BY BEING PRESENT AT A PROTEST WOULD
19   VIOLATE PLAINTIFFS' CONSTITUTIONAL RIGHTS TO FREEDOM OF
20   SPEECH.

21   NEXT, I'LL GO TO THE SHERIFF GAUTREAUX'S INDIVIDUAL
22   AND OFFICIAL CAPACITY CLAIMS.  AND BOTH OF THESE ARE BASED
23   UPON A SINGLE POLICY DECISION, BUT THE SINGLE POLICY DECISION
24   IS BASED UPON ARRESTS.  THE COURT NOTED IN ITS ORAL REASONS
25   THAT THE PLAINTIFF ALLEGED THAT SHERIFF GAUTREAUX MADE A

1    SINGLE DECISION TO SUPPRESS THE PROTESTS TO MAKE UNLAWFUL

2    ARRESTS.  AND THEN THE COURT FURTHER NOTED THAT PLAINTIFFS

3    ALLEGED THAT IN FURTHERANCE OF THAT OBJECTIVE, THE INDIVIDUALS

4    UNLAWFULLY ARRESTED APPROXIMATELY 200 PROTESTERS AS THEY

5    ENGAGED IN PEACEFUL PROTESTS.

6         HOWEVER, THE PLAINTIFFS ADMIT THAT NO EBRSO DEPUTIES

7    PARTICIPATED IN THEIR ARREST.  SO YOU HAVE NO UNDERLYING

8    CONSTITUTIONAL VIOLATION BY AN EAST BATON ROUGE PARISH

9    SHERIFF'S OFFICE DEPUTIES.  YOU CANNOT HAVE AN OFFICIAL

10   CAPACITY CLAIM, AND YOU HAVE NO CAUSATION THAT ANY SINGLE

11   POLICY DECISION OR ANY SINGLE DECISION BY SHERIFF GAUTREAUX

12   CAN BE LINKED TO ANY CONSTITUTIONAL VIOLATION BECAUSE THE

13   ALLEGED DECISION WAS TO ARREST PROTESTERS AND NO EBRSO DEPUTY

14   PARTICIPATED IN THE ARREST OF ANY OF THE PLAINTIFFS OR ANY OF

15   THESE PROTESTERS.

16        AND AS TO THE INDIVIDUAL CAPACITY CLAIMS AGAINST THE

17   SHERIFF BASED UPON THE SINGLE POLICY DECISION, HE WOULD ALSO

18   BE ENTITLED TO QUALIFIED IMMUNITY.  AS FAR AS THE CONSPIRACY

19   CLAIMS, THE COURT HAD DISMISSED THESE CLAIMS ORIGINALLY, BUT

20   GAVE THE PLAINTIFFS AN OPPORTUNITY TO AMEND THE COMPLAINT TO

21   ALLEGE MORE FACTUAL DETAILS AS TO AN AGREEMENT, BUT THE

22   PLAINTIFFS DID NOT ADD ANYTHING TO THEIR COMPLAINT REGARDING

23   THE AGREEMENT TO SUPPORT A CONSPIRACY CLAIM AND ADMIT IN OUR

24   OPPOSITION THAT THESE CLAIMS WERE DISMISSED AND THEY DON'T, IN

25   THEIR OPPOSITION, SAY THAT THEY'VE AMENDED TO CURE THESE

1 DEFICIENCIES.  THAT'S ALL I HAVE, UNLESS YOU HAVE ANY

2 QUESTIONS, YOUR HONOR.

3     **THE COURT:**  NO QUESTIONS.  THANK YOU, MS. ST.

4 PIERRE.

5     **MS. ST. PIERRE:**  THANK YOU.

6     **THE COURT:**  MR. MOST.

7     **MR. MOST:**  THANK YOU, YOUR HONOR.

8     **THE COURT:**  ALL RIGHT.

9     **MR. MOST:**  GOOD MORNING.

10     **THE COURT:**  GOOD MORNING.

11     **MR. MOST:**  THANK YOU FOR YOUR TIME.  YOU KNOW, I'D

12 LIKE TO BEGIN MY REMARKS WITH FOCUSING ON THE BIG PICTURE,

13 WHICH IS *COX V. LOUISIANA,* AND THAT'S IMPORTANT BECAUSE THAT

14 PROVIDES THE LEGAL BACKDROP AGAINST WHICH THE DEPUTIES AT

15 ISSUE IN THIS MOTION WOULD HAVE UNDERSTOOD THEIR

16 CONSTITUTIONAL OBLIGATIONS.  AND THAT'S A CASE THAT IS

17 REMARKABLY ON POINT HERE.  WHICH IS IN 1961, ONLY NINE BLOCKS

18 AWAY FROM WHERE THE EVENTS AT ISSUE HERE TOOK PLACE,

19 PROTESTERS, PROTESTING POLICE MISCONDUCT GATHERED IN BATON

20 ROUGE TO SPEAK OUT.  THEY MARCHED AND THEN THEY GATHERED ON

21 SIDEWALKS.

22     LAW ENFORCEMENT MONITORED THE PROTESTS AND THEN

23 DECIDED IT SHOULD END.  THEY ARRESTED A MAN FOR ALLEGED

24 ILLEGAL VIOLATIONS, INCLUDING OBSTRUCTING A PUBLIC PASSAGEWAY.

25 SO ALL THE FACTS ARE PRECISELY ON COURSE WITH WHAT HAPPENED TO

1 THE PLAINTIFFS HERE.

2 THE SUPREME COURT OF THE UNITED STATES HELD THAT

3 THIS WAS A CLEAR AND UNWARRANTED ABRIDGMENT OF THE PROTESTERS'

4 FREEDOM OF SPEECH AND ASSEMBLY SECURED TO HIM BY THE FIRST

5 AMENDMENT.  SO THAT'S THE BIG PICTURE.  IT'S IMPORTANT, BOTH,

6 BECAUSE EVERY DEPUTY WHO WAS PRESENT AT THE ISSUES HERE SHOULD

7 HAVE UNDERSTOOD THAT THAT IS WHAT GOVERNS THEIR BEHAVIOR.

8 IT'S ALSO HELPFUL TO UNDERSTAND, BECAUSE WE'VE SPENT THREE

9 YEARS ON THIS CASE, TRYING TO FIGURE OUT WHO SHOULD BE

10 ACCOUNTABLE, WHICH AGENCIES, WHICH DEPUTIES, WHICH LAW

11 ENFORCEMENT OFFICERS SHOULD BE ACCOUNTABLE FOR THE

12 CONSTITUTIONAL VIOLATIONS THAT OCCURRED.  AND MS. ST. PIERRE

13 IS CORRECT, WE HAVE TWO GROUPS OF DEPUTIES AT ISSUE IN THIS

14 MOTION, PLUS THE SHERIFF IN HIS OFFICIAL CAPACITY.

15 I'LL SPEAK FIRST ABOUT THE -- HARRY HOWARD AND

16 JUSTIN WALKER, WHO ARE THE PRISON TRANSPORT DEPUTIES WHO WERE

17 PRESENT AT EAST AND FRANCE.  AND WE -- FOR BOTH SETS OF

18 DEPUTIES, THE PRISON TRANSPORT DEPUTIES AND THE MOBILE FORCE

19 THAT MS. ST. PIERRE DESCRIBED, I'LL TALK FIRST ABOUT THEIR

20 INDIVIDUAL PARTICIPATION IN THE ARRESTS AND THEN ALSO ABOUT

21 THEIR BYSTANDER LIABILITY.

22 SO FOR HOWARD AND WALKER, WHO WERE PRESENT AT EAST

23 AND FRANCE, THEY HAD AN ACTIVE PERSONAL FACILITATION AND

24 INVOLVEMENT IN THE ARRESTS, AS IS ALLEGED IN THE COMPLAINT.

25 THE COMPLAINT AT PARAGRAPH 284 SAYS THAT "DEFENDANTS GENERALLY

PARTICIPATED IN THE ARRESTS," AND THAT INCLUDES MR. HOWARD AND

MR. WALKER.  EACH OF THE ARRESTS THAT HAPPENED THAT DAY WAS

NOT JUST A SINGLE OFFICER CARRYING OUT THE ENTIRETY OF THE

ARREST.  IT WAS A TEAM EFFORT, AND EACH MEMBER OF THE LAW

ENFORCEMENT HAD A ROLE TO PLAY IN FACILITATING THE ARREST AND

PARTICIPATING.  AND HOWARD AND WALKER, ALTHOUGH THEY WENT

THERE WITH BATONS AND ARMOR, PARTICIPATED, NONETHELESS.  THEY

WERE THERE TO FACILITATE THE ARRESTS BY TRANSPORTING THE

PROTESTERS FROM THE SITE TO THE JAIL.

THE PURPOSE OF THEM BEING THERE WAS TO FACILITATE

AND PARTICIPATE IN THE ARRESTS.  THIS IS MENTIONED IN OUR

OPPOSITION AT PAGE 8.  AND SO ALTHOUGH THEY MAY NOT HAVE PUT

HANDS ON THE PLAINTIFFS, THE PLAINTIFFS WERE WALKED DIRECTLY

BY -- SOME OF THE PLAINTIFFS WERE WALKED DIRECTLY BY THEM, AND

HOWARD AND WALKER ENGAGED IN A VERBAL CONVERSATION WITH THE

OFFICERS WHO HAD THEIR HANDS ON SOME OF THE PLAINTIFFS AND

GAVE THEM DIRECTIONS.  SO THEY'RE NOT JUST BEING SUED FOR

THEIR BYSTANDER LIABILITY, BUT ALSO FOR THEIR ACTIVE AND

PERSONAL PARTICIPATION IN FACILITATING THE ENTIRE ACTIVITY OF

THESE MASS ARRESTS, INCLUDING PLAINTIFFS.

HOWEVER, THEY ALSO, AND ALTERNATIVELY, ARE LIABLE

UNDER A BYSTANDER THEORY.  AS I GATHER FROM THE SOAN AND FROM

THIS COURT'S RULING IN *TENNART* AND THE OTHER CASES, I GATHER

THAT THIS COURT'S UNDERSTANDING OF BYSTANDER LIABILITY

REQUIRES THREE ELEMENTS:

1    NUMBER 1, THAT THE OFFICER ACTUALLY WITNESSED THE

2  CONSTITUTIONAL VIOLATION; NUMBER TWO, THAT THE OFFICER HAD AN

3  OPPORTUNITY TO INTERVENE AND NOT INTERVENE; AND THEN NUMBER 3,

4  THAT IT'S AN UNCONSTITUTIONAL ARREST.  AND HERE, ALL THREE

5  ELEMENTS ARE MET.

6    HOWARD AND WALKER ACTUALLY WITNESSED WHAT WAS GOING

7  ON HERE.  WE HAVE BOTH -- IT'S ALLEGED IN THE COMPLAINT AT

8  PARAGRAPHS 296, 299 THAT THEIR BYSTANDER LIABILITY WAS

9  KNOWING, AND WE HAVE PHOTOS OF THEM ACTUALLY LOOKING IN THE

10  DIRECTION WHILE THE UNCONSTITUTIONAL ARRESTS ARE GOING ON.

11    NUMBER 2, THEY HAD AN OPPORTUNITY TO INTERVENE.

12  NOW, THEY MAY NOT HAVE BEEN ABLE TO THROW THEIR BODIES IN

13  FRONT OF A MASS OF OFFICERS WHO WERE STORMING MS. BATISTE'S

14  YARD.  BUT THAT'S NOT REQUIRED FOR INTERVENTION.  WHAT THEY

15  COULD HAVE DONE VERY EASILY TO INTERVENE WOULD BE TO CALL IT

16  IN, TO RADIO IT IN.  EACH OFFICER, AS FAR AS WE KNOW, PRESENT

17  AT THE SCENE, HAD A RADIO.  AND THEY COULD HAVE CALLED IT IN,

18  AND SAID -- YOU KNOW, RADIOED TO THEIR SUPERIORS, SAYING:

19  HEY, IT APPEARS THAT THERE ARE ARRESTS GOING ON OF PROTESTERS

20  WHO ARE NOT VIOLENT, WHO ARE ON PRIVATE PROPERTY, AND THIS

21  DOES NOT APPEAR TO BE A CONSTITUTIONAL ACTIVITY AND THEIR

22  SUPERVISORS COULD HAVE INTERVENED.

23    THERE'S CASE LAW FOR THIS PROPOSITION.  IT'S VERY

24  FREQUENT THAT RADIOING IT IN OR CALLING IT IN IS OFTEN

25  CONSIDERED TO BE A FORM OF INTERVENTION.  ONE EXAMPLE IS

1    *NEWMAN V. JOHNSON*, WHICH IS DISTRICT OF DELAWARE, 12-664,

2    (DECEMBER 3RD, 2014), WHICH IS A CASE -- A PRISON CASE IN

3    WHICH AN OFFICER WAS FOUND TO HAVE INTERVENED IN A POTENTIALLY

4    UNCONSTITUTIONAL ACTIVITY BY RADIOING IT IN.  AND THAT'S WHAT

5    WE EXPECT THAT THE OFFICERS COULD HAVE DONE HERE.

6         AND THEN THIRD, THE THIRD ELEMENT IS THE

7    UNCONSTITUTIONALITY PART OF IT, AND THAT FLOWS DIRECTLY FROM

8    *COX V. LOUISIANA.*  WHAT HAPPENED ON MS. BATISTE'S YARD COULD

9    SCARCELY BE MORE SIMILAR TO THE FACTS OF *COX V. LOUISIANA.*  AS

10   A PLAINTIFF'S ATTORNEY, IT'S RARE THAT YOU GET A CASE THAT IS

11   SO SIMILAR, AND NOT ONLY SIMILAR FACTUALLY, BUT ALSO IN THE

12   VERY SAME CITY, VERY SAME AREA OF THE CITY.  THERE IS NO DOUBT

13   THAT THESE OFFICERS SHOULD KNOW THAT IN BATON ROUGE THERE IS A

14   WAY THAT YOU ARE CONSTITUTIONALLY REQUIRED TO TREAT PEACEFUL

15   PROTESTERS, AND THAT WAS NOT HAPPENING ON THIS DAY AT THIS

16   PLACE.

17        I'LL TURN NOW TO THE SIX DEPUTIES WHO WERE CLAD IN

18   RIOT GEAR, WHO MS. ST. PIERRE DESCRIBED AS, I BELIEVE, THE

19   MOBILE FIELD FORCE.  THIS IS DEPUTIES MENOU, JAMISON, BANKS,

20   PRATER, MCCALL AND JONES.  AND, LIKEWISE, THIS SET OF DEPUTIES

21   HAD BOTH AN ACTIVE PERSONAL FACILITATION IN THE ARRESTS AND

22   ALSO BYSTANDER LIABILITY.

23        SO FIRST, THESE DEPUTIES PERSONALLY FACILITATED THE

24   ARRESTS THAT OCCURRED.  THEY WERE MARCHING IN FORMATION IN

25   RIOT GEAR MOVING IN COORDINATION WITH OTHER LINES OF LAW

1   ENFORCEMENT TO CORRAL AND CONFINE THE PROTESTERS TO A SPECIFIC

2   GEOGRAPHIC LOCATION SO THAT THEY COULD BE ARRESTED.  THIS IS

3   REFLECTED IN FIGURE 12 OF THE COMPLAINT, WHICH HAS A DIAGRAM

4   OF THE POLICE LINES AND FIGURE 44, WHICH SHOWS IMAGES OF THE

5   THREE LINES OF POLICE CONVERGING AND CONFINING THE PROTESTERS

6   INTO A PARTICULAR SMALL SPACE.

7           AND IT'S ALLEGED THAT THESE DEPUTIES ENGAGED IN THE

8   UNLAWFUL ARRESTS BY PARTICIPATION.  THAT'S ALLEGED AT R.DOC --

9   THE COMPLAINT AT PARAGRAPH 284 AND THE FOLLOWING PARAGRAPHS,

10  WHICH IS THAT DEFENDANTS VIOLATED THESE RIGHTS WHEN THEY

11  ARRESTED THEM, END QUOTE.  AND LIKE THE OTHER DEPUTIES, YOU

12  DON'T HAVE TO HAVE YOUR HANDS ON SOMEONE TO PARTICIPATE AND

13  FACILITATE THEIR ARREST.  NO MORE SO THAN AN OFFICER WHO

14  POINTS A GUN AT SOMEONE WHILE SOMEONE ELSE ACTUALLY HANDCUFFS

15  THEM.  BOTH OFFICERS HAVE PARTICIPATED IN THE ARREST.  AND

16  JUST -- THE SAME IS TRUE WITH THIS SET OF SIX DEPUTIES, WHO

17  ACTIVELY MARCHED IN COORDINATION WITH OTHER LAW ENFORCEMENT TO

18  ENABLE AND FACILITATE ARRESTS.

19          THEY ALSO HAVE BYSTANDER LIABILITY.  WE KNOW THAT

20  THESE DEPUTIES WERE PRESENT AT THE CORNER OF MAXIMILLIAN AND

21  GOVERNMENT AND WITNESSED THE TAKEDOWN OF THE PLAINTIFFS

22  SALAZAR [SIC] AND SANDI.  AND SO JUST AS BEFORE, WE HAVE THE

23  THREE ELEMENTS OF BYSTANDER LIABILITY HERE.  NUMBER 1, THEY

24  ACTUALLY WITNESSED IT.  WE HAVE THE PHOTOS SHOWING THAT THEY

25  WERE LOOKING IN THAT DIRECTION.  WE HAVE THEIR DISCOVERY

1  RESPONSES, WHICH DEFENDANTS HAVE ENTERED INTO THE RECORD AT

2  R.DOC 200-3 AT INTERROGATORY 23, INDICATING THAT THEY ACTUALLY

3  DID WITNESS THE MALE AND ONE FEMALE BEING ARRESTED IN THE

4  CONTEXT OF SALAZAR [SIC] AND SANDI, WHO ARE THE MALE AND

5  FEMALE REFERRED TO.  AND THEY HAD THE OPPORTUNITY TO

6  INTERVENE.

7        NOW, THEY WERE, AS DEFENDANTS NOTE, ACROSS THE

8  STREET.  AND PERHAPS THEY WOULD NOT HAVE HAD TIME TO RUN

9  ACROSS THE STREET AND THROW THEIR BODIES IN FRONT OF THE

10 TAKEDOWN OF THESE TWO PLAINTIFFS.  BUT THEY CERTAINLY HAD AN

11 OPPORTUNITY TO PICK UP THEIR RADIO OFF THEIR BELT AND CALL IT

12 IN.  ANY ONE OF THEM COULD HAVE DONE THAT, AND THERE'S NO

13 INDICATION THAT ANY OF THEM CHOSE TO DO THAT.

14        AND THEN THIRD, THE UNCONSTITUTIONALITY ELEMENT.

15 HERE, WE HAVE A FIFTH CIRCUIT CASE THAT IS VERY CLOSELY ON

16 POINT.  THIS IS *TRAMMELL V. BRUTON*, WHICH IS 868 F.3D 332,

17 WHICH WAS THE SUBJECT OF A MOTION -- PARTIAL MOTION FOR

18 SUMMARY JUDGMENT.  AND THAT FIFTH CIRCUIT CASE HELD THAT,

19 QUOTE, "IT IS OBJECTIVELY UNREASONABLE FOR SEVERAL OFFICERS TO

20 TACKLE AN INDIVIDUAL WHO'S NOT FLEEING, NOT VIOLENT, NOT

21 AGGRESSIVE."  AND THAT'S EXACTLY WHAT HAPPENED TO MR. SALAZAR

22 [SIC] AND MS. SANDI HERE.

23        SO THE THREE ELEMENTS OF BYSTANDER LIABILITY HAVE

24 BEEN MET, THE ACTIVE PARTICIPATION, ALTERNATIVE THEORY, HAS

25 ALSO BEEN MET.  AND SO IF ANY OF THESE DEPUTIES ARE FOUND TO

1  BE LIABLE UNDER EITHER OF THOSE THEORIES, THEN SO, TOO, IS THE

2  SHERIFF IN HIS OFFICIAL CAPACITY.  THIS COURT HELD AT R.DOC

3  144, PAGE 7, THAT "CONSTRUING THE ALLEGATIONS IN THE LIGHT

4  MOST FAVORABLE TO PLAINTIFFS, IT'S CLEAR THAT GAUTREAUX WAS

5  AWARE OF THE SUBSTANTIAL RISK AND SERIOUS HARM BEFALLING THE

6  PLAINTIFFS FROM THIS CONDUCT, WHICH WOULD, INDEED, BE OBVIOUS,

7  YET DISREGARDED THAT RISK AND ACTED INTENTIONALLY TO INSTITUTE

8  THE ARRESTS."  GAUTREAUX'S ALLEGED POLICIES WERE SO DEFICIENT

9  AS TO BE A REPUDIATION OF CONSTITUTIONAL RIGHT.

10       AND THIS COURT WITHHELD JUDGMENT -- FINAL JUDGMENT

11  ON GAUTREAUX'S LIABILITY TO DETERMINE WHETHER THERE WERE

12  DEPUTIES WHO WERE INDIVIDUALLY LIABLE.  AND SO TO THE EXTENT

13  THAT ANY OF THE INDIVIDUAL DEPUTIES HERE, ANY OF THE EIGHT AT

14  ISSUE IN THIS MOTION, ARE LIABLE UNDER EITHER THE BYSTANDER

15  THEORY OR THE PERSONAL PARTICIPATION THEORY, THEN THIS COURT'S

16  HOLDING WOULD NECESSARILY REQUIRE THAT GAUTREAUX REMAIN IN THE

17  CASE IN HIS OFFICIAL CAPACITY.

18       UNLESS THE COURT HAS ANY FURTHER QUESTIONS, I

19  BELIEVE THOSE ARE THE ISSUES I WANTED TO TOUCH ON.

20       **THE COURT:**  THANK YOU, MR. MOST.  MS. ST. PIERRE,

21  ANY REBUTTAL?

22       **MS. ST. PIERRE:**  THANK YOU.  AS TO THE LAST

23  STATEMENT THAT MR. MOST MADE, I DON'T BELIEVE THAT EVEN IF

24  THIS COURT WERE TO FIND THAT THESE DEPUTIES WERE LIABLE FOR

25  BYSTANDER LIABILITY THAT WOULD BE ENOUGH TO HOLD SHERIFF

1  GAUTREAUX LIABLE IN HIS OFFICIAL CAPACITY BECAUSE THE OFFICIAL

2  CAPACITY COMPLAINT IS BASED UPON HIS SINGLE POLICY DECISION TO

3  MAKE ARRESTS, AND THE BYSTANDER LIABILITY WOULD NOT BE ENOUGH.

4  BUT WE DON'T BELIEVE THAT THEY'VE SET FORTH A CLAIM FOR

5  BYSTANDER LIABILITY.

6          AS TO ANTONIO AND NADIA, THE TWO THAT WERE ARRESTED

7  ON MAXIMILLIAN AND GOVERNMENT, THE LINE OF DEPUTIES, MR. MOST

8  SUGGESTED, THEY COULD HAVE RADIOED TO CALL IN THAT SOMETHING

9  WAS HAPPENING.  WELL, THAT FIRST ASSUMES THAT THEY KNEW THAT

10  THE ARREST WAS UNCONSTITUTIONAL BECAUSE THERE'S NO EVIDENCE TO

11  SUGGEST THEY KNEW WHY THESE TWO INDIVIDUALS WERE BEING

12  ARRESTED.  AND AS FAR AS THE USE OF FORCE, THAT'S -- IT'S

13  GOING TO ASSUME THAT BEING ABLE TO RADIO AND SOMEBODY IS GOING

14  TO BE ABLE TO GET THERE AND STOP THE FORCE THAT HAPPENED VERY

15  QUICKLY.  THE ALLEGATIONS IN THE COMPLAINT WERE THAT ALL OF A

16  SUDDEN, THESE OTHER OFFICERS WERE ON TOP OF THEM AND TACKLED

17  THEM.  SO CALLING IT IN ON A RADIO WOULD NOT HAVE PREVENTED A

18  USE OF FORCE IF THEY SAW THAT.  THEY ALSO TESTIFIED THEY SAW

19  TWO INDIVIDUALS, JUST A MALE AND A FEMALE, NOT THESE

20  PARTICULAR INDIVIDUALS, AND THE PLAINTIFFS DID NOT ALLEGE THAT

21  IN THE COMPLAINT.

22          AS FAR AS THE PARTICIPATION IN THE ARRESTS, THERE'S

23  NO CASES THAT WOULD HOLD -- THAT WOULD OVERCOME QUALIFIED

24  IMMUNITY AS TO THESE DEFENDANTS THAT WOULD SUGGEST THAT

25  TRANSPORT DEPUTIES MERELY TRANSPORTING INDIVIDUALS THAT WERE

1    ARRESTED BY OTHER AGENCIES TO THE JAIL WOULD MAKE THEM LIABLE

2    FOR CONSTITUTIONAL VIOLATIONS BASED UPON THESE ARRESTS.  THEY

3    DON'T -- THEY WOULDN'T KNOW WHY THE ARRESTS WERE BEING MADE,

4    IF THERE WAS PROBABLE CAUSE OR A REASON FOR THESE ARRESTS

5    BEING MADE OR THE ABILITY TO STOP THESE ARRESTS FROM BEING

6    MADE.  HE SUGGESTS A RADIO, BUT THERE HASN'T EVEN BEEN ANY

7    ALLEGATIONS THAT THESE INDIVIDUALS HAD RADIOS OR HAD ACCESS TO

8    CALLING PEOPLE THAT WOULD BE ABLE TO DO ANYTHING ABOUT ARRESTS

9    THAT WERE BEING MADE.  I THINK THAT'S ALL I HAVE UNLESS YOU

10   HAVE ANY QUESTIONS, YOUR HONOR.

11        **THE COURT:**  NO QUESTIONS.  SO WHAT WE'RE GOING TO

12   DO, MRS. CAUSEY, IF YOU'LL PUT DAVID AND I IN THE BREAKOUT

13   ROOM FOR A MINUTE TO CHAT AND THEN WE'LL COME BACK AND WE WILL

14   DO ORAL REASONS.

15        **REPORTER'S NOTE:**  *(TEMPORARILY OFF THE RECORD.)*

16        **THE COURT:**  THIS MATTER IS BEFORE THE COURT ON THE

17   SECOND MOTION TO DISMISS, DOCUMENT 200, FILED BY EBRSO

18   DEFENDANTS.  PLAINTIFFS OPPOSE THE MOTION, DOCUMENT 203.

19   EBRSO DEFENDANTS HAVE FILED A REPLY, DOCUMENT 208.  ORAL

20   ARGUMENT WAS HEARD TODAY.

21        THE COURT HAS CAREFULLY CONSIDERED THE LAW AND

22   PARTICULARLY THE LAW SET FORTH IN THE SECOND ORAL ARGUMENT

23   NOTICE, WHICH I'LL REFER TO AS SOAN, AND WHICH IS DOCUMENT

24   226.  THE FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT,

25   DOCUMENT 59, WHICH I WILL SOMETIMES REFER TO AS SAC, S-A-C,

1  AND THE ARGUMENTS AND SUBMISSIONS OF THE PARTIES AND IS

2  PREPARED TO RULE.

3        IN SHORT, THE COURT WILL GRANT THE MOTION IN FULL.

4  FIRST, PLAINTIFFS HAVE FAILED TO STATE ANY VIABLE FIRST

5  AMENDMENT OR BYSTANDER CLAIM AGAINST THE INDIVIDUAL EBRSO

6  DEPUTIES.  WITH RESPECT TO THE BYSTANDER CLAIM, PLAINTIFFS

7  FAIL TO ALLEGE FACTS FROM WHICH THE INFERENCE COULD BE DRAWN

8  OR FAILED TO RAISE REASONABLE HOPE THAT DISCOVERY WILL REVEAL

9  RELEVANT EVIDENCE THAT ANY OF THE EBRSO DEFENDANTS WITNESSED

10 THE CONSTITUTIONAL VIOLATIONS AGAINST THE PLAINTIFFS, HAD A

11 REASONABLE OPPORTUNITY TO REALIZE THE NATURE OF THESE

12 VIOLATIONS OR HAD A REASONABLE OPPORTUNITY TO INTERVENE.

13        AS TO THE FIRST AMENDMENT CLAIM, PLAINTIFFS FAIL TO

14 ALLEGE THAT THESE PARTICULAR DEPUTIES VIOLATED THE PLAINTIFFS'

15 CONSTITUTIONAL RIGHTS.  PLAINTIFFS MERELY ALLEGE THAT THEY

16 WERE PRESENT AT THE SCENE OF THE ARREST, WHICH IS

17 INSUFFICIENT.  MOREOVER, PLAINTIFFS FAIL TO OVERCOME QUALIFIED

18 IMMUNITY AS THEY HAVE NOT PROVIDED SUFFICIENTLY ANALOGOUS CASE

19 LAW DEMONSTRATING THAT ALL REASONABLE OFFICERS IN THEIR

20 POSITION WOULD KNOW BEYOND DOUBT THAT THEIR CONDUCT WAS

21 UNLAWFUL.

22        LASTLY, WHILE THE COURT DECLINES TO CONVERT THIS

23 MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT, IF THE

24 COURT WERE TO DO SO, PLAINTIFFS' CLAIMS WOULD STILL FAIL AS A

25 MATTER OF LAW BASED ON THE EVIDENCE BEFORE THE COURT.

1    ACCORDINGLY, PLAINTIFFS' CLAIMS AGAINST THE

2  INDIVIDUAL EBRSO DEPUTIES ARE DISMISSED.

3    PLAINTIFFS HAVE ALSO FAILED TO STATE ANY VIABLE

4  CLAIM AGAINST SHERIFF GAUTREAUX IN HIS INDIVIDUAL OR OFFICIAL

5  CAPACITY.  THESE CLAIMS REQUIRE THAT SHERIFF GAUTREAUX

6  IMPLEMENTED A POLICY THAT WAS THE MOVING FORCE OF A

7  CONSTITUTIONAL VIOLATION.  SINCE THE COURT HAS FOUND THAT

8  THERE WAS NO UNDERLYING CONSTITUTIONAL VIOLATION BY ANY EBRSO

9  DEPUTY, THE INDIVIDUAL AND OFFICIAL CAPACITY CLAIMS AGAINST

10  SHERIFF GAUTREAUX MUST FALL.

11    THE COURT WILL ALSO DISMISS THE CONSPIRACY CLAIM

12  AGAINST THE EBRSO DEFENDANTS.  PLAINTIFFS DID NOT MEANINGFULLY

13  OPPOSE THE EBRSO DEFENDANTS' MOTION ON THIS ISSUE, AND IN ANY

14  EVENT, THEY DID NOT CURE THE DEFICIENCIES IN THEIR LAST

15  COMPLAINT.

16    AS WITH THE OTHER PROTESTER CASES, PLAINTIFFS' STATE

17  LAW CASES FAIL TO THE SAME EXTENT AS THE FEDERAL CLAIMS, THUS

18  BECAUSE NONE OF THE EBRSO DEFENDANTS WERE INVOLVED IN ANY HARM

19  THAT BEFELL THE PLAINTIFFS, PLAINTIFFS' STATE LAW CLAIMS ARE

20  DISMISSED.

21    NEXT, THE CLAIMS AGAINST NOVA FAIL TO THE SAME

22  EXTENT THAT THE CLAIMS AGAINST THE OTHER EBRSO DEFENDANTS

23  FAIL.

24    LASTLY, THE COURT WILL DENY ANOTHER OPPORTUNITY TO

25  AMEND.  PLAINTIFFS WERE ALREADY GIVEN LEAVE ONCE TO CURE ANY

DEFICIENCIES IN THE COURT'S PRIOR RULING, AND PLAINTIFFS WERE ALLOWED LIMITED DISCOVERY TO DO SO. THE COURT FINDS THAT FURTHER ATTEMPTS WOULD BE FUTILE. ACCORDINGLY, PLAINTIFFS' CLAIMS AGAINST THE EBRSO DEFENDANTS ARE DISMISSED WITH PREJUDICE.

NOW I'M GOING TO GO INTO THESE IN MORE DETAIL: CLAIMS AGAINST THE INDIVIDUAL EBRSO DEPUTIES.

FIRST, THE PARTIES' ARGUMENTS. EBRSO DEFENDANTS MEMORANDUM DOCUMENT 200-1 AT PAGE 15. THE EBRSO DEFENDANTS ARGUE THAT PLAINTIFFS HAVE FAILED TO STATE VIABLE CLAIMS AGAINST THE EIGHT INDIVIDUAL EBRSO DEPUTIES. PLAINTIFFS ALLEGE ONLY THAT HOWARD AND WALKER WERE PRESENT AT THE INTERSECTION OF EAST AND FRANCE DURING THE MASS ARRESTS OF PROTESTERS, BUT THEY FAILED TO ALLEGE THAT EITHER DEPUTY WAS INVOLVED IN ANY ARREST OR USE OF FORCE.

PLAINTIFFS ASSERT ALL CLAIMS AGAINST ALL DEFENDANTS, BUT THEY HAVE NOT SPECIFICALLY NAMED ANY EBRSO DEPUTY THAT WAS RESPONSIBLE FOR ANY VIOLATION. FURTHER, PLAINTIFFS FAIL TO STATE VIABLE FAILURE TO INTERVENE CLAIMS. MERE PRESENCE AT THE SCENE OF A CONSTITUTIONAL VIOLATION IS NOT ENOUGH. QUOTE, "PLAINTIFFS DO NOT ALLEGE ANY FACTS TO SUGGEST THAT ANY EBRSO DEPUTY KNEW WHY ARRESTS WERE BEING MADE BY ANOTHER AGENCY'S OFFICER SUCH THAT THEY COULD EVEN KNOW THAT AN INDIVIDUAL'S CONSTITUTIONAL RIGHTS WERE ALLEGEDLY BEING VIOLATED." THAT'S FROM DOCUMENT 200 AT PAGE 17.

1    FURTHER, PLAINTIFFS FAIL TO ALLEGE A REASONABLE
2  OPPORTUNITY TO INTERVENE.  ADDITIONALLY, SAYS THE EBRSO
3  DEFENDANTS, THE INTERROGATORY RESPONSES SHOW THAT NONE OF THE
4  DEPUTIES KNEW ANOTHER OFFICER WAS VIOLATING ANY PLAINTIFFS'
5  CONSTITUTIONAL RIGHTS.  AS TO DEPUTIES MENOU, JAMISON, BANK,S,
6  PRATER, MCCALL AND JONES, PLAINTIFFS ONLY CLAIM THAT THEY WERE
7  PRESENT AT THE INTERSECTION OF GOVERNMENT AND MAXIMILLIAN
8  DURING THE TAKEDOWN AND ARREST OF PLAINTIFFS LUNA AND SANDI.
9  THESE DEPUTIES IDENTIFIED THEMSELVES AS BEING IN A LINE OF
10 DEPUTIES FACING GOVERNMENT STREET AND WALKING DOWN THE STREET.
11 THERE ARE NO ARRESTS IN ANY OF THE PHOTOS.  FURTHER, WHILE
12 THEY RECALLED A MAN AND A WOMAN BEING ARRESTED ON THE OTHER
13 SIDE OF GOVERNMENT ACROSS FOUR LANES OF TRAFFIC, THEY DID NOT
14 KNOW THE CIRCUMSTANCES OF THE ARRESTS OR WHY THEY WERE BEING
15 MADE; THUS, THEY COULD NOT HAVE KNOWN THE CIRCUMSTANCES OF THE
16 ARRESTS OR WHY THEY WERE BEING MADE.

17    MOREOVER, THEY DID NOT HAVE A REASONABLE OPPORTUNITY
18 TO PREVENT THE HARM.  AS TO HOWARD AND WALKER, THEIR
19 INTERROGATORIES SHOW THAT THEY WERE NOT INVOLVED IN ANY
20 ARRESTS AND THAT WHILE THEY REMEMBER INDIVIDUALS BEING
21 ARRESTED, THEY DO NOT RECALL THE SPECIFICS.  THEY ALSO DID NOT
22 HAVE A REASONABLE OPPORTUNITY TO INTERVENE.

23    THE PLAINTIFFS' OPPOSITION ON THIS ISSUE IS AT
24 203 -- DOCUMENT 203 AT PAGE 7.  PLAINTIFFS ASSERT THAT HOWARD
25 AND WALKER ARE LIABLE FOR VIOLATING THE FIRST AMENDMENT AND

1  FOR FAILING TO INTERVENE.  PLAINTIFFS POINT TO A PHOTOGRAPH

2  SHOWING THESE DEPUTIES IN GREEN, NEAR THE PLACE WHERE THE

3  OFFICERS WERE BLOCKING PROTESTERS ON MS. BATISTE'S YARD.

4  PLAINTIFF CLAIMS THESE OFFICERS FORMED A LINE AND IMPEDED THE

5  PEACEFUL PROTEST AND THAT THE UNLAWFUL ARRESTS HAPPENED WHILE

6  HOWARD AND WALKER, QUOTE, "OBSERVED AND WERE PRESENT IN THE

7  LINE PREVENTING PLAINTIFFS FROM EXITING THE PROPERTY," CLOSED

8  QUOTE.  THAT'S DOCUMENT 203 AT 8.

9       PLAINTIFFS POINT TO THE CASE OF *COX VERSUS LOUISIANA*

10  IN SUPPORT OF THEIR CLAIM THAT DEFENDANTS' CONDUCT VIOLATED

11  CLEARLY ESTABLISHED LAW.  PLAINTIFFS ARGUE THAT, QUOTE, "THE

12  ALLEGATIONS AGAINST DEFENDANTS, HARRY HOWARD AND JUSTIN

13  WALKER, TAKE ON AN IDENTICAL PATTERN TO THE ILLEGAL ACTS IN

14  *COX*, CONFINE THE PROTESTS, ARBITRARILY ORDER IT UNLAWFUL,

15  ARREST PROTESTERS *EN MASSE*, BUT TAKE THE VIOLATIONS A STEP

16  FARTHER AS LAW ENFORCEMENT NOT ONLY ORDERED THE LEGAL PROTESTS

17  TO DISBAND, BUT ALSO GAVE THEM CONTRADICTORY ORDERS THAT WOULD

18  RESULT IN THEIR ARREST, EVEN IF THEY HAD TRIED TO PEACEFULLY

19  LEAVE THE AREA," CLOSED QUOTE.  THAT'S DOCUMENT 203 AT 9.

20       PLAINTIFFS MOVE TO MORE RECENT CASE LAW AS WELL.  AS

21  TO THE FAILURE TO INTERVENE, PLAINTIFFS ASSERT, QUOTE,

22  "DEFENDANTS HARRY HOWARD AND JUSTIN WALKER COULD HAVE

23  INTERVENED AT MULTIPLE STAGES BEFORE ARRESTS WERE BEING

24  MADE -- ARRESTS WERE MADE.  INCLUDING, ONE, WHEN LAW

25  ENFORCEMENT, INCLUDING THE EBRSO, FORMED LINES TO CONSTRICT

THE PROTESTERS' MOVEMENT ON PUBLIC STREETS; TWO, IMMEDIATELY
FOLLOWING THE FIRST ORDER TO DISPERSE; THREE, FOLLOWING ANY OF
THE SUBSEQUENT ORDERS TO DISPERSE; FOUR, AFTER PROTESTERS WHO
LEFT MS. BATISTE'S YARD BEGAN GETTING TACKLED AND ARRESTED;
AND FIVE, PRIOR TO THE ORDER TO START ARRESTING PROTESTORS
*EN MASSE* OR ONCE THE MASS ARRESTS BEGAN.  INSTEAD, DEFENDANTS
HARRY HOWARD AND JUSTIN WALKER CONTINUED STANDING IN THE
PERIMETER, SURROUNDING THE PROTESTERS AND PREVENTING THEIR
SAFE EXIT AND CHOSE TO SAY OR DO NOTHING TO STOP THE
SUCCESSION OF CONSTITUTIONAL VIOLATIONS," CLOSED QUOTE.
THAT'S DOCUMENT 203 AT 10 AND 11.

PLAINTIFFS STATE THAT HOWARD AND WALKER, QUOTE, "CAN
EVEN BE SEEN ON VIDEO INTERACTING WITH THE OFFICERS WHO
ARRESTED BLAIR, IMANI AND RAEE POLLARD, ALTHOUGH BY THAT POINT
THEIR OPPORTUNITY TO PREVENT THE ARRESTS OF THESE PLAINTIFFS,
THEY STILL HAD AMPLE TIME AND OPPORTUNITY TO INTERVENE BEFORE
ANY FURTHER CONSTITUTIONAL VIOLATIONS OCCURRED," CLOSED QUOTE.
THAT'S DOCUMENT 203 AT 11.

PLAINTIFFS ALSO URGE THAT DISCOVERY RESPONSES DO NOT
ABSOLVE HOWARD AND WALKER.  PLAINTIFFS ASSERT, QUOTE, "NOTHING
IN THESE RESPONSES RELIEVES DEFENDANTS FROM THE ALLEGATIONS
THAT THEY PARTICIPATED IN PREVENTING PLAINTIFFS FROM
EXERCISING THEIR CONSTITUTIONAL RIGHTS BY ILLEGALLY HERDING
THEM OFF OF PUBLIC PROPERTY AND CERTAINLY DOES NOT DEFEAT THE
ALLEGATION THAT THEY FAILED TO INTERVENE TO PREVENT

1  CONSTITUTIONAL VIOLATIONS COMMITTED BY FELLOW LAW ENFORCEMENT

2  OFFICERS," CLOSED QUOTE.  THAT'S DOCUMENT 203 AT 12.

3          AS TO DEFENDANTS MENOU, JAMISON, BANKS, PRATER,

4  MCCALL AND JONES, PLAINTIFFS POINT TO ANOTHER PICTURE, AS

5  WELL, OF THESE OFFICERS IN FORMATION.  PLAINTIFFS REURGE THE

6  ALLEGATIONS OF THEIR COMPLAINT RELATED TO PLAINTIFFS LUNA AND

7  SANDI'S VIOLENT ARREST AT THE INTERSECTION OF GOVERNMENT AND

8  MAXIMILLIAN.  PLAINTIFFS ASSERT, QUOTE, "DEFENDANTS ACTIVELY

9  PARTICIPATED IN VIOLATING PLAINTIFFS' FIRST AMENDMENT RIGHTS

10 FOR THE SAME REASONS STATED ABOVE, ARBITRARILY DECLARING A

11 PEACEFUL PROTEST IN A PUBLIC SPACE TO BE UNLAWFUL.  FURTHER,

12 ONCE LAW ENFORCEMENT ORDERED THE PROTEST TO BE UNLAWFUL,

13 DEFENDANTS WERE PRESENTED WITH AN OPPORTUNITY TO INTERVENE BUT

14 CHOSE INSTEAD TO CONTINUE TO ENFORCE THE PERIMETER," CLOSED

15 QUOTE.  THAT'S DOCUMENT 203 AT 14.

16         LASTLY, PLAINTIFFS ARGUE THAT DISCOVERY RESPONSES DO

17 NOT ABSOLVE THE DEFENDANTS FROM LIABILITY.  SPECIFICALLY,

18 PLAINTIFFS STATE, QUOTE, "THIS RESPONSE DOES NOT HINDER AN

19 ALLEGATION THAT THEY PARTICIPATED IN VIOLATING PLAINTIFFS LUNA

20 AND SANDI'S FIRST AMENDMENT RIGHTS, WHILE LAW ENFORCEMENT

21 ANNOUNCED THE PEACEFUL PROTESTS TO BE UNLAWFUL OR FAILED TO

22 INTERVENE AFTER THAT POINT OR IMMEDIATELY FOLLOWING THE

23 VIOLENT TAKEDOWN," CLOSED QUOTE.  THAT'S DOCUMENT 203 AT 15.

24         THE EBRSO DEFENDANTS REPLY IS AT DOCUMENT 208 AT 2.

25         THE EBRSO DEFENDANTS CORRECTLY NOTE THAT PLAINTIFFS

1  ASSERT IN THEIR OPPOSITION ONLY FIRST AMENDMENT AND FAILURE TO

2  INTERVENE CLAIMS AGAINST THEM.  ACCORDING TO EBRSO DEFENDANTS,

3  THE ONLY SPECIFIC ALLEGATIONS MADE IN THE SAC AGAINST THEM ARE

4  THAT THESE OFFICERS WERE PRESENT AT VARIOUS PLACES.  AS TO THE

5  FIRST AMENDMENT CLAIM, THE EBRSO DEFENDANTS ARGUE THAT

6  PLAINTIFFS DO NOT MAKE ANY FACTUAL ALLEGATIONS IN THE SAC THAT

7  ANY INDIVIDUAL EBRSO DEPUTY, QUOTE, "ENGAGED IN ANY CONDUCT TO

8  PREVENT THE MOVEMENT OF PLAINTIFFS DURING THE PROTESTS,"

9  CLOSED QUOTE.  THAT'S DOCUMENT 208 AT 3.

10         FURTHER, THE CITATIONS PLAINTIFFS MAKE IN THEIR

11  OPPOSITION DO NOT SUPPORT THEIR POSITION, NOR DO THE PHOTOS

12  AND DISCOVERY RESPONSES.  AGAIN, THE ONLY FACTUAL ALLEGATION

13  IS THAT THESE DEFENDANTS WERE PRESENT DURING THE ARRESTS.  THE

14  EBRSO DEFENDANTS THEN GO THROUGH EACH OF THE PARAGRAPHS

15  PLAINTIFFS CITE IN THEIR SAC TO SHOW THAT THEY DO NOT SUPPORT

16  PLAINTIFFS' POSITION.

17         FURTHER, AS TO THE OFFICERS PHOTOGRAPHED IN A LINE,

18  THE DISCOVERY RESPONSES REVEAL THAT THEY WERE ON THE OTHER --

19  I'M SORRY, THEY WERE ON THE SOUTH SIDE OF GOVERNMENT STREET

20  WHILE NADIA AND ANTONIO WERE ON THE NORTH SIDE OF GOVERNMENT.

21  IN ANY EVENT, IT IS NOT A FIRST AMENDMENT VIOLATION TO PREVENT

22  PLAINTIFFS FROM RETURNING TO THEIR VEHICLES.  LASTLY, THE SAC

23  ALLEGES THAT PLAINTIFFS' FIRST AMENDMENT RIGHTS WERE VIOLATED

24  BY ARRESTS AND USES OF FORCE, NOT MERELY BY HINDERING OR

25  RESTRICTING MOVEMENTS.

1    LASTLY, THE DEPUTIES ARE ENTITLED TO QUALIFIED

2  IMMUNITY.  *COX* INVOLVED AN ARREST AND CONVICTION AND HERE,

3  HOWARD AND WALKER WERE MERELY PRESENT AT THE SITE OF THE MASS

4  ARRESTS.

5    AS TO THE FAILURE TO INTERVENE CLAIM, THE ONLY

6  ALLEGATIONS IN THE SAC AS TO THESE DEFENDANTS WERE THAT THEY

7  WERE PRESENT AT THE SITE OF THE ARRESTS, BUT MERE PRESENCE IS

8  NOT ENOUGH.  MUCH OF WHAT PLAINTIFFS ARGUE IN THEIR OPPOSITION

9  IS NOT CONTAINED IN THEIR COMPLAINT.  FURTHER, PLAINTIFFS HAVE

10  NOT ALLEGED SUFFICIENT FACTS THAT HOWARD AND WALKER KNEW THAT

11  VIOLATIONS WERE TAKING PLACE OR HAD AN OPPORTUNITY TO

12  INTERVENE.  LASTLY, THESE TWO OFFICERS ARE ENTITLED TO

13  QUALIFIED IMMUNITY.

14    AS TO THE OTHER OFFICERS, PLAINTIFFS DO NOT MAKE THE

15  ALLEGATIONS ASSERTED IN THEIR OPPOSITION IN THE SAC AND

16  PLAINTIFFS DO NOT EXPLAIN WHAT THESE DEPUTIES COULD HAVE DONE

17  TO INTERVENE.  MOREOVER, THESE OFFICERS' INTERROGATORIES SHOW

18  THAT A MALE AND FEMALE WERE ARRESTED BY THE BRPD ON THE OTHER

19  SIDE OF GOVERNMENT ACROSS FOUR LANES OF TRAFFIC AND THAT THEY

20  DID NOT KNOW WHY THE ARRESTS TOOK PLACE.  LASTLY, THESE

21  OFFICERS, TOO, ARE ENTITLED TO QUALIFIED IMMUNITY.

22    NOW, THE COURT HAS PREVIOUSLY GIVEN TO THE PARTIES

23  THE SOAN, WHICH IS THE COURT'S VIEW OF THE APPLICABLE LAW AND

24  WILL NOT REPEAT THAT HERE.

25    SO WITH RESPECT TO THE ANALYSIS:  PRELIMINARILY A

1   DISTRICT COURT ENJOYS BROAD DISCRETION IN DECIDING WHETHER TO

2   TREAT A MOTION TO DISMISS AS A MOTION FOR SUMMARY JUDGMENT.

3   SEE *ST. PAUL INSURANCE COMPANY*, 937 F.2D AT 280, NOTE 6; ALSO

4   *U.S. EX REL. LONG*, 798 F.3D AT 275.  HOWEVER, AFTER CAREFULLY

5   CONSIDERING THE ALLEGATIONS OF THE SAC, THE COURT FINDS THAT

6   PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM AGAINST ANY

7   INDIVIDUAL EBRSO DEPUTY.

8        FIRST, PLAINTIFFS HAVE FAILED TO ALLEGE THAT ANY OF

9   THE INDIVIDUAL EBRSO DEPUTIES COMMITTED A CONSTITUTIONAL

10  VIOLATION.  PLAINTIFFS MAKE ONLY THE FOLLOWING ALLEGATIONS

11  AGAINST THE INDIVIDUAL EBRSO DEPUTIES.  THIS IS 56-A.  EBRSO

12  OFFICERS MARSHALL, MENOU, JAMES JAMISON, TROY BANKS, CALVIN

13  PRATER, BRANDON MCCALL AND JASON JONES WERE PRESENT AT THE

14  INTERSECTION OF GOVERNMENT AND MAXIMILLIAN DURING THE TAKEDOWN

15  AND ARREST OF PLAINTIFFS ANTONIO CASTANON LUNA AND NADIA

16  SALAZAR SANDI.

17       56-B.  EBRSO OFFICERS HARRY HOWARD AND JUSTIN WALKER

18  WERE PRESENT AT THE INTERSECTION OF EAST AND FRANCE DURING

19  MASS ARRESTS OF PROTESTERS.  THUS, AS TO THE FAILURE TO

20  INTERVENE CLAIM, PLAINTIFFS ALLEGE ONLY THAT THE DEPUTIES WERE

21  PHYSICALLY PRESENT WHERE THE ARRESTS AND USES OF FORCE

22  OCCURRED.  BUT, QUOTE, "MERE PRESENCE AT THE SCENE OF THE

23  ALLEGED USE OF EXCESSIVE FORCE, WITHOUT MORE, DOES NOT GIVE

24  RISE TO BYSTANDER LIABILITY," CLOSED QUOTE.  THAT'S *VASQUEZ*,

25  209 WESTLAW, 2169017 AT PAGE 6, CITING *NOWELL*, N-O-W-E-L-L,

147 F. SUPP. 2D AT 507.  SEE ALSO *BROWN*, 742 F.APP'X AT 884.

*MONTGOMERY*, 2019 WESTLAW, 2424053 AT PAGE 3.

ADDITIONALLY, IN THE FIFTH CIRCUIT, PLAINTIFFS MUST

DEMONSTRATE THAT THE OFFICERS KNEW ABOUT THE CONSTITUTIONAL

VIOLATION, WHICH LOGICALLY REQUIRES THAT THEY SOMEHOW OBSERVED

IT.  SEE *WESTFALL*, 903 F.3D AT 547; *MCDONALD*, 779 F.APP'X AT

227*; NOWELL*, *VASQUEZ*, *MONTGOMERY*, *SUPRA*.  THE OFFICER, QUOTE,

"MUST FUNCTIONALLY PARTICIPATE IN THE UNCONSTITUTIONAL ACT OF

HIS FELLOW OFFICER," CLOSED QUOTE*, MONTGOMERY SUPRA*, AND MUST,

QUOTE, "ACQUIESCE," CLOSED QUOTE, IN IT*.  WHITLEY*, 726 F.3D AT

646*, GARRETT, SUPRA*.

HERE, PLAINTIFFS FAIL TO ALLEGE ANY FACTS FROM WHICH

THE INFERENCE COULD BE DRAWN THAT THIS WAS THE CASE.  LASTLY,

PLAINTIFFS MUST DEMONSTRATE THAT THE DEPUTIES HAD A, QUOTE,

"REASONABLE OPPORTUNITY TO REALIZE THE EXCESSIVE NATURE OF THE

FORCE AND TO INTERVENE TO STOP IT," CLOSED QUOTE.  THAT'S

*HALE*, 45 F.3D AT 919.  SEE ALSO *WESTFALL*, *NOWELL*, *VASQUEZ*,

*SUPRA*.  PLAINTIFFS HAVE ALSO FAILED TO ALLEGE THIS AS WELL.

FOR THE SAME REASONS, THE FIRST AMENDMENT CLAIM ALSO

FAILS.  PLAINTIFFS HAVE ALLEGED ONLY THAT EBRSO DEPUTIES WERE

PHYSICALLY PRESENT DURING THE CONSTITUTIONAL VIOLATIONS, BUT

THEY DO NOT PLAUSIBLY ALLEGE THAT THESE DEFENDANTS ACTUALLY

CAUSED ANY OF THE FIRST AMENDMENT VIOLATIONS.  IT IS IMPORTANT

TO NOTE HERE THAT IN THE COURT'S PRIOR RULING, PLAINTIFFS WERE

GIVEN AN OPPORTUNITY TO CONDUCT LIMITED DISCOVERY, QUOTE, "ON

THE NARROW ISSUE OF WHETHER ANY EBRSO DEPUTY WAS INVOLVED IN THE CONSTITUTIONAL VIOLATIONS," CLOSED QUOTE.  THAT'S DOCUMENT 134 AT 2.  THEY WERE ALSO GIVEN LEAVE TO AMEND THEIR COMPLAINT TO CURE ANY DEFICIENCIES, *ID*. AT 3.  PLAINTIFFS CONDUCTED THAT DISCOVERY, BUT THEY FAILED TO CURE ANY PROBLEMS WITH THEIR OPERATIVE COMPLAINT.  INSTEAD, THEY HAVE LUMPED TOGETHER ALL DEFENDANTS IN THEIR CLAIMS.

THE COURT AGREES WITH THE EBRSO DEFENDANTS THAT THIS IS AN IMPROPER FORM OF SHOTGUN PLEADING, WHICH PLAINTIFFS HAVE FAILED TO CORRECT, DESPITE HAVING AN OPPORTUNITY TO DO SO. SEE *WEILAND*, THAT'S W-E-I-L-A-N-D, 792 F.3D AT 1321-23.  FOR THESE REASONS, AND FOR THE REASONS DISCUSSED BELOW, THE COURT DECLINES TO GIVE PLAINTIFFS FURTHER LEAVE TO AMEND AS THEY HAVE FAILED TO CURE THE DEFICIENCIES DESPITE BEING GIVEN AN OPPORTUNITY TO DO SO.

IN SUM, PLAINTIFFS HAVE FAILED TO STATE A VIABLE CLAIM FOR ANY CONSTITUTIONAL VIOLATION.  SECOND, THE COURT AGREES WITH THE EBRSO DEFENDANTS ON THE QUESTION OF QUALIFIED IMMUNITY.  AGAIN, QUOTE, "THE SUPREME COURT'S CASE LAW DOES NOT REQUIRE A CASE DIRECTLY ON POINT FOR A RIGHT TO BE CLEARLY ESTABLISHED, BUT EXISTING PRECEDENT MUST HAVE PLACED THE STATUTORY OR CONSTITUTIONAL QUESTION BEYOND DEBATE."  THAT'S *KISELA*, K-I-S-E-L-A, 138 SUPREME COURT AT 1152.

AN OFFICER CANNOT BE SAID TO HAVE VIOLATED A CLEARLY ESTABLISHED RIGHT UNLESS THE RIGHT'S CONTOURS WERE

1   SUFFICIENTLY DEFINITE THAT ANY REASONABLE OFFICER IN THE

2   DEFENDANT'S SHOES WOULD HAVE UNDERSTOOD THAT HE WAS VIOLATING

3   IT.  *ID*.  PHRASED ANOTHER WAY, QUOTE, "A GOVERNMENT OFFICIAL'S

4   CONDUCT VIOLATES CLEARLY ESTABLISHED LAW WHEN, AT THE TIME OF

5   THE CHALLENGED CONDUCT, THE CONTOURS OF A RIGHT ARE

6   SUFFICIENTLY CLEAR THAT EVERY REASONABLE OFFICIAL MAY HAVE

7   UNDERSTOOD THAT WHAT HE IS DOING VIOLATES THAT RIGHT," CLOSED

8   QUOTE.  THAT'S *ASHCROFT VERSUS AL-KIDD*, 563 U.S. AT 741.

9        HERE, PLAINTIFFS DO NOT MEET THE STANDARD.  WITH

10  RESPECT TO THE FAILURE-TO-INTERVENE CLAIM, PLAINTIFFS HAVE NOT

11  POINTED TO A FIFTH CIRCUIT OR SUPREME COURT CASE THAT CLEARLY

12  ESTABLISHES THAT OFFICERS ACTING UNDER THESE CIRCUMSTANCES

13  DURING A PEACEFUL BUT LARGE-SCALE PROTEST MUST ACT AND

14  INTERVENE TO STOP A USE OF FORCE OR AN UNLAWFUL ARREST WHICH

15  THEY MAY NOT HAVE EVEN SEEN OR FOR WHICH THEY WERE

16  ORDINARILY -- I'M SORRY, FOR WHICH THEY WERE ONLY PHYSICALLY

17  PRESENT.

18       THE COURT FINDS THAT THIS IS A HIGHLY COMPLEX AND

19  UNUSUAL SET OF FACTS AND THAT THIS IS EXACTLY THE KIND OF

20  SITUATION THAT QUALIFIED IMMUNITY WAS DESIGNED FOR.  SEE *MASON*

21  *VERSUS FAUL*, F-A-U-L, 929 F.3D 762 AT 763 THROUGH 64, (5TH

22  CIRCUIT 2019).

23       WITH RESPECT TO THE FIRST AMENDMENT CLAIM, THE COURT

24  FINDS THAT THE *COX* CASE IS DISTINGUISHABLE.  IN *COX*, A

25  PETITIONER LED A STUDENT MARCH PROTESTING RACIAL SEGREGATION,

AND HE WAS CONVICTED OF DISTURBING THE PEACE AND OBSTRUCTING A PUBLIC PASSAGEWAY AFTER HE WAS TOLD BY POLICE OFFICIALS THAT HE COULD PROTEST ACROSS THE STREET FROM A COURTHOUSE ON THE SIDEWALK, WAS THEN TOLD TO DISPERSE, BUT ALLEGEDLY DID NOT DO SO.  THAT'S *COX I*, 379 U.S. AT 538 THROUGH 544.

WITH RESPECT TO THE BREACH-OF-THE-PEACE CONVICTION, THE SUPREME COURT FOUND THAT, QUOTE, "LOUISIANA INFRINGED APPELLANT'S RIGHTS OF FREE SPEECH AND FREE ASSEMBLY BY CONVICTING HIM UNDER THIS STATUTE," CLOSED QUOTE.  *ID*. AT 545. THE SUPREME COURT EXPLAINED THE APPELLANT'S URGING OF STUDENTS TO SIT AT LUNCH COUNTERS OBVIOUSLY DID NOT DEPRIVE THE DEMONSTRATION OF ITS PROTECTED CHARACTER UNDER THE CONSTITUTION AS FREE SPEECH AND ASSEMBLY.  *ID*. AT 546.  THE COURT ALSO FOUND THAT THE PROTEST WAS, ON THE WHOLE, ORDERLY. THAT'S *ID*. AT 547 THROUGH 59.

WITH RESPECT TO OBSTRUCTING PUBLIC PASSAGE -- THE PUBLIC PASSAGES CONVICTION, THE SUPREME COURT FOUND, QUOTE, "HERE IT IS CLEAR THAT THE PRACTICE IN BATON ROUGE ALLOWING UNFETTERED DISCRETION IN LOCAL OFFICIALS IN THE REGULATION AND USE OF THE STREETS FOR PEACEFUL PARADES AND MEETINGS IS AN UNWARRANTED ABRIDGMENT OF THE APPELLANT'S FREEDOM OF SPEECH AND ASSEMBLY SECURED TO HIM BY THE FIRST AMENDMENT AS APPLIED TO THE STATES BY THE 14TH AMENDMENT.  IT FOLLOWS, THEREFORE, THAT APPELLANT'S CONVICTION FOR VIOLATING THE STATUTE AS SO APPLIED AND ENFORCED MUST BE REVERSED."  THAT'S *COX*, 379 U.S.

AT 558.

COX IS ALMOST CERTAINLY APPLICABLE TO THE OTHER DEFENDANTS IN THIS CASE, BUT THE PROBLEM FOR PLAINTIFFS IS THAT THE SPECIFIC EBRSO DEPUTIES ARE ONLY ALLEGED TO HAVE BEEN PRESENT AT THE TIME CERTAIN PLAINTIFFS WERE ARRESTED.  THE EBRSO DEFENDANTS DID NOT ARREST OR PROSECUTE PLAINTIFFS.

AGAIN, QUOTE, "QUALIFIED IMMUNITY IS JUSTIFIED UNLESS NO REASONABLE OFFICER COULD HAVE ACTED AS THE INDIVIDUAL EBRSO DEPUTIES DID HERE OR EVERY REASONABLE OFFICER FACED WITH THE SAME FACTS WOULD NOT HAVE ACTED THAT WAY. *MASON*, 929 F.3D AT 764.

THE COURT CANNOT SAY THAT EVERY REASONABLE OFFICER IN THE INDIVIDUAL EBRSO DEPUTIES' SHOES, ALL OF WHOM WERE MERELY PRESENT NEAR CONSTITUTIONAL VIOLATIONS, COULD HAVE KNOWN THAT THEIR CONDUCT UNDER THESE CIRCUMSTANCES WAS UNLAWFUL.  PLAINTIFFS HAVE SIMPLY NOT MET THEIR BURDEN.

ACCORDINGLY, THE COURT FINDS THAT PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE INDIVIDUAL EBRSO DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

THIRD, EVEN IF THE COURT WERE TO CONVERT THIS MOTION TO ONE FOR SUMMARY JUDGMENT, PLAINTIFFS' CLAIMS AGAINST THE EBRSO DEPUTIES WOULD STILL FAIL FOR LACK OF A CONSTITUTIONAL VIOLATION.

AS TO THE DEPUTIES, HARRY HOWARD AND JUSTIN WALKER, PLAINTIFFS' PHOTO OF HOWARD AND WALKER MERELY SHOWS THEM

1    STANDING BEHIND THE LINE OF OFFICERS BY MS. BATISTE'S HOUSE.

2    THESE DEPUTIES ARE NOT THEMSELVES PREVENTING ANYONE FROM

3    EXERCISING THEIR FIRST AMENDMENT RIGHTS.

4            AS TO THE FAILURE-TO-INTERVENE CLAIM, THERE'S NO

5    INDICATION FROM THIS PHOTO THAT THESE DEPUTIES ACTUALLY

6    OBSERVED CONSTITUTIONAL VIOLATIONS FROM THE SPECIFIC

7    PLAINTIFFS INVOLVED.  INDEED, THE PLAINTIFF APPEARS TO BE

8    TAKEN BEFORE ANY MASS ARRESTS OCCURRED.  IT IS UNCLEAR FROM

9    THIS PHOTO THAT THEY COULD HAVE EVEN SEEN THE PLAINTIFFS, MUCH

10   LESS HAD A REASONABLE MOMENT TO REALIZE THE NATURE OF THE

11   VIOLATIONS OR A REASONABLE OPPORTUNITY TO INTERVENE.  THESE

12   DEPUTIES ARE MERELY PRESENT NEAR THE TIME OF THE MASS ARRESTS,

13   BUT MERE PRESENCE IS NOT ENOUGH.

14           THE VIDEO IS SIMILARLY UNAVAILING.  AS PLAINTIFFS

15   THEMSELVES ADMIT, THIS SHOWS HOWARD AND WALKER AFTER

16   PLAINTIFFS WERE ARRESTED.  IT DOES NOT ESTABLISH THAT THEY HAD

17   A REASONABLE OPPORTUNITY TO REALIZE THE NATURE OF THE

18   VIOLATION OR TO INTERVENE DURING THE ARRESTS.

19           MOREOVER, THEIR INTERROGATORY RESPONSES CONFIRM THAT

20   THESE OFFICERS WERE NOT INVOLVED IN ANY OF THE ARRESTS AND

21   THAT WHILE THEY RECALL INDIVIDUALS BEING ARRESTED, THEY DID

22   NOT RECALL ANY SPECIFIC ARRESTS.  THAT'S DEFENDANT EXHIBIT 3,

23   DOCUMENT 200-4 AT 4.

24           PLAINTIFFS HAVE POINTED TO NO OTHER SUMMARY JUDGMENT

25   EVIDENCE TO CONTRADICT ANY OF THIS EVIDENCE.

1        AS TO DEPUTIES MENOU, JAMISON, BANKS, PRATER, MCCALL

2   AND JONES, THE PHOTO SHOWS THAT THESE DEFENDANTS WERE IN A

3   LINE, BUT IT DOES NOT ACTUALLY DEPICT ANY PLAINTIFFS HAVING

4   THEIR FIRST AMENDMENT RIGHTS VIOLATED.  IN FACT, THERE IS NO

5   PLAINTIFF VISIBLE IN THE PHOTO, SO THERE IS NO EVIDENCE OF ANY

6   CONSTITUTIONAL VIOLATION TAKING PLACE.  THIS IS PARTICULARLY

7   TRUE GIVEN THAT THESE DEFENDANTS' INTERROGATORY RESPONSES TELL

8   US THAT THEY RECALL A MAN AND A WOMAN BEING ARRESTED BY BRPD

9   ON THE OTHER SIDE OF GOVERNMENT, BUT THEY DID NOT KNOW THE

10  CIRCUMSTANCE OF THE ARRESTS BECAUSE THEY WERE LOCATED AT LEAST

11  FOUR LANES OF TRAFFIC AWAY FROM WHERE THE ARRESTS TOOK PLACE.

12  THAT'S DOCUMENT 200-4 AT PAGES 2-3.

13       THEY ALSO DID NOT KNOW WHY THE ARREST TOOK PLACE.

14  *ID*.  THE LACK OF ANY VIOLATION IS ALSO CLEAR FROM THEIR OWN

15  DECLARATIONS.  BOTH OF THESE PLAINTIFFS SAY THAT, QUOTE, "THEY

16  ATTEMPTED TO ESTABLISH -- "ATTEMPTED TO REACH THEIR VEHICLE,

17  BUT WERE PREVENTED FROM DOING SO BY LAW ENFORCEMENT ROAD

18  CLOSURES AT GOVERNMENT STREET AND MAXIMILLIAN STREET," CLOSED

19  QUOTE.  THAT'S THE SANDI DECLARATION, PARAGRAPH 7, DOCUMENT

20  209-3; LUNA DECLARATION PARAGRAPH 7, DOCUMENT 209-4.  BUT AS

21  THE EBRSO DEFENDANTS ARGUE, IT IS NOT A CONSTITUTIONAL

22  VIOLATION TO PREVENT A PERSON FROM REACHING HIS OR HER CAR.

23       FURTHER, LUNA SPECIFICALLY SAYS THAT WHILE WAITING

24  AT THE LOCATION, THEY WERE, QUOTE, "JOINED IN SOME CHANTS --

25  "THEY JOINED IN SOME CHANTS WITH OTHER PROTESTS," CLOSED

1  QUOTE.  LUNA DECLARATION PARAGRAPH 8, DOCUMENT 209-4.

2        THEY WERE STOPPED ONLY BY THE OFFICERS WHO TACKLED

3  AND ARRESTED THEM.  LUNA DECLARATION PARAGRAPH 10, DOCUMENT

4  209-4.  THUS, IT IS CLEAR THAT THE EBRSO DEFENDANTS, IN A LINE

5  ACROSS GOVERNMENT STREET, DID NOT PREVENT PLAINTIFFS FROM

6  EXERCISING THEIR FIRST AMENDMENT RIGHTS.  THE VIDEOS OF LUNA

7  AND SANDI'S ARRESTS ARE ALSO INCONCLUSIVE.  IN ONE VIDEO, AT

8  THE MOMENT PLAINTIFFS LUNA AND SANDI ARE TAKEN DOWN AT AROUND

9  THE 5:30 MINUTE MARK, THE CAMERA IS FOCUSED ON THE GROUND.

10 THERE IS NO INDICATION FROM THE VIDEO THAT AT THAT MOMENT, THE

11 EBRSO DEPUTIES ACROSS THE STREET HAD AN OPPORTUNITY TO REALIZE

12 THE NATURE OF THE CONSTITUTIONAL VIOLATIONS OR HAD A

13 REASONABLE OPPORTUNITY TO INTERVENE.  THE VIDEO ALSO DOES NOT

14 SHOW THAT THE OFFICERS ACROSS THE STREET WERE VIOLATING THESE

15 PARTICULAR PLAINTIFFS' FIRST AMENDMENT RIGHTS, THUS THE VIDEO

16 CAN'T CREATE A QUESTION OF FACT ON THESE CONSTITUTIONAL

17 VIOLATIONS.

18        IN ANOTHER VIDEO TAKEN FROM ACROSS THE STREET AT

19 AROUND 9:30 TO 11:00 MINUTE MARK, THE COUPLE IS SHOWN TAKEN

20 DOWN FROM THE SIDEWALK, BUT THE ENTIRE ENCOUNTER LASTS ONLY

21 SECONDS.  THIS DEMONSTRATES THAT THE OFFICERS ACROSS FOUR

22 LANES OF TRAFFIC DID NOT HAVE A REASONABLE OPPORTUNITY TO

23 REALIZE THE NATURE OF THE CONSTITUTIONAL VIOLATIONS OR HAVE A

24 REASONABLE OPPORTUNITY TO INTERVENE TO PREVENT THE HARM.

25 FURTHER, IT IS CLEAR THE OFFICERS ACROSS THE STREET WERE NOT

1  VIOLATING THE PLAINTIFFS' FIRST AMENDMENT RIGHTS.

2          THE THIRD VIDEO -- AND THIS IS OF THE MSNBC NEWS

3  STORY AT AROUND THE ONE-MINUTE MARK -- IS SIMILARLY

4  UNAVAILING.  THE SHORT CLIP PROVIDES HIGHER DEFINITION AND

5  ZOOMED IN DEPICTION OF LUNA AND SANDI'S TAKEDOWN BY BRPD

6  OFFICERS, BUT THE CLIP LASTS ONLY FOR A FEW SECONDS.  IT IS

7  UNCLEAR FROM THIS VIDEO THAT THE OFFICERS ACROSS THE STREET,

8  WHO ARE NOT SHOWN IN THE VIDEO, HAD A REASONABLE OPPORTUNITY

9  TO REALIZE THE NATURE OF THE VIOLATION AT THE MOMENT OF THE

10 TAKEDOWN OR A REASONABLE OPPORTUNITY TO INTERVENE.

11         WITHOUT MORE, PLAINTIFFS HAVE FAILED TO DEMONSTRATE

12 THAT THE EBRSO DEPUTIES WERE VIOLATING LUNA AND SANDI'S FIRST

13 AMENDMENT RIGHTS OR THAT THESE DEPUTIES HAD A REASONABLE

14 OPPORTUNITY TO REALIZE THE NATURE OF THE CONSTITUTIONAL

15 VIOLATIONS OR TO INTERVENE.  FOR ALL OF THESE REASONS,

16 PLAINTIFFS' FIRST AMENDMENT CLAIM AND FAILURE TO INTERVENE

17 CLAIM AGAINST THE EBRSO DEPUTIES WILL BE DISMISSED.

18         NOW, AS TO SHERIFF GAUTREAUX, FIRST, THE PARTIES'

19 ARGUMENTS.  EBRSO DEFENDANTS AT DOCUMENT 200-1 AT 11, 20.

20 EBRSO DEFENDANTS ARGUE THAT THE COURT PREVIOUSLY DISMISSED THE

21 INDIVIDUAL CAPACITY CLAIMS AGAINST GAUTREAUX IN PART FOR A

22 LACK OF PERSONAL PARTICIPATION.  PLAINTIFFS FAILED TO ADD ANY

23 NEW ALLEGATIONS AGAINST GAUTREAUX SO THESE CLAIMS SHOULD BE

24 DISMISSED WITH PREJUDICE.

25         ADDITIONALLY, THE COURT DEFERRED RULING ON WHETHER

1    THERE WAS A SINGLE POLICY DECISION BY GAUTREAUX THAT WAS THE

2    MOVING FORCE OF A CONSTITUTIONAL VIOLATION PENDING DISCOVERY

3    ON WHETHER THERE WAS AN UNDERLYING CONSTITUTIONAL VIOLATION BY

4    AN EBRSO DEPUTY.  DISCOVERY HAS SHOWN THAT THERE WAS NO

5    CONSTITUTIONAL VIOLATION.  SO PLAINTIFFS' CLAIMS AGAINST

6    GAUTREAUX SHOULD BE DISMISSED.  THE EBRSO DEFENDANTS MAKE A

7    SIMILAR ARGUMENT WITH RESPECT TO THE OFFICIAL CAPACITY CLAIMS.

8    SINCE THERE IS NO UNDERLYING CONSTITUTIONAL VIOLATION BY AN

9    EBRSO DEPUTY, PLAINTIFFS' OFFICIAL CAPACITY CLAIMS FAIL.

10    PLAINTIFFS' OPPOSITION IS AT DOCUMENT 203 AT 5.

11    PLAINTIFFS RESPOND THAT, QUOTE, "IF ANY INDIVIDUAL EBRSO

12    DEPUTIES COMMITTED ANY UNDERLYING CONSTITUTIONAL VIOLATION,

13    THERE WOULD BE A COGNIZABLE CLAIM STATED AGAINST SHERIFF

14    GAUTREAUX IN HIS INDIVIDUAL CAPACITY," CLOSED QUOTE.  THAT'S

15    DOCUMENT 203 AT 6.  SINCE THEY HAVE ALLEGED VIOLATIONS OF

16    THEIR FIRST AMENDMENT RIGHTS AND FAILURES TO INTERVENE,

17    THEY'VE STATED VIABLE CLAIMS AGAINST GAUTREAUX.

18    IN THE REPLY, EBRSO DEFENDANTS REPLY THAT -- BY

19    REITERATING THE PLAINTIFFS HAVE FAILED TO STATE ANY VIABLE

20    CLAIM BY ANY EBRSO DEPUTY.  FURTHER, THEY HAVE NOT ALLEGED A

21    POLICY SO DEFICIENT THAT THE POLICY ITSELF IS A REPUDIATION OF

22    CONSTITUTIONAL RIGHTS AND IS THE MOVING FORCE OF THE

23    CONSTITUTIONAL VIOLATION.  THAT'S DOCUMENT 208 AT 15.

24    LASTLY, GAUTREAUX IS ENTITLED TO QUALIFIED IMMUNITY.

25    AGAIN, I WILL NOT REPEAT THE SOAN.

1    ANALYSIS:  THE COURT WILL GRANT THE MOTION TO

2  DISMISS THE CLAIMS AGAINST SHERIFF GAUTREAUX.  PLAINTIFFS'

3  OFFICIAL CAPACITY CLAIMS DEPEND ON THE EXISTENCE OF AN

4  UNDERLYING CONSTITUTIONAL VIOLATION BY AN EBRSO DEPUTY.

5  *MALBROUGH*, 220 WESTLAW 2507355, AT PAGE 7, NOTE 15; *WHITLEY*,

6  726 F.3D AT 648, 49; *BUSTOS*, 599 F.3D AT 467.  THE SAME GOES

7  FOR PLAINTIFFS' INDIVIDUAL CAPACITY CLAIM.  THE POLICY MUST BE

8  THE MOVING FORCE OF A CONSTITUTIONAL VIOLATION.  SEE *PORTER*,

9  659 F.3D AT 446; *THOMPKINS*, 828 F.2D AT 304.

10    AS EXPLAINED ABOVE, PLAINTIFFS HAVE FAILED TO STATE

11  ANY VIABLE CLAIMS AGAINST THE EBRSO DEPUTIES.  AS A RESULT,

12  THE INDIVIDUAL AND OFFICIAL CAPACITY CLAIMS AGAINST SHERIFF

13  GAUTREAUX MUST FAIL.

14    AS TO THE CONSPIRACY CLAIMS, FIRST, THE ARGUMENTS.

15  EBRSO AT DOCUMENT 200, PAGE 13.

16    THE EBRSO DEFENDANTS ARGUE THAT ALL CONSPIRACY

17  CLAIMS AGAINST ALL DEFENDANTS SHOULD BE DISMISSED.  THE COURT

18  PREVIOUSLY GRANTED EBRSO DEFENDANTS' MOTION TO DISMISS THESE

19  CLAIMS BECAUSE PLAINTIFFS FAILED TO ADEQUATELY ALLEGE AN

20  UNDERLYING AGREEMENT.  PLAINTIFFS WERE GIVEN LEAVE TO AMEND

21  THEIR COMPLAINT TO CURE THESE DEFICIENCIES, BUT FAILED TO DO

22  SO.

23    IN THE OPPOSITION, WHICH IS DOCUMENT 203, PLAINTIFFS

24  MENTION THE CONSPIRACY CLAIM BEING DISMISSED IN THEIR

25  DESCRIPTION OF THE COURT'S PRIOR ORDER, BUT DO NOT OTHERWISE

1   ADDRESS IT.  IN THE REPLY, DOCUMENT 208 AT 1-2, THE EBRSO
2   DEFENDANTS AGAIN EMPHASIZE THAT PLAINTIFFS FAILED TO CURE THE
3   DEFICIENCIES AND FAILED TO EVEN RESPOND TO THEIR ARGUMENTS ON
4   CONSPIRACY.

5          ANALYSIS:  PLAINTIFFS FAIL TO ADEQUATELY RESPOND TO
6   THE SUBSTANCE OF THE EBRSO DEFENDANTS' ARGUMENTS ON THE
7   CONSPIRACY CLAIMS.  ON THIS GROUND ALONE, THE CLAIMS CAN BE
8   DISMISSED.  SEE *APOLLO ENERGY, LLC, VERSUS CERTAIN*
9   *UNDERWRITERS AT LLOYD'S LONDON*, 387 F. SUPP.3D 663 AT 672,
10  (MIDDLE DISTRICT, LOUISIANA 2019).

11         CITING *JMCB, LLC, VERSUS BOARD OF COMMERCE AND*
12  *INDUSTRY*, 336 F. SUPP.3D 620 AT 634, (MIDDLE DISTRICT,
13  LOUISIANA 2018).

14         IN ANY EVENT, THE COURT FINDS THAT PLAINTIFFS HAVE
15  FAILED TO CURE THE DEFICIENCIES IN THEIR COMPLAINT WITH
16  RESPECT TO THE CONSPIRACY CLAIMS.  SEE THE SAC PARAGRAPHS 83
17  THROUGH 85, 302 THROUGH 305.  AND SO FOR THIS REASON, THESE
18  CLAIMS WILL BE DISMISSED.

19         AS TO THE STATE LAW CLAIMS; FIRST THE ARGUMENTS.
20  EBRSO DEFENDANTS' MEMORANDUM IS DOCUMENT 200-1 AT 22.  EBRSO
21  DEFENDANTS SEEK DISMISSAL OF PLAINTIFFS' STATE LAW CLAIMS OF
22  VIOLATIONS OF THE STATE CONSTITUTION, IIED, NIED, ASSAULT,
23  BATTERY, FALSE IMPRISONMENT, MALICIOUS PROSECUTION AND
24  NEGLIGENCE AS WELL AS THE CLAIMS FOR VICARIOUS LIABILITY AND
25  INDEMNITY.

1    THE EBRSO DEFENDANTS ARGUE THAT NEITHER GAUTREAUX

2  NOR THE DEPUTIES WERE INVOLVED IN ANY DECISION -- SORRY, ANY

3  DETENTION, ARREST OR USE OF FORCE, SO THESE CLAIMS SHOULD BE

4  DISMISSED.  FURTHER, SINCE NO DEPUTY IS LIABLE, THE CLAIMS

5  AGAINST GAUTREAUX FOR VICARIOUS LIABILITY SHOULD BE DISMISSED.

6    PLAINTIFFS' OPPOSITION IS AT DOCUMENT 203, PAGE 15.

7  PLAINTIFFS CONCEDE IN THEIR OPPOSITION THAT THERE ARE NO

8  CLAIMS FOR ASSAULT, BATTERY, FALSE IMPRISONMENT AND MALICIOUS

9  PROSECUTION AGAINST THE EBRSO DEFENDANTS.  HOWEVER, THEY

10 RETAIN THEIR CLAIMS FOR VIOLATION OF THE LOUISIANA

11 CONSTITUTION, IIED, NIED, NEGLIGENCE AND VICARIOUS LIABILITY.

12    EBRSO DEFENDANTS' REPLY IS DOCUMENT 208 AT 15.  THE

13 EBRSO DEFENDANTS RESPOND THAT THE REMAINING CLAIMS ARE NOT

14 BASED ON THESE DEPUTIES FORMING LINES TO BLOCK PROTESTERS.

15 THE SAC BASES LOUISIANA CONSTITUTION CLAIMS ON DEFENDANTS',

16 QUOTE, "ACTIONS IN ARRESTING, DETAINING AND USING FORCE ON THE

17 PLAINTIFFS," CLOSED QUOTE.  DOCUMENT 208 AT 16, CITING THE SAC

18 AT PARAGRAPH 317.

19    THE OTHER STATE LAW TORTS ARE BASED ON OTHER ACTIONS

20 WHICH THE EBRSO DEFENDANTS DID NOT COMMIT.  CONSEQUENTLY,

21 THESE CLAIMS SHOULD BE DISMISSED.

22    ANALYSIS:  JUST AS THE COURT DID FOR THE OTHER

23 PROTESTER CASES, THE COURT WILL DISMISS THE STATE LAW CLAIM TO

24 THE SAME EXTENT AS THE FEDERAL CLAIMS.  THUS, BECAUSE

25 PLAINTIFFS HAVE FAILED TO STATE ANY VIABLE FEDERAL CLAIMS

1  AGAINST THE EBRSO DEFENDANTS SO, TOO, WILL THEIR STATE LAW

2  CLAIMS BE DISMISSED.

3        MORE SPECIFICALLY:  ONE, ANY STATE LAW

4  CONSTITUTIONAL CLAIM FAILS FOR LACK OF PERSONAL INVOLVEMENT

5  AND BECAUSE THERE WAS NO FIRST AMENDMENT VIOLATION; TWO, ANY

6  NEGLIGENCE CLAIM FAILS FOR LACK OF CAUSATION; THREE, ANY IIED

7  OR NIED CLAIM FAILS FOR LACK OF OUTRAGEOUS CONDUCT BY THE

8  EBRSO DEPUTIES; AND FOUR, ANY VICARIOUS LIABILITY CLAIM FAILS

9  FOR THE LACK OF ANY UNDERLYING TORT.

10        AS TO THE CLAIM AGAINST NOVA, THESE ARE DISMISSED TO

11  THE SAME EXTENT AS THE CLAIMS AGAINST THE OTHER EBRSO

12  DEFENDANTS.

13        WITH RESPECT TO LEAVE TO AMEND, THE COURT FIRST

14  NOTES THAT PLAINTIFFS HAVE NOT REQUESTED LEAVE TO AMEND, BUT

15  EVEN IF THEY HAD, THE COURT WOULD DENY FURTHER LEAVE TO AMEND.

16  PLAINTIFFS WERE GIVEN ONE PREVIOUS OPPORTUNITY TO AMEND TO

17  CURE THE DEFICIENCIES OF THEIR PRIOR COMPLAINT; DOCUMENT 134

18  AT 3.  THEY WERE ALSO GIVEN A CHANCE TO CONDUCT LIMITED

19  DISCOVERY TO DETERMINE WHICH OFFICERS WERE INVOLVED IN THE

20  ALLEGED CONSTITUTIONAL VIOLATIONS; DOCUMENT 134 AT 1-2.

21        THE COURT FURTHER BELIEVES THAT FURTHER AMENDMENT

22  WOULD BE FUTILE.  PLAINTIFFS CANNOT STATE VIABLE CLAIMS

23  AGAINST SHERIFF GAUTREAUX OR THE OTHER EBRSO DEFENDANTS.

24  ACCORDINGLY, THE CLAIMS AGAINST THE EBRSO DEFENDANTS WILL BE

25  DISMISSED WITH PREJUDICE.

1          IN CONCLUSION, IT IS ORDERED THAT THE MOTION TO

2    DISMISS, DOCUMENT 200, FILED BY THE EBRSO DEFENDANTS, IS

3    GRANTED AND THAT ALL CLAIMS BY PLAINTIFFS AGAINST THE EBRSO

4    DEPUTIES ARE DISMISSED WITH PREJUDICE.

5          ALL RIGHT.  ANYTHING FURTHER FROM THE PLAINTIFFS?

6          **MR. MOST:**  THANK YOU, YOUR HONOR.  I THINK WE WILL

7    LIKELY FOLLOW UP WITH A MOTION TO REOPEN DISCOVERY BECAUSE I

8    THINK THIS WAS THE THING THAT WAS HOLDING BACK FULL DISCOVERY.

9    SO JUST AS A HEADS UP, BUT WE'LL DO THAT AS A BRIEFED MOTION.

10         **THE COURT:**  ALL RIGHT.  AND FROM THE DEFENDANT?

11         **MS. ST. PIERRE:**  NO, YOUR HONOR.  THANK YOU VERY

12   MUCH.

13         **THE COURT:**  ALL RIGHT.  THANK YOU, FOLKS.

14         **REPORTER'S NOTE:**  ***(WHEREUPON COURT WAS ADJOURNED.)***

15             C E R T I F I C A T E

16         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

17   FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED

18   NUMBERED MATTER.

19   **S:/GINA DELATTE-RICHARD, CCR**

20   GINA DELATTE-RICHARD, CCR

21   OFFICIAL COURT REPORTER

22

23

24

25