UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**BLAIR IMANI, ET AL**          CIVIL ACTION

**VERSUS**                       NO.: 3:17-CV-439-JWD-EWD

**CITY OF BATON ROUGE, ET AL**

**MEMORANDUM IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

MAY IT PLEASE THE COURT:

*<u>Factual Basis</u>*

Plaintiffs herein allege a variety of state and federal constitutional torts, state law torts, vicarious liability, and claims for indemnity, in their Revised Second Amended Complaint (ECF Doc. 189-1), based on participation in protests in downtown Baton Rouge, on or about July 10, 2016. The Fourth Request for Production of Documents, No. 71, propounded on March 8, 2021, attached hereto and made a part hereof as Exhibit A, requests a document identified in a newspaper article, described as:

> A copy of the memorandum written by Cpt. Jeremiah Ardoin referenced in "Alleged corruption in BRPD narcotics unit includes stolen drugs, illegal searches, planted evidence" by Lea Skene (March 5, 2021).

Attached hereto as Exhibit B is the arrest warrant issued for Jason Acree, March 1, 2021. The warrant has been executed, as can be seen from the bail bond posted by Jason Acree, attached hereto as Exhibit C. A review of the newspaper article referenced by plaintiffs shows that the memorandum alleges a variety of claims against various officers, and that it was authored in December, 2020.

Undersigned counsel advises the Court that the memorandum is related to ongoing criminal investigations, one or more internal affairs investigations, and imminent criminal litigation, as shown by Exhibits B and C. As such, plaintiffs' request for disclosure of this document jeopardizes the potential prosecution of Acree, BRPD's efforts to investigate allegations of criminal activity, and BRPD's ability to investigate allegations of officer misconduct.

### *Law & Argument*

The general scope of civil discovery is found in Federal Rule of Civil Procedure, Rule 26(b)(1), which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Protective orders, to restrict or limit discovery, a found in Federal Rule of Civil Procedure, Rule 26(c)(1), which provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A) forbidding the disclosure or discovery;
> (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

Although privilege, expressed as a resistance to discovery, is generally disfavored, it is well established that law enforcement has a limited, qualified privilege to resist disclosures relating to ongoing investigations and ongoing criminal litigation. As set forth by the Fifth Circuit in *In Re*

*US Department of Homeland Security*, the accumulated case law protects specific categories of information, such as open criminal investigations, identities of confidential informants, and national security, [1] and investigative techniques.[2] Once the privilege is asserted, the trier of fact should make a determination of the applicability of the law enforcement privilege, including by in camera review of documents that the moving party seeks to withhold, and by application of the *Frankenhauser* factors, decide if the materials should be provided, or not, or what other protective measures would adequately safeguard the information. That balancing test uses ten factors:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> (6) whether the police investigation has been completed;
> (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
> (8) whether the plaintiff's suit is non-frivolous and brought in good faith;
> (9) whether the information sought is available through other discovery or from other sources;
> (10) the importance of the information sought to the plaintiff's case.
> (*In Re US Dept. of Homeland Sec.*, supra, at 570, citing *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C.Cir.1996))

The *Frankhauser* test is flexible in its determination, and the privilege is further bound by relevance and time constraints. That is, the privilege applies for a reasonable period of time, which

---

[1] 459 F.3d 565 (US 5th Cir., 8/2/2006) at 569-570, citing *Brown v. Thompson*, 430 F.2d 1214 (5th Cir.1970), *Swanner v. United States*, 406 F.2d 716 (5th Cir.1969), *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir.1991), and the case law of other circuits, at Footnote 1.
[2] Id, at Footnote 2, citing *Black v. Sheraton*, 564 F.2d 531, 545-46 (D.C.Cir.1977) (recognizing, in the context of discussing executive privilege, that law enforcement documents disclosing "investigative techniques or sources" should be minimized.)

defendants suggest is at least the pendency of the investigations related to the document or documents sought.

As applied to the requested discovery, defendants respectfully suggest that evaluation of the factors indicates nondisclosure:

> (1) This memorandum regards the activities of a specialized narcotics unit. It is the basis of current and active investigations, which will potentially be thwarted by disclosure of the information.
> (2) This memorandum includes or purports to include information regarding criminal activity and police misconduct by a variety of individuals, which may or may not be true or accurate. Identifying those individuals before the claims are thoroughly investigated may defame the innocent, or give the guilty an opportunity to evade responsibility for their actions. In either of those cases, publication or disclosure of the information may have a negative impact upon persons who have given information by having their identities disclosed.
> (3) This memorandum relates to Internal Affairs investigations by BRPD, which has to investigate and evaluate the allegations about its own officers. The allegations are being investigated by BRPD, and for possible criminal charges or policy violations, but early disclosure of the information could jeopardize those investigations. Further, those allegations may not be true, or may misidentify perpetrators. Early disclosure, without thorough investigation, would needlessly tarnish the innocent, and give the guilty an opportunity to hide evidence or otherwise evade responsibility.
> (4) The information appears to be factual, but may be rumors, or malicious misinformation. It does not appear to be an executive summary.
> (5) This factor tends to favor the plaintiffs, who do not appear to have any association with recent narcotics cases.
> (6) The police investigation has not been completed, it has only recently begun, and has multiple areas of interest.
> (7) Interdepartmental disciplinary proceedings have arisen from the investigation, and they are not yet complete.
> (8) Defendants disagree with the merits and basis of plaintiff's suit, but cannot reasonably categorize it as frivolous.
> (9) The information has not been released by the Baton Rouge Police Department, because of the ongoing investigations. No release of the information has or will be authorized until all investigations are complete.
> (10) The allegations of wrongdoing by a small, specialized division of the BRPD, authored in December, 2020, without specifying dates, by an officer who started work with the narcotics division in April, 2016, have no relevance to crowd control techniques or alleged 1st Amendment violations in July, 2016.

Plaintiffs have asserted municipal liability through *Monell v. Dep't of Social Servs.* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[3] The Fifth Circuit has explained municipal respondeat superior liability as follows:

> We will begin with the basic principles of municipal liability for the misconduct of its employees in §1983 actions.
> It is well-established that a city is not liable under §1983 on the theory of respondeat superior.  A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it "through some official action or imprimatur."  To establish municipal liability under §1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right.
> Official policy establishes culpability, and can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy
> A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."  Thus, a plaintiff must show the policy was promulgated by the municipality's policymaker. There is no "de facto" final policymaking authority. Here the parties agree that Chief Mendoza has final policymaking authority over the Fort Worth Police Department.
>  Finally, a plaintiff must establish that the policy was the moving force behind the violation. In other words, a plaintiff must show direct causation. This means "there must be a direct causal link" between the policy and the violation.
> (*Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (2009) at 847-848, internal citations omitted)

As set forth herein, there is no way to establish a direct causal link between allegations of misconduct by a small, specialized division of the Baton Rouge Police Department in 2020 with allegations of widespread wrongful arrests during protests and public disturbances in 2016. The types of misconduct alleged by plaintiffs bear little, if any, resemblance to the misconduct alleged four years later, and are attenuated by the intervening passage of time. The current and ongoing investigations demonstrate that there is no acceptance of misconduct by the policy making authority of the Baton Rouge Police Department. Furthermore, the requested disclosure would

---

[3] ECF Doc. 189-1, at paragraphs 307-315.

disrupt or impede BRPD's efforts to correct the conduct of its own officers and enforce the laws applicable to all citizens, while potentially exposing innocent individuals, who may be wrongfully accused, to public defamation. Defendants herein acknowledge that some of the information contained in the memorandum, if shown to be true, would be discoverable, after the investigations are complete, and criminal litigation formally initiated, but not before such time.

## *Conclusion*

The plaintiffs are not entitled to the document sought. It is attenuated by time and difference of misconduct alleged, and does not relate to plaintiffs' allegations of municipal liability based on conduct in 2016. Furthermore, disclosure of information relating to current and ongoing Internal Affairs and criminal investigations, and/or current criminal litigation, is protected by a law enforcement privilege, as well as common sense. Defendants respectfully request a protective order, so that the Baton Rouge Police Department can regulate its own officers in the manner sought by all responsible municipalities, protect the innocent from false allegations, and aid in the prosecution of those committing criminal acts against the public.

**By Attorneys:**
**Anderson O. Dotson**
**Parish Attorney**

***/s/ Joseph K. Scott, III***
**Joseph K. Scott, III (Bar Roll #28223)**
**Deelee S. Morris (Bar Roll #28775)**
**A. Gregory Rome (Bar Roll #21062)**
**222 St. Louis Street, 9th Floor**
**Baton Rouge, LA 70802**
**Telephone: (225) 389-3114**
**Facsimile:  (225) 389-8736**
**Email:** jkscott@brla.gov
**Email:** dsmorris@brla.gov
**Email:** grome@brla.gov

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**BLAIR IMANI, ET AL**                    **CIVIL ACTION**

**VERSUS**                                **NO.: 3:17-CV-439-JWD-EWD**

**CITY OF BATON ROUGE, ET AL**

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing *Memorandum in Support of Motion for Protective Order* was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

    Baton Rouge, Louisiana this 26th day of March, 2021.

    */s/ Joseph K. Scott, III*
    **JOSEPH K. SCOTT, III**