# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

_____

BLAIR IMANI, *et al.*

          Plaintiffs,

   v.

CITY OF BATON ROUGE, *et al.*

          Defendants.
_____

Docket No. 17-cv-00439-JWD-EWD

### Plaintiffs' Statement of Material Facts in Support of Motion for Partial Summary Judgment

| No. | Material Fact | Defendants' Response |
|---|---|---|
| 1 | On July 5, 2016, Baton Rouge police officers shot Alton Sterling to death.[1] | |
| 2 | On July 10, 2016, protesters were told to go "towards East Boulevard and France Street, to clear a major thoroughfare for downtown."[2] | |
| 3 | Plaintiffs' Affidavits of Probable Cause say that they were "advised by loud speaker to remain on private property and the curb."[3] | |
| 4 | The City's 30(b)(6) witness testified that "any protesters who complies with an order to clear the streets should not be arrested by Baton Rouge Police Department." | |
| 5 | The City's 30(b)(6) witness testified that "if protesters clear the streets after being given a command to clear the streets, there's not the justification to sweep in and make arrests."[4] | |

---

[1] R. Doc. 202 at 4 (Answer, admitting ¶ 1).
[2] *Geller v. City of Baton Rouge*, 17-cv-00324 (BRPD Opposition to Consolidate), at 2.
[3] Ex. H at 1-13; Ex. DD.
[4] *Id.*

| 6 | The City's 30(b)(6) witness testified that the City has no evidence that any Plaintiff didn't comply with orders.[5] | |
| 7 | The City's 30(b)(6) witness testified that the City has no evidence that any Plaintiff engaged in an act of violence.[6] | |
| 8 | The Affidavits of Probable Cause for each Plaintiff were written and printed in advance of their arrests.[7] | |
| 9 | The City's 30(b)(6) witness testified that it was "BRPD policy that the arrest team should not stop and have a conversation with the processing team."[8] | |
| 10 | A person cannot be booked into the East Baton Rouge Parish Prison without an Affidavit of Probable Cause.[9] | |
| 11 | Every Plaintiff was arrested for either R.S. 14:97 or R.S. 14:100.1 and also resisting arrest.[10] | |
| 12 | The City's 30(b)(6) witness testified that other than other than the affidavit of probable cause, the City does not have any description of any specific plaintiff's illegal activity.[11] | |
| 13 | According to the City's 30(b)(6) witness, the East & France protest fell under "the Civil Disorder Policy."[12] | |
| 14 | According to the City's 30(b)(6) witness, the East & France street protest was a protest for protesters "to speak out against | |

[5] Ex. B at 26:19-27:8 (30b6 Witness Dep.) (Q So then, going to our chart, the first column is 'Does the City have evidence plaintiff didn't comply with orders,' . . . We can truthfully put a 'no' in each of the boxes in this column. Agreed? A Yes.")

[6] Ex. B at 36:21-37:4 ("Q. . . . So, just to be clear, you don't see any discrepancies on page one of this chart that are discrepancies from the testimony of the City of Baton Rouge. Agreed? A That's a hard thing for me to wrap around. I don't see anything on this chart that's a discrepancy from what I testified for the City on this script.")

[7] See Ex. O (email circulating pre-prepared Affidavits of Probable cause); Ex. G at 13:21-24 ("Q And that paperwork consisted of preprinted Affidavits of Probable Cause; is that correct? A Yes."); Ex. H and DD (Affidavits of Probable Cause).

[8] Ex. Y at 74:12-17.

[9] Ex. G at 24:18 ("Q And you have to have a signed probable cause affidavit in order to book someone into the East Baton Rouge Parish Prison, correct? A Yes. Q Someone can't be imprisoned there without a probable cause affidavit, right? A No, they cannot."); Ex. I at 23:19-25.

[10] Ex. H, Ex. DD.

[11] Ex. B at 32:8-14 ("Q Lieutenant, so, I now have it as other than the affidavit of probable cause, does the City have any description of any specific plaintiff's illegal activity, and so I think the answer is no. Agreed? A Yes. If you're talking about a specific plaintiff, yes.")

[12] Ex. Y (30(b)(6)) at 25:18-23("Q Okay. Did that East and France Street protest trigger the Civil Disorder Policy or was it -- or did it only fall under the Special Event Policy? A I would say it would be the Civil Disorder Policy.")

|  | perceived misconduct by the Baton Rouge Police Department," and that "made it not fall under the Special Event Policy," and "instead fall under the Civil Disorder Policy."[13] |  |
| --- | --- | --- |
| 15 | According to the City's 30(b)(6) witness, if they had gathered together instead "for a church event or to talk about sales of water skis, that would fall under a special event."[14] |  |
| 16 | According to the City's 30(b)(6) witness, "once an assemblage falls under the Civil Disorder Policy, the first supervisor is directed to disperse the crowd, even if it is minor/peaceful in nature."[15] |  |
| 17 | The signatures on some Affidavits of Probable Cause were forged.[16] |  |

Respectfully submitted,

/s/ William Most
WILLIAM MOST (Louisiana Bar No. 36914)
DAVID LANSER (Louisiana Bar No. 37764)
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (650) 465-5023
Email: williammost@gmail.com

JOHN ADCOCK (Louisiana Bar No. 30372)
P.O. Box 750621
New Orleans, LA 70175
Tel: (504) 233-3125
Fax: (504) 308-1266
Email:  jnadcock@gmail.com

---

[13] Ex. Y at 28:15-29:2 ("They gathered for a specific purpose. Q What was the purpose? A It was a protest purpose. Q Right. So it was a protest for them to speak out against perceived misconduct by the Baton Rouge Police Department, agreed? A Agreed. Q And so that made it not fall under the Special Event Policy? A Correct. Q And instead fall under the Civil Disorder Policy? A Correct.")

[14] Ex. Y at 29:3-7 ("Q So by contrast, if they had gathered together, say, for a church event or to talk about sales of water skis, that would fall under a special event? A Yes.")

[15] Ex. Y at 31:4-8 ("Q So once an assemblage falls under the Civil Disorder Policy, the first supervisor is directed to disperse the crowd, even if it is minor/peaceful in nature, agreed? A Agreed.")

[16] Ex. R at 46:20-47:7 ("Q Is that your signature on the affiant line here? A No, sir. Q What indicates to you that it's not your signature? A I've been writing my name for quite sometime and that's not my handwriting. Q It's not just you don't remember signing this, you're sure you did not sign this document; is that correct? A Absolutely and my name is actually Billy Walker, III. And I make sure I put "III" on all of my documents."); Ex. Q at 41:1-15 ("Q It wasn't you that signed this? A No, sir. . . . Q Did you authorize anyone to sign your name to this document? A No, sir.").