UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BLAIR IMANI, ET AL

      PLAINTIFFS

V.          DOCKET NO. 17-cv-00439-JWD-EWD

CITY OF BATON ROUGE, ET AL

      DEFENDANTS


      Continuation of the 30 (b)(6)
deposition of SERGEANT ORSCINI BEARD, II,
taken on Wednesday, August 25, 2021,
commencing at 10:05 a.m. via
videoconferencing.


REPORTED BY:

Lori L. Marino
Certified Court Reporter
      SOUTHERN COURT REPORTERS, INC.
        (504)488-1112

1  APPEARANCES:

2

3  MOST & ASSOCIATES
   201 ST. CHARLES AVENUE, SUITE 114 # 101
4  NEW ORLEANS, LOUISIANA  70170
   TELEPHONE:  (504)  509-5023

5

   BY:  WILLIAM B. MOST, ESQ.
6  williammost@gmail.com
   REPRESENTING THE PLAINTIFFS (IMANI V. CITY OF
7  BATON ROUGE

8

9  RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
   4400 SOUTH CARROLLTON AVENUE
10 NEW ORLEANS, LOUISIANA  70119
   TELEPHONE:  (504) 620-2259

11

   BY:  ERIC A. FOLEY, ESQ
12 eric.foley@macarthurjustice.org

13 BY:  HANNAH LOMMERS-JOHNSON
   hannah.lommersjohnson@macarthurjustice.org
14 REPRESENTING THE PLAINTIFFS (SMITH V. CITY OF
   BATON ROUGE, BATISTE-SWILLEY V. CITY OF BATON
15 ROUGE, AND TENNART V. CITY OF BATON ROUGE

16

17 OFFICE OF THE EAST BATON ROUGE PARISH ATTORNEY
   222 ST. LOUIS STREET, 9TH FLOOR
18 BATON ROUGE, LOUISIANA  70802
   TELEPHONE:  (225) 389-3400

19

   BY:  JOSEPH SCOTT, ESQ.
20 joseph@josephscott.com
   REPRESENTING CITY/PARISH OF BATON ROUGE AND
21 BATON ROUGE CITY POLICE DEPARTMENT OFFICERS

22

23

24

25

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

1    APPEARANCES (CONTINUED):

2

3    BURGLASS & TANKERSLEY, LLC
     5213 AIRLINE DRIVE
4    METAIRIE, LOUISIANA   70001
     TELEPHONE:  (504) 836-0408
5
     BY:  GREGORY C. FAHRENHOLT, ESQ.
6    gfahrenholt@burglass.com
     REPRESENTING LOUISIANA STATE POLICE AND
7    INDIVIDUAL STATE POLICE TROOPERS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WITNESS INDEX

SERGEANT ORSCINI BEARD, II
9000 AIRLINE HIGHWAY, SUITE 3200
BATON ROUGE, LOUISIANA  70815

TITLE                                    1

APPEARANCES                              2

WITNESS INDEX                            3

AGREEMENT OF COUNSEL                     4

EXAMINATION BY MR. MOST                  5

WITNESS'S CERTIFICATE                    20

REPORTER'S CERTIFICATE                   21

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

S T I P U L A T I O N

It is stipulated and agreed by and between counsel that the deposition of SERGEANT ORSCINI BEARD, II is hereby being taken pursuant to the Federal Rules of Civil Procedure for all purposes in accordance with law;

That the formalities of certification and filing are specifically waived;

That the formalities of reading and signing are specifically not waived.

That all objections, except those as to the form of the question and/or responsiveness of the answer, are hereby reserved until such time as this deposition or any part thereof may be used in evidence.

*   *   *   *   *   *   *   *

LORI L. MARINO, Certified Court Reporter, in and for the State of Louisiana, officiated in administering the oath to the witness.

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

PROCEEDINGS

1

2 THE COURT REPORTER:

3          Will counsel, please, identify

4 themselves and their representations,

5 and also stipulate that by agreement

6 of all parties, this deposition is

7 being held via videoconferencing, and

8 there is no objection to the witness

9 being sworn in remotely.

10 MR. MOST:

11          This is William Most on behalf

12 of the Imani plaintiffs.  We so

13 stipulate and agree; and also, Greg

14 Fahrenholt for the State Police by

15 email said he's running late, but he

16 agrees with the stipulations.

17 MR. FOLEY:

18          This is Eric Foley and Hannah

19 Lommers-Johnson for the plaintiffs in

20 the Tennart v. City of Baton Rouge,

21 Smith v. City of Baton Rouge and

22 Batiste-Swilley v. City of Baton

23 Rouge, plaintiffs, and yes, we agree

24 to those stipulations.

25 MR. SCOTT:

         Joseph Scott for the City of

         Baton Rouge, Parish of East Baton

         Rouge, assorted officials, Baton

         Rouge Police Department and 183

         individual officers.  We'll accept

         that stipulation.

                    EXAMINATION

BY MR. MOST:

    Q    I'm going to put into the chat

Sergeant Beard's full name and spelling.

    A    It's Orscini, O-R-S-C-I-N-I, Beard,

B-E-A-R-D, II.

    Q    Good morning, Sergeant Beard.  Can

you hear me all right?

    A    Yes.  Good morning.

    Q    Thank you for coming back to talk to

us today.  Sergeant Beard, you understand we

are currently continuing the 30(b)(6)

deposition in which we deposed you yesterday?

    A    Yes, sir.

    Q    So you understand today as yesterday

and as before, you are under oath and your

answers have the same force as if we're in a

courtroom with a judge or jury?

    A    Yes, sir.

1      Q    Is there anything today, whether

2  illness, migraine, fatigue, medication or

3  substance that will prevent you from giving us

4  your full attention and truthful and complete

5  answers?

6      A    No, sir.

7      Q    Just as before, if you don't

8  understand my questions or they're not clear,

9  will you agree to tell me that that's the case

10  rather than try to answer them anyway?

11      A    Yes, sir.

12      Q    You understand that today, like

13  before, you are here designated to speak on

14  behalf of the City of Baton Rouge?

15      A    Yes, sir.

16      Q    You understand that your answers that

17  you give are the testimony of the City of

18  Baton Rouge.  Agreed?

19      A    Agreed.

20      Q    And that when we ask questions of

21  you, we're really asking questions of the City

22  of Baton Rouge.  Agreed?

23      A    Agreed.

24      Q    Do you have any questions or need any

25  clarity about your role as a representative

1    today of the City of Baton Rouge?  I know

2    there was some confusion about that  before

3    that we resolved.

4        A    It's been resolved.

5        Q    Thank you.  Between yesterday and

6    today, did you talk to anyone to prepare for

7    this deposition other than a lawyer?

8        A    No, sir.

9        Q    Did you talk to a lawyer to prepare

10   for today's deposition without telling me what

11   you discussed?

12       A    Briefly.

13       Q    Approximately, how many minutes did

14   you talk to a lawyer to prepare for today's

15   deposition?

16       A    Maybe, five minutes.

17       Q    I understand that we are going to be

18   asking some follow-up questions that you

19   previously said you'd have to research.

20   Correct?

21       A    Correct.

22       Q    Have you conducted research to be

23   able to truthfully and completely answer

24   those questions?

25       A    Yes, sir.

1    Q    Rather than, what I might do is I

2  might ask you about each question what you did

3  to figure that out, but just generally, in a

4  big picture sense, what did you do to

5  research?  Did you go back to your office and

6  look at documents?  Did you look things up on

7  the computer?  Just generally, what did you

8  do?

9    A    Yes, sir, I did both.  With the

10  assistance of my secretary, we went through

11  several documents in file cabinets and looked

12  at several things on the computer.

13    Q    Okay.  So it sounds like you talked

14  to your secretary to prepare for today's

15  deposition.

16    A    Just to assist me in finding the

17  items that I was requested to research.

18    Q    I'm not trying to trip you up.  I'm

19  just trying to see who you talked to.  Did you

20  talk to or use anyone else to look up

21  documents to prepare for today's deposition?

22    A    No, sir.

23    Q    The first question that you indicated

24  you would have to research was the following:

25  In the wake of the July 2016 protests, were

1   there any referrals or administrative reviews

2   regarding the falsification or the inclusion

3   of false information in either a probable

4   cause affidavit or arrest report of a

5   protester?  Are you prepared to answer that

6   question?

7        A    Yes, sir.

8        Q    So were there any referrals,

9   administrative reviews or other investigations

10  into the falsification or inclusion of false

11  information in probable cause affidavits from

12  the July 2016 protests?

13       A    No, sir.  I was unable to locate

14  anything.

15       Q    If there had been, it would be in the

16  places that you looked.  Agreed?

17       A    Agreed.

18       Q    So we can conclude that there were no

19  referrals or investigations or administrative

20  reviews regarding the falsification or

21  inclusion of false information in probable

22  cause affidavits or arrest reports of

23  protesters from the July 2016 protest.

24  Agreed?

25       A    Agreed.

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

1      Q    MacArthur, maybe, I'll just go

2    through all of these; and then, if you have

3    follow-up questions, you can ask them at the

4    end unless you'd like to jump in on each.

5              MR. FOLEY:

6                   No.  That sounds fine.  I will

7                   just follow-up at the end if there's

8                   anything we think we need to add.

9              MR. MOST:

10                  Okay.

11   BY MR. MOST:

12     Q    The second question is the background

13   of the second question is that back in 2019,

14   there was a report in the media and some

15   comment by Myron Daniels in respect to

16   allegations that the police officer's union

17   was making regarding an unequal application of

18   internal affairs investigations with regard to

19   white officers.  Are you generally familiar

20   with that?

21     A    I've heard.  Yes, sir.

22     Q    The second part of the background is

23   that Officer Daniels commented that that was

24   false; and in fact, there was a

25   disproportionate  number of internal affairs

1 investigations against officers of color. Are

2 you generally familiar with Officer Daniels's

3 response?

4     A     Yes, sir.

5     Q     Specifically, Officer Daniels

6 indicated that officers of color made up

7 35 percent of the force but 41 percent of all

8 investigations in 2018. Are you familiar with

9 that?

10    A     Yes, sir.

11    Q     So then, the question is given that

12 background, were there any actions taken

13 within the Internal Affairs Division to

14 address any disproportionate numbers of

15 investigations on the basis of race?

16    A     I remember Sergeant Daniels doing

17 statistics, and that was said in a commander's

18 meeting. I never witnessed it on the media,

19 but to answer your question, no.

20    Q     So, to answer the question, there

21 were no actions taken by Internal Affairs to

22 respond to that potential inequity. Agreed?

23    A     Agreed.

24    Q     The next question is whether or not

25 Internal Affairs received reports of

1    violations by Baton Rouge police officers as a

2    result of the Alton Sterling protest.  Are you

3    prepared to answer that question?

4         A    Yes, sir.

5         Q    Yesterday, we looked at one

6    accountability form in the Marcus Thompson

7    investigation.  Correct?

8         A    Correct.

9         Q    Now that you have investigated

10   further, are there any further beyond those

11   two?

12        A    No, sir.  I could not locate any

13   further.

14        Q    If there were -- I'm sorry?  If there

15   were any other reports of violations or

16   investigations, they would be in the places

17   you looked.  Correct?

18        A    Correct.

19        Q    So we can conclude that there were

20   no -- Internal Affairs had no reports of

21   violations or investigations of any

22   Baton Rouge police officers other than that

23   one accountability form we looked at in the

24   Marcus Thompson investigation.  Agreed?

25        A    Agreed.

1    Q    That might answer the next question,

2    as well.  So the next question is whether

3    Internal Affairs initiated any investigations

4    as a result of media reports of police

5    misconduct during the Baton Rouge protest

6    after Alton Sterling's killing.  Is the answer

7    to that question the same as your previous

8    one?

9    A    Yes, sir.

10    Q    So Internal Affairs did not initiate

11    any investigations other than that one

12    accountability form in the Marcus Thompson

13    investigation into any media reports of police

14    misconduct during the July 2016 protest.

15    Agreed?

16    A    Agreed.

17    Q    The next question is as a result of

18    the Alton Sterling protests, did any -- was

19    any officer from the academy asked to provide

20    an opinion to the Internal Affairs Division?

21    A    I was unable to obtain that

22    information, because several instructors

23    during that time have since left; and if they

24    were contacted, it should have been in the

25    actual Alton Sterling report.  It should have

1  been documented if an instructor was contacted

2  for their opinion.

3      Q    I want to the separate out from an

4  officer the actual killing of Alton Sterling.

5  I'm talking about specifically about the

6  protest that followed that killing.  Did you

7  look to see if any officer from the academy

8  was asked to provide an opinion to Internal

9  Affairs regarding the protests that the

10  followed the killing?

11      A    Repeat that last part again.

12      Q    Sure.  Was any officer from the

13  academy asked to provide an opinion to

14  internal affairs regarding anything related to

15  the July 2016 protests?

16      A    I couldn't verify that, sir.

17      Q    And you looked, and you couldn't find

18  it.  Correct?

19      A    Correct.

20      Q    If an academy officer was asked to

21  provide an opinion to Internal Affairs, that

22  should have been reflected in the places you

23  looked.  Agreed?

24      A    I didn't actually look at the report,

25  but it should be documented in said report.

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

1    Q    When you say the report, what report
2  are you talking about?
3              MR. SCOTT:
4                   William, I think we're not
5              matching up here.
6              MR. MOST:
7                   Perhaps.
8              MR. SCOTT:
9                   So I see, Sergeant Beard,
10             instructor opinions would be attached
11             to a particular IA report.
12             THE WITNESS:
13                  Yes, sir.
14             MR. SCOTT:
15                  Or accountability form.
16             THE WITNESS:
17                  Yes, sir.
18             MR. SCOTT:
19                  As you did not find any
20             additional protest-related
21             accountability forms or reports,
22             there were no instructor opinions to
23             be found?
24             THE WITNESS:
25                  Correct.

```
 1           MR. SCOTT:
 2                Does that --
 3           MR. MOST:
 4                I think so.
 5      BY MR. MOST:
 6           Q    From that, we can conclude, Sergeant,
 7      that Internal Affairs did not seek the opinion
 8      of anyone from the academy for anything
 9      related to the July 2016 protests.  Agreed?
10           A    Agreed.
11           MR. MOST:
12                While we're on the topic of
13                use-of-force reports -- this is a
14                question for you Joe -- it's my
15                understanding that you have looked or
16                had your PD personnel look for
17                use-of-force reports related to the
18                July 2016 protests and have found
19                none at least as regards to the East
20                and France protest.  Agreed.
21           MR. SCOTT:
22                I directed IA to check their
23                files and the training academy to
24                check their files for use-of-force
25                reports, and none were located as to
```

1          July 10th East and France.

2          MR. MOST:

3                Those are the places that they

4          would be if they existed.  Agreed?

5          MR. SCOTT:

6                Those are the places they should

7          be if they existed.

8          MR. MOST:

9                Fair enough.  I think those are

10         the questions that I had on my list.

11         Eric, do you have any follow-ups to

12         these?  I'm sorry.  Eric or Hanna.

13         MR. FOLEY:

14               Give me just one moment.  I

15         don't think I do.  I just want to

16         doublecheck.  (Brief pause.)  I'm

17         sorry.  Thanks for your patience.  No

18         further questions for us.

19         MR. MOST:

20               I'm going to pause the

21         recording.  We can go off the record.

22               (Whereupon, the deposition was

23         concluded at 10:20 a.m.)

24

25

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

1              WITNESS CERTIFICATE

2

3

4          I, SERGEANT ORSCINI BEARD, II, do

5    hereby certify that the foregoing testimony

6    was given by me, and that the transcription of

7    said testimony, with corrections and/or

8    changes, if any, is true and correct as given

9    by me on the aforementioned date.

10

11

12

13
     DATE SIGNED          SERGEANT ORSCINI BEARD, II
14

15

16

17          Signed with corrections as noted.

18

19          Signed with no corrections noted.

20

21

22

23

24

25
              SOUTHERN COURT REPORTERS, INC.
                   (504)488-1112

1               C E R T I F I C A T E

2

3          I, LORI L. MARINO, Certified Court
   Reporter, in and for the State of Louisiana,
4  as the officer before whom this testimony was
   taken, do hereby certify that SERGEANT ORSCINI
5  BEARD, II,  after having been duly sworn by me
   upon authority of R.S. 37:2554, did testify as
6  hereinbefore set forth in the foregoing 20
   pages; that this testimony was reported by me
7  in the stenotype reporting method, was
   prepared and transcribed by me or under my
8  personal direction and supervision, and is a
   true and correct transcript to the best of my
9  ability and understanding; that the transcript
   has been prepared in compliance with
10 transcript format guidelines required by
   statute or by rules of the board, that I have
11 acted in compliance with the prohibition on
   contractual relationships, as defined by
12 Louisiana Code of Civil Procedure Article 1434
   and in rules and advisory opinions of the
13 board; that I am not related to counsel or to
   the parties herein, nor am I otherwise
14 interested in the outcome of this matter.

15

16      Dated this 12th day of September, 2021.

17

18

19

20

21      LORI L. MARINO, CCR
        CCR #87069
22      STATE OF LOUISIANA

23

24

25

             SOUTHERN COURT REPORTERS, INC.
                   (504)488-1112