UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BLAIR IMANI, ET AL

      PLAINTIFFS

V.          DOCKET NO. 17-cv-00439-JWD-EWD

CITY OF BATON ROUGE, ET AL

      DEFENDANTS


Continuation of the 30 (b)(6) deposition of SERGEANT ORSCINI BEARD, II, taken on Wednesday, August 25, 2021, commencing at 10:05 a.m. via videoconferencing.


REPORTED BY:

Lori L. Marino
Certified Court Reporter
SOUTHERN COURT REPORTERS, INC.
(504)488-1112

```
1    APPEARANCES:
2
3    MOST & ASSOCIATES
     201 ST. CHARLES AVENUE, SUITE 114 # 101
4    NEW ORLEANS, LOUISIANA  70170
     TELEPHONE:  (504)  509-5023
5
     BY:  WILLIAM B. MOST, ESQ.
6    williammost@gmail.com
     REPRESENTING THE PLAINTIFFS (IMANI V. CITY OF
7    BATON ROUGE
8
9    RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER
     4400 SOUTH CARROLLTON AVENUE
10   NEW ORLEANS, LOUISIANA  70119
     TELEPHONE:  (504) 620-2259
11
     BY:  ERIC A. FOLEY, ESQ
12   eric.foley@macarthurjustice.org
13   BY:  HANNAH LOMMERS-JOHNSON
     hannah.lommersjohnson@macarthurjustice.org
14   REPRESENTING THE PLAINTIFFS (SMITH V. CITY OF
     BATON ROUGE, BATISTE-SWILLEY V. CITY OF BATON
15   ROUGE, AND TENNART V. CITY OF BATON ROUGE
16
17   OFFICE OF THE EAST BATON ROUGE PARISH ATTORNEY
     222 ST. LOUIS STREET, 9TH FLOOR
18   BATON ROUGE, LOUISIANA  70802
     TELEPHONE:  (225) 389-3400
19
     BY:  JOSEPH SCOTT, ESQ.
20   joseph@josephscott.com
     REPRESENTING CITY/PARISH OF BATON ROUGE AND
21   BATON ROUGE CITY POLICE DEPARTMENT OFFICERS
22
23
24
25
                  SOUTHERN COURT REPORTERS, INC.
                        (504)488-1112
```

```
1    APPEARANCES (CONTINUED):

2

3    BURGLASS & TANKERSLEY, LLC
     5213 AIRLINE DRIVE
4    METAIRIE, LOUISIANA  70001
     TELEPHONE:  (504) 836-0408
5
     BY:  GREGORY C. FAHRENHOLT, ESQ.
6    gfahrenholt@burglass.com
     REPRESENTING LOUISIANA STATE POLICE AND
7    INDIVIDUAL STATE POLICE TROOPERS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
                   SOUTHERN COURT REPORTERS, INC.
                        (504)488-1112
```

4

```
 1                    WITNESS INDEX
 2
     SERGEANT ORSCINI BEARD, II
 3   9000 AIRLINE HIGHWAY, SUITE 3200
     BATON ROUGE, LOUISIANA  70815
 4
 5
 6   TITLE                                1
 7   APPEARANCES                          2
 8   WITNESS INDEX                        3
 9   AGREEMENT OF COUNSEL                 4
10   EXAMINATION BY MR. MOST              5
11   WITNESS'S CERTIFICATE                20
12   REPORTER'S CERTIFICATE               21
13
14
15
16
17
18
19
20
21
22
23
24
25
```

5

1                  S T I P U L A T I O N

2

3              It is stipulated and agreed by and

4    between counsel that the deposition of

5    SERGEANT ORSCINI BEARD, II is hereby being

6    taken pursuant to the Federal Rules of Civil

7    Procedure for all purposes in accordance with

8    law;

9              That the formalities of

10   certification and filing are specifically

11   waived;

12             That the formalities of reading and

13   signing are specifically not waived.

14             That all objections, except those as

15   to the form of the question and/or

16   responsiveness of the answer, are hereby

17   reserved until such time as this deposition or

18   any part thereof may be used in evidence.

19

20             *   *   *   *   *   *   *   *

21             LORI L. MARINO, Certified Court

22   Reporter, in and for the State of Louisiana,

23   officiated in administering the oath to the

24   witness.

25

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

```
 1                      PROCEEDINGS
 2      THE COURT REPORTER:
 3              Will counsel, please, identify
 4          themselves and their representations,
 5          and also stipulate that by agreement
 6          of all parties, this deposition is
 7          being held via videoconferencing, and
 8          there is no objection to the witness
 9          being sworn in remotely.
10      MR. MOST:
11              This is William Most on behalf
12          of the Imani plaintiffs.  We so
13          stipulate and agree; and also, Greg
14          Fahrenholt for the State Police by
15          email said he's running late, but he
16          agrees with the stipulations.
17      MR. FOLEY:
18              This is Eric Foley and Hannah
19          Lommers-Johnson for the plaintiffs in
20          the Tennart v. City of Baton Rouge,
21          Smith v. City of Baton Rouge and
22          Batiste-Swilley v. City of Baton
23          Rouge, plaintiffs, and yes, we agree
24          to those stipulations.
25      MR. SCOTT:
```

```
 1              Joseph Scott for the City of
 2          Baton Rouge, Parish of East Baton
 3          Rouge, assorted officials, Baton
 4          Rouge Police Department and 183
 5          individual officers.  We'll accept
 6          that stipulation.
 7                   EXAMINATION
 8   BY MR. MOST:
 9      Q    I'm going to put into the chat
10   Sergeant Beard's full name and spelling.
11      A    It's Orscini, O-R-S-C-I-N-I, Beard,
12   B-E-A-R-D, II.
13      Q    Good morning, Sergeant Beard.  Can
14   you hear me all right?
15      A    Yes.  Good morning.
16      Q    Thank you for coming back to talk to
17   us today.  Sergeant Beard, you understand we
18   are currently continuing the 30(b)(6)
19   deposition in which we deposed you yesterday?
20      A    Yes, sir.
21      Q    So you understand today as yesterday
22   and as before, you are under oath and your
23   answers have the same force as if we're in a
24   courtroom with a judge or jury?
25      A    Yes, sir.
```

1    Q    Is there anything today, whether
2    illness, migraine, fatigue, medication or
3    substance that will prevent you from giving us
4    your full attention and truthful and complete
5    answers?
6    A    No, sir.
7    Q    Just as before, if you don't
8    understand my questions or they're not clear,
9    will you agree to tell me that that's the case
10   rather than try to answer them anyway?
11   A    Yes, sir.
12   Q    You understand that today, like
13   before, you are here designated to speak on
14   behalf of the City of Baton Rouge?
15   A    Yes, sir.
16   Q    You understand that your answers that
17   you give are the testimony of the City of
18   Baton Rouge.  Agreed?
19   A    Agreed.
20   Q    And that when we ask questions of
21   you, we're really asking questions of the City
22   of Baton Rouge.  Agreed?
23   A    Agreed.
24   Q    Do you have any questions or need any
25   clarity about your role as a representative

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

1    today of the City of Baton Rouge?  I know

2    there was some confusion about that  before

3    that we resolved.

4         A    It's been resolved.

5         Q    Thank you.  Between yesterday and

6    today, did you talk to anyone to prepare for

7    this deposition other than a lawyer?

8         A    No, sir.

9         Q    Did you talk to a lawyer to prepare

10   for today's deposition without telling me what

11   you discussed?

12        A    Briefly.

13        Q    Approximately, how many minutes did

14   you talk to a lawyer to prepare for today's

15   deposition?

16        A    Maybe, five minutes.

17        Q    I understand that we are going to be

18   asking some follow-up questions that you

19   previously said you'd have to research.

20   Correct?

21        A    Correct.

22        Q    Have you conducted research to be

23   able to truthfully and completely answer

24   those questions?

25        A    Yes, sir.

1       Q    Rather than, what I might do is I

2  might ask you about each question what you did

3  to figure that out, but just generally, in a

4  big picture sense, what did you do to

5  research?  Did you go back to your office and

6  look at documents?  Did you look things up on

7  the computer?  Just generally, what did you

8  do?

9       A    Yes, sir, I did both.  With the

10  assistance of my secretary, we went through

11  several documents in file cabinets and looked

12  at several things on the computer.

13      Q    Okay.  So it sounds like you talked

14  to your secretary to prepare for today's

15  deposition.

16      A    Just to assist me in finding the

17  items that I was requested to research.

18      Q    I'm not trying to trip you up.  I'm

19  just trying to see who you talked to.  Did you

20  talk to or use anyone else to look up

21  documents to prepare for today's deposition?

22      A    No, sir.

23      Q    The first question that you indicated

24  you would have to research was the following:

25  In the wake of the July 2016 protests, were

1    there any referrals or administrative reviews

2    regarding the falsification or the inclusion

3    of false information in either a probable

4    cause affidavit or arrest report of a

5    protester?  Are you prepared to answer that

6    question?

7         A    Yes, sir.

8         Q    So were there any referrals,

9    administrative reviews or other investigations

10   into the falsification or inclusion of false

11   information in probable cause affidavits from

12   the July 2016 protests?

13        A    No, sir.  I was unable to locate

14   anything.

15        Q    If there had been, it would be in the

16   places that you looked.  Agreed?

17        A    Agreed.

18        Q    So we can conclude that there were no

19   referrals or investigations or administrative

20   reviews regarding the falsification or

21   inclusion of false information in probable

22   cause affidavits or arrest reports of

23   protesters from the July 2016 protest.

24   Agreed?

25        A    Agreed.

1     Q    MacArthur, maybe, I'll just go

2   through all of these; and then, if you have

3   follow-up questions, you can ask them at the

4   end unless you'd like to jump in on each.

5           MR. FOLEY:

6               No.  That sounds fine.  I will

7               just follow-up at the end if there's

8               anything we think we need to add.

9           MR. MOST:

10              Okay.

11  BY MR. MOST:

12    Q    The second question is the background

13  of the second question is that back in 2019,

14  there was a report in the media and some

15  comment by Myron Daniels in respect to

16  allegations that the police officer's union

17  was making regarding an unequal application of

18  internal affairs investigations with regard to

19  white officers.  Are you generally familiar

20  with that?

21    A    I've heard.  Yes, sir.

22    Q    The second part of the background is

23  that Officer Daniels commented that that was

24  false; and in fact, there was a

25  disproportionate  number of internal affairs

1    investigations against officers of color.  Are

2    you generally familiar with Officer Daniels's

3    response?

4         A    Yes, sir.

5         Q    Specifically, Officer Daniels

6    indicated that officers of color made up

7    35 percent of the force but 41 percent of all

8    investigations in 2018.  Are you familiar with

9    that?

10        A    Yes, sir.

11        Q    So then, the question is given that

12   background, were there any actions taken

13   within the Internal Affairs Division to

14   address any disproportionate numbers of

15   investigations on the basis of race?

16        A    I remember Sergeant Daniels doing

17   statistics, and that was said in a commander's

18   meeting.  I never witnessed it on the media,

19   but to answer your question, no.

20        Q    So, to answer the question, there

21   were no actions taken by Internal Affairs to

22   respond to that potential inequity.  Agreed?

23        A    Agreed.

24        Q    The next question is whether or not

25   Internal Affairs received reports of

1    violations by Baton Rouge police officers as a
2    result of the Alton Sterling protest.  Are you
3    prepared to answer that question?
4         A    Yes, sir.
5         Q    Yesterday, we looked at one
6    accountability form in the Marcus Thompson
7    investigation.  Correct?
8         A    Correct.
9         Q    Now that you have investigated
10   further, are there any further beyond those
11   two?
12        A    No, sir.  I could not locate any
13   further.
14        Q    If there were -- I'm sorry?  If there
15   were any other reports of violations or
16   investigations, they would be in the places
17   you looked.  Correct?
18        A    Correct.
19        Q    So we can conclude that there were
20   no -- Internal Affairs had no reports of
21   violations or investigations of any
22   Baton Rouge police officers other than that
23   one accountability form we looked at in the
24   Marcus Thompson investigation.  Agreed?
25        A    Agreed.

                SOUTHERN COURT REPORTERS, INC.
                        (504)488-1112

1    Q    That might answer the next question,

2  as well.  So the next question is whether

3  Internal Affairs initiated any investigations

4  as a result of media reports of police

5  misconduct during the Baton Rouge protest

6  after Alton Sterling's killing.  Is the answer

7  to that question the same as your previous

8  one?

9    A    Yes, sir.

10    Q    So Internal Affairs did not initiate

11  any investigations other than that one

12  accountability form in the Marcus Thompson

13  investigation into any media reports of police

14  misconduct during the July 2016 protest.

15  Agreed?

16    A    Agreed.

17    Q    The next question is as a result of

18  the Alton Sterling protests, did any -- was

19  any officer from the academy asked to provide

20  an opinion to the Internal Affairs Division?

21    A    I was unable to obtain that

22  information, because several instructors

23  during that time have since left; and if they

24  were contacted, it should have been in the

25  actual Alton Sterling report.  It should have

SOUTHERN COURT REPORTERS, INC.
(504)488-1112

```
1    been documented if an instructor was contacted
2    for their opinion.
3         Q    I want to the separate out from an
4    officer the actual killing of Alton Sterling.
5    I'm talking about specifically about the
6    protest that followed that killing.  Did you
7    look to see if any officer from the academy
8    was asked to provide an opinion to Internal
9    Affairs regarding the protests that the
10   followed the killing?
11        A    Repeat that last part again.
12        Q    Sure.  Was any officer from the
13   academy asked to provide an opinion to
14   internal affairs regarding anything related to
15   the July 2016 protests?
16        A    I couldn't verify that, sir.
17        Q    And you looked, and you couldn't find
18   it.  Correct?
19        A    Correct.
20        Q    If an academy officer was asked to
21   provide an opinion to Internal Affairs, that
22   should have been reflected in the places you
23   looked.  Agreed?
24        A    I didn't actually look at the report,
25   but it should be documented in said report.
```

```
1        Q    When you say the report, what report
2   are you talking about?
3            MR. SCOTT:
4                 William, I think we're not
5            matching up here.
6            MR. MOST:
7                 Perhaps.
8            MR. SCOTT:
9                 So I see, Sergeant Beard,
10           instructor opinions would be attached
11           to a particular IA report.
12           THE WITNESS:
13                Yes, sir.
14           MR. SCOTT:
15                Or accountability form.
16           THE WITNESS:
17                Yes, sir.
18           MR. SCOTT:
19                As you did not find any
20           additional protest-related
21           accountability forms or reports,
22           there were no instructor opinions to
23           be found?
24           THE WITNESS:
25                Correct.
```

```
 1            MR. SCOTT:
 2                 Does that --
 3            MR. MOST:
 4                 I think so.
 5    BY MR. MOST:
 6        Q    From that, we can conclude, Sergeant,
 7    that Internal Affairs did not seek the opinion
 8    of anyone from the academy for anything
 9    related to the July 2016 protests.  Agreed?
10        A    Agreed.
11            MR. MOST:
12                 While we're on the topic of
13                 use-of-force reports -- this is a
14                 question for you Joe -- it's my
15                 understanding that you have looked or
16                 had your PD personnel look for
17                 use-of-force reports related to the
18                 July 2016 protests and have found
19                 none at least as regards to the East
20                 and France protest.  Agreed.
21            MR. SCOTT:
22                 I directed IA to check their
23                 files and the training academy to
24                 check their files for use-of-force
25                 reports, and none were located as to
```

1          July 10th East and France.

2     MR. MOST:

3          Those are the places that they

4     would be if they existed.  Agreed?

5     MR. SCOTT:

6          Those are the places they should

7     be if they existed.

8     MR. MOST:

9          Fair enough.  I think those are

10    the questions that I had on my list.

11    Eric, do you have any follow-ups to

12    these?  I'm sorry.  Eric or Hanna.

13    MR. FOLEY:

14         Give me just one moment.  I

15    don't think I do.  I just want to

16    doublecheck.  (Brief pause.)  I'm

17    sorry.  Thanks for your patience.  No

18    further questions for us.

19    MR. MOST:

20         I'm going to pause the

21    recording.  We can go off the record.

22         (Whereupon, the deposition was

23    concluded at 10:20 a.m.)

24

25

              SOUTHERN COURT REPORTERS, INC.
                    (504)488-1112

20

```
 1              WITNESS CERTIFICATE

 2

 3

 4         I, SERGEANT ORSCINI BEARD, II, do

 5   hereby certify that the foregoing testimony

 6   was given by me, and that the transcription of

 7   said testimony, with corrections and/or

 8   changes, if any, is true and correct as given

 9   by me on the aforementioned date.

10

11

12

13
     DATE SIGNED          SERGEANT ORSCINI BEARD, II
14

15

16

17         Signed with corrections as noted.

18

19         Signed with no corrections noted.

20

21

22

23

24

25
              SOUTHERN COURT REPORTERS, INC.
                    (504)488-1112
```

21

1          C E R T I F I C A T E

2

3          I, LORI L. MARINO, Certified Court
Reporter, in and for the State of Louisiana,
4    as the officer before whom this testimony was
taken, do hereby certify that SERGEANT ORSCINI
5    BEARD, II,  after having been duly sworn by me
upon authority of R.S. 37:2554, did testify as
6    hereinbefore set forth in the foregoing 20
pages; that this testimony was reported by me
7    in the stenotype reporting method, was
prepared and transcribed by me or under my
8    personal direction and supervision, and is a
true and correct transcript to the best of my
9    ability and understanding; that the transcript
has been prepared in compliance with
10    transcript format guidelines required by
statute or by rules of the board, that I have
11    acted in compliance with the prohibition on
contractual relationships, as defined by
12    Louisiana Code of Civil Procedure Article 1434
and in rules and advisory opinions of the
13    board; that I am not related to counsel or to
the parties herein, nor am I otherwise
14    interested in the outcome of this matter.

15

16          Dated this 12th day of September, 2021.

17

18

19

20

21          LORI L. MARINO, CCR
CCR #87069
22          STATE OF LOUISIANA

23

24

25

                    SOUTHERN COURT REPORTERS, INC.
                          (504)488-1112