IAD:
DATE:

## INVESTIGATIVE SUMMARY

**Synopsis:**

On 7-13-16, I/O was assigned a case relative to Ofc. Marcus Thompson possibly violating General Order; 2:12 Conduct Unbecoming an Officer. The complaint was brought to the attention of the Internal Affairs Division by an email sent from Capt.

Capt.       wrote that he was informed that during PPT processing at BRPD headquarters, Cpl.       and Cpl.       overheard Ofc. Marcus Thompson telling arrestees that B.R.P.D. police officers are violating their civil rights and how "fucked up" that is. It was reported that Ofc. Thompson's comments influenced one docile arrestee to become hostile.

I/O contacted Cpl.    and Cpl.       supervisor, Sgt.       who advised that Cpl.    and Cpl.       overheard Ofc. Thompson's comments and told Cpl.       what they heard. Sgt.       stated that he would advise all of his officers that were involved to write letters detailing what they heard.

Cpl.       wrote that on 7-10-16, he was approached by Cpl.       who advised that Ofc. Marcus Thompson made some comments while in the prisoner processing area at Headquarters. Cpl.    told Cpl.       that an arrestee, who was being verbally and physically compliant, asked Ofc. Thompson what he was being charged with. Instead of simply answering the arrestee's question, Ofc. Thompson told the arrestee that he was being charged for obstruction of the roadway and that "we" meaning the B.R.P.D., were violating peoples' rights, wrongfully arresting them and that the protestors

Page - 2

IAD:
DATE:

had a right to retreat to the median without the fear of being arrested. Cpl.   further told Cpl.   that the arrestee became verbally belligerent but remained physically compliant. Cpl.   wrote that Ofc. Thompson's comments had the potential to compromise officer safety. Cpl.   further stated that he notified Sgt.   of the incident in hope to prevent such statements from being made in front of arrestees that could incite violence against officers or behavior that would require officers to use force to defend themselves.

Cpl.   and Ofc.   wrote identical letters detailing the incident. They wrote that on 7-10-16 at approximately 1900 hours, they were assigned to process prisoners during ongoing protest outside of police headquarters. While standing by for orders, an unknown officer brought an arrestee into the PPT area. The arrestee sat next to Ofc. Marcus Thompson and began to question the motives and legality of the arrest that officers were making. Ofc.   and Cpl.   overheard Ofc. Thompson telling the arrestee that no one could violate the law of Obstruction of Passage since the police had the roadways obstructed and people were moving out of the roadway when ordered. Ofc. Thompson further told the arrestee that he has read the law several times and "We", the B.R.P.D., were violating peoples' rights and were wrong. Ofc.   and Cpl.   stated that the arrestee thanked Ofc. Thompson by calling him his "brother". The once peaceful arrestee then became unruly and uncooperative, thinking that his rights were being violated due to Ofc. Thompson's statements. Cpl.   and Ofc.   then notified their chain of command. Ofc. Thompson was

IAD:
DATE:

removed from the area.

**Officer's Rights:**

On 07-29-16, at approximately 0900 hours, Ofc. Marcus Thompson reported to the Internal Affairs office to give a recorded statement. Ofc. Thompson brought Sgt.                    as his representation. Ofc. Thompson read the Officer's Rights Form, stated that he understood his Garrity Rights and signed the rights form.

Below is a summary of Ofc. Thompson's statement. For exact wording and content, a recording of the interview is included in this case file.

**Ofc. Marcus Thompson's Statement:**

Ofc. Thompson stated that on 07-10-16 at approximately 0900 hours, he was assigned to the PPT area at Headquarters. He stated that his duties were to complete RAP sheets and PC's as other officers brought in arrestees.

-I/O asked Ofc. Thompson if he had any conversations with any arrestees that were brought into PPT. Ofc. Thompson stated, "No sir I didn't. I mean I asked them questions and things job related but that's it."

-I/O asked Ofc. Thompson if any of the arrestees asked him any questions pertaining to the legality of their arrest. Ofc. Thompson stated, "Yes they had."

IAD:
DATE:

-I/O asked Ofc. Thompson to describe what was asked of him. Ofc. Thompson stated that the arrestees were asking what they were being charged for. Ofc. Thompson stated that most were being charged for obstruction of a highway due to protesting in the streets.

-I/O asked Ofc. Thompson if he provided any advice to the arrestees or made comments such as their rights being violated. Ofc. Thompson stated that he did make a comment. He stated that he heard an unknown police officer on the radio advise another officer to arrest a subject holding a sign that was standing in the median. Ofc. Thompson stated that soon after, an officer brought that subject into PPT. Ofc. Thompson stated that he asked the officer what charges did he have on the subject and the officer replied that he was being arrested for simple obstruction of a highway. Ofc. Thompson asked the officer how standing in the median fits the ordinance of obstruction of a highway. Ofc. Thompson stated that the officer told him that if the subject walked to the median, it's simple obstruction of a highway. Ofc. Thompson stated that he told the officer that it's simple obstruction if the subject stops the flow of traffic. Ofc. Thompson stated that we come across many homeless people holding signs and standing in the median but they are not arrested.

-I/O asked Ofc. Thompson what officer was he talking to. Ofc. Thompson stated that one of the officers was Ofc. and is not sure who the other officer was.

-I/O asked Ofc. Thompson if he thought that the subject was

IAD:
DATE:

wrongfully arrested. Ofc. Thompson stated, "If from what the officers were telling me, I think yes."

-I/O asked Ofc. Thompson if his opinion or disagreement with the arrest would have prevented him from backing a fellow officer if the arrestee would have become hostile. Ofc. Thompson stated, "Yes, I'm going to always back the officers. Yes, officer safety first. I want every officer to go home to their family. I love what I do. I'm just not in agreement with violation peoples' rights. I believe in doing right for right. I didn't join the job to do wrong for wrong."

-I/O asked Ofc. Thompson what was the arrestee's demeanor when he came into the PPT area. Ofc. Thompson stated, "Calm. He stayed quiet the whole time. He told us to go ahead and proceed forward, whatever you gonna arrest him with so he could make his bond and get back out."

-I/O asked Ofc. Thompson what was the arrestee's demeanor after he spoke with him about his arrest. Ofc. Thompson stated, "Still the same way, calm. Never got outraged or out of control or anything. He stayed sitting down on the seat while sitting up against the wooden bar against the window."

-I/O asked Ofc. Thompson if the arrestee ever became unruly or uncooperative. Ofc. Thompson stated, "Never. We did have one but it wasn't him. It was way like before him. He was quiet, cooperative, did everything that we asked him to do."

IAD:
DATE:

-I/O asked Ofc. Thompson if he made the comment that we, the BRPD, were violating people's rights. Ofc. Thompson stated, "I made the comment to the officers that if you all are arresting him for that charge, you will be considered as violating that guy's rights."

-I/O asked Ofc. Thompson if he brought the issue to anyone's attention such as his supervisor. Ofc. Thompson stated, "My supervisor at the time I don't believe was in there."

-I/O asked Ofc. Thompson if he told the supervisor that was over the PPT area. Ofc. Thompson stated, "No, sir. It was just a discussion amongst officers. I felt like there was no need to. Our voices never got hostile where officer were about to get into it or anything. It was just a normal conversation. Well I felt it was."

-I/O asked Ofc. Thompson if he thinks that the conversation could have created a potential hazard concerning officer safety. Ofc. Thompson stated, "No. I don't feel like it could have because if the guy was being hostile then that will be something different."

-I/O advised Ofc. Thompson that the reason I/O asked this question is due to two officers saying that the arrestee became unruly and uncooperative after Ofc. Thompson spoke to the arrestee. Ofc. Thompson stated, "No, sir. He never became unruly."

-I/O asked Ofc. Thompson if he thinks that notifying his supervisor would have been a more appropriate and professional way to address

IAD:
DATE:

the issue rather than speaking to the arrestee. Ofc. Thompson stated, "Well to be honest, my opinions when me and the officer were just talking, I never made a comment to the arrestee. It was just an officers' conversation. And then another officer jumped in and that was it. Well not jumped in but intervened stating that they had every right to arrest the guy for Simple Obstruction of a Highway." Ofc. Thompson added that he was not sure of the officer's name that he was speaking to but the officer that joined in the conversation was Ofc.

-I/O asked Ofc. Thompson what did Ofc. ⎯⎯ tell him. Ofc. Thompson stated, "Basically that you can arrest somebody for walking in the roadway into the median."

-I/O asked Sgt. ⎯⎯ if he had any questions for Ofc. Thompson.

-Sgt. ⎯⎯ asked Ofc. Thompson how long has he been in Law Enforcement. Ofc. Thompson stated, "A total of eight years."

-Sgt. ⎯⎯ asked Ofc. Thompson how long he has been with the department. Ofc. Thompson stated, "Three and a half years."

-Sgt. ⎯⎯ asked Ofc. Thompson how many prisoners were in the PPT area when the discussion took place. Ofc. Thompson stated, "Just the one."

IAD:
DATE:

-Sgt.          asked Ofc. Thompson what the charge was. Ofc. Thompson stated, "Simple Obstruction of a Highway."

-Sgt.          then read LRS 14:97 Simple Obstruction of a Highway and stated that he is in agreement with Ofc. Thompson. Sgt.          stated that he does not think that simply crossing the street to get to the neutral ground fits the statue.

-Sgt.          asked Ofc. Thompson if he saw an officer doing something wrong, would he feel obligated to bring it to his attention. Ofc. Thompson stated, "Yes. I'm supposed to because we all can get in trouble for it but I'm not going to go to Internal Affairs for anyone doing wrong doing. I'm going to correct that officer. If he continue to do it than I'm gonna go to his supervisor and advised his supervisor of what's going on."

-Sgt.          asked Ofc. Thompson if this discussion stopped him from doing his job in any way. Ofc. Thompson stated, "No, sir."

-Sgt.          asked Ofc. Thompson if the conversation was directed to the officers and not the arrestee. Ofc. Thompson stated, "Yes".

-Sgt.          confirmed with Ofc. Thompson that he did not direct his comments towards the prisoner to enflame or enrage the prisoner but directed the comments towards the officers. Ofc. Thompson stated, "Yes, sir."

Page - 9

IAD:
DATE:

-Sgt.          asked Ofc. Thompson if he is familiar with the policy Conduct Unbecoming an Officer. Ofc. Thompson stated, "*No*". Sgt.          then read the policy to Ofc. Thompson.

-Sgt.          asked Ofc. Thompson if he thinks that he was setting a good example when asking another officer to confirm that he was charging someone with the correct charge. Ofc. Thompson stated, "*Yes, sir.*"

-Sgt.          asked Ofc. Thompson if he thinks that the fact that he had a discussion with an officer, even though it was a difference of opinion, brought dishonor or disgrace to the Baton Rouge Police Department. Ofc. Thompson stated, "*No sir, I don't think so.*"

-Sgt.          added that he does not think so either and based off of everything that was talked about, he does not think there is a violation of departmental policy even though there was a difference of opinion.

-Sgt.          noted that the complaint letters mentioned that after Ofc. Thompson made his comments that the arrestee thanked "his brother". Sgt.          asked Ofc. Thompson what was his interpretation of the arrestee calling him "brother". Ofc. Thompson stated, "*Just thinking that he basically stating that… I guess that he appreciates an officer being his color maybe taking his side I believe. Possibly in that way. But when I grew up, friends… We all called each other brother, teammates and all that.*"

Page - 10

IAD:
DATE:

-Sgt.         then stated that he does not think that it meets the standard of Conduct Unbecoming and also ask on the record that in completion of the investigation, if no policy violation is found, that it be categorized as exonerated and rather than not sustained.

**Conclusion:**

The following is a list of documents pertaining to the investigation which are attached:
1) Recorded Statements.
2) Officer's Rights Form.
3) General Order's pertaining to listed complaint.
4) Complaint letter from Cpl.
5) Complaint letter from Cpl.
6) Complaint letter from. Ofc.
7) Email from Capt.

# Officer's Rights Form

Date: _____7-29-16_____

IA File # _____045-16_____

You are now being questioned as part of an official investigation by the Baton Rouge Police Department Internal Affairs Division pertaining to a complaint of _Conduct Unbecoming an Officer_ which may be a violation of subsection(s) __2:12__ of the Disciplinary Articles contained in General Order No. 112, Section XII. You will be asked questions directly related to the performance of your official duties or fitness for office.

You are hereby given a direct order to answer all questions relating to the performance of your official duties or fitness for office. You are required by General Order No. 112, Section VII(B) (1), (2), and (3) to answer all questions truthfully. If you refuse to comply with this order to answer questions relating to the performance of your official duties or fitness for office you may be subject to disciplinary action which could include termination of your employment with the Baton Rouge Police Department.

No information, statements or any evidence which is gained by reason of such statements can be used against you in a subsequent criminal proceeding, however such statements and evidence may be used against you in administrative Departmental proceedings that are for disciplinary purposes only. *Garrity v. New Jersey, 385 U.S. 493 (1967)*

_____[signature]_____
Signature of Officer

___Marcus Thompson P10462___
Printed Name of Officer

___C.p.J.___
I.A. Investigator

# BATON ROUGE POLICE DEPARTMENT

 

*Received forward to IA
7-26-16 UPB*

**Officer Taylor DeRousselle**
**Second District**
2265 Highland Rd
Baton Rouge, Louisiana 70802
Phone: 225-389-7644

Date: July 23, 2016
To: Sgt.
From: Ofc
Subject: M. Thompson

On July 23, 2016 I, Ofc            , was given a direct order by Sgt.         to provide a written letter of an incident that occurred with Officer M. Thompson on July 10, 2016 around 1900 hrs.

On July 10, 2016 at about 1900 hrs I, along with several of my squad members, were assigned to Prisoner Processing during the ongoing protest outside of police headquarters. Upon arrival to the PPT area in the Training Academy, officers were standing by for orders when an unknown officer transported an arrestee into the PPT area. As the arrestee sat near Officer Thompson, he began questioning the motives and legality of the arrest that officers were performing.

Officer Thompson began to state that no one could violate the law of Obstruction of Passage since police had the roadways obstructed, and the people were moving out of the roadway when ordered. Officer Thompson began to state that "we" were violating people's rights, stating he read the law numerous times, and we were wrong. At this point, I advised Thompson that the law was being broken by the arrestee and his rights were not violated. Thompson began to make several mumbled statements, insinuating that "we" were racist.

During this entire event, Thompson was making these statements in front of a person who was just taken into custody. The arrestee began to thank "his brother", and Thompson and the arrestee began to play off of each other. The arrestee started to become unruly and uncooperative, thinking his rights were being violated, due to Thompson's statements. Officer notes that the arrestee was peaceful and respectful prior to Thompson making these statements.

At this point, due to the obvious safety concerns (especially with 30+ arrestees were enroute) I notified my chain of command of the incident. Upon returning, Thompson was removed from the area.

7-26-16 UPB

## POLICE DEPARTMENT
## CITY OF BATON ROUGE

### INTERDEPARTMENTAL CORRESPONDENCE

DATE:     7/23/2016

TO:       Sgt

FROM:     Cpl

SUBJECT:  Officer Safety in Prisoner Processing

On 07/23/16 at 0300 hrs, I Cpl _____, was instructed to write a letter concerning an incident that occurred in the prisoner processing area on 7/10/16. Lt. _____'s squad was assigned to Headquarters, specifically the prisoner processing area. At the time we took over there was one arrestee present in the area along with Cpl _____ and several other officers. After about 15 minutes in the processing area, our squad was reassigned to block an intersection downtown. Cpl _____ approached me and advised me of some comments that were made by Officer Marcus Thompson. Cpl _____ advised that the arrestee, who was being both verbally and physically compliant, asked Officer M. Thompson, what he was being charged with. Cpl _____ advised that instead of simply answering the question Officer Thompson explained to the arrestee that he was being charged with obstruction of the roadway, but that " we" referring to BRPD and other agencies, were violating peoples rights, wrongfully arresting them, and that the protesters had a right to retreat to the median without fear of arrest. The arrestee then became verbally belligerent, but did remain physically compliant. I note again that he was the only arrestee in the area at the time.

While Officer Thompson has the right to his opinion, stating such opinions, to an arrestee has the potential to compromise officer safety. Given the fact that there had been up to twenty arrestees in the processing area at one time, with hundreds of total arrests made, were those statements made within earshot of multiple arrestees, officers might have been required to use force to defend themselves or to keep arrestees under control. This would create an unnecessary liability for the department. I state this based on the behavior of the one arrestee, who without having support in numbers from fellow protestors became belligerent.

Once we arrived at our new assignment I notified Sgt. _____ of the incident. I did so in hopes to prevent statements being made in front of arrestees that could incite violence against officers, or behavior that would require force on the officer's part. It is my understanding that Officer Thompson was reassigned to EOC away from prisoner processing.

I did not hear the comments themselves being made, but just relayed the incident to Sgt _____, as told to me by Cpl _____

Cpl

Rec'd & Forward to IA
- 16 UPB

# BATON ROUGE POLICE DEPARTMENT



**Officer Jordon Lear**
**Second District**
2265 Highland Rd
Baton Rouge, Louisiana 70802
Phone: 225-389-7644



Nationally
Accredited

Date: July 23, 2016
To: Sgt.
From: Cpl.
Subject: M. Thompson

On July 23, 2016 I, Cpl.           , was given a direct order by Sgt.           to provide a written letter of an incident that occurred with Officer M. Thompson on July 10, 2016 around 1900 hrs

On July 10, 2016 at about 1900 hrs I, along with several of my squad members, were assigned to Prisoner Processing during the ongoing protest outside of police headquarters. Upon our arrival to the PPT area (Training academy area) we were standing by for our orders when an unknown officer transported an arrestee into the PPT area. As the arrestee sat approx. 2 feet from Officer Thompson he began questioning the motives and legality of the arrest that officers were performing. Officer Thompson began to state that no one could violate the law (obstruction of a passage) since police had the roadways obstructed, and the people were moving out of the roadway when ordered. Officer Thompson began to state that "we" were just violating people, stating he read the law numerous times, and we were wrong.   At this point, I advised Thompson that it was my opinion the police were behaving properly.   At this point Thompson made several mumbled statements, insinuating that "we" were racist.

During this entire event, Thompson was making these statements in front of a person who was just taken into custody.  The arrestee began to thank "his brother", and Thompson and the arrestee began to play off of each other.  It shall be noted that the arrestee was peaceful and respectful prior to Thompson making these statements.

At this point, due to the obvious safety concerns (especially with 30+ arrestees were enroute) I notified my chain of command of the incident.  Upon returning. Thompson was already gone from the area.

7/23/16

RECEIVED
JUL 25 2016
UNIFORM PATROL

**BATON ROUGE POLICE DEPARTMENT**

General Order
No. 112

Effective Date
10-15-1997

Revised Date
11-02-2009

Subject:   Discipline

**2:6   Failure to Report Lost or Damaged Equipment**

No member shall fail to notify the Department, in writing, when assigned equipment is lost or damaged. (ref. General Order 206)

**2:7   Damaging Departmental Equipment**

No member of the Department shall willfully or through neglect or failure to act, abuse, damage, lose or cause to be spoiled or wrongfully dispose of any property or equipment of the Department.

**2:7.1**   Departmental equipment is to be used only in the manner for which it was designed, consistent with a member's training.

**2:7.2**   Members are responsible for all issued equipment and shall be expected to present any part or all for inspection.

**2:7.3**   Members who are issued vehicles shall be responsible for the cleanliness and preventative maintenance of the vehicle, as required. No member shall make unauthorized repairs or adjustments to the vehicle

**2:8   Traffic Violations**

Any member receiving a moving traffic citation, whether on or off duty, must report the incident to the Chief of Police in writing within 5 days of receipt of the citation.

**2.8.1**   Any member convicted of a moving traffic violation excluding DWI, H&R Driving and/or Reckless Operation as defined by the Louisiana Revised Statutes shall be subject to additional disciplinary action, including termination, whether the offense occurred on or off duty.

**2:9   License Suspension**

Any member whose driver's license has been suspended or revoked by the Department of Public Safety will immediately report this to his commanding officer. If the suspension is for other than regulatory reasons, the employee will be subject to disciplinary action. Until the member's license is reinstated, he shall not drive departmental vehicles and may be reassigned to administrative duties.

**2:10   Conduct Unbecoming an Officer**

Every member of the Department, whether on or off duty, in an official or unofficial capacity, must conduct himself at all times in such a manner as to set a good example for all others with whom he may come in contact. He shall in no way, through actions or neglect, bring dishonor or disgrace upon himself or the Baton Rouge Police Department.

15

Jacques Angelloz

**From:**
**Sent:** Wednesday, July 13, 2016 12:22 PM
**To:**
**Subject:** FW: Test

From
Sent: Tuesday, July 12, 2016 4:17 PM
To:
Subject: FW: Test

From
Sent: Monday, July 11, 2016 8:35 AM
To:
Subject: Re: Test

FYI.
While           were in PPT at HQ, BRPD officer Marcus Thompson was telling the X15's that BRPD police officers are violating there civil rights. And how fucked up that is.
stated we had one docile 10-15 turn into an ass when Marcus said that.
I don't know who Marcus is but maybe you can get this to his supervisor

**Baton Rouge City Police Department**

9000 Airline Highway
Baton Rouge, Louisiana 70815

Office:
Email:

On Jul 11, 2016, at 08:3                                         wrote:

*Sent from my Verizon Wireless 4G LTE DROID*

1