UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BLAIR IMANI, et al

　　　　Plaintiffs

V.　　　　　　　　　　Docket No. 17-cv-00439-JWD-EWD


CITY OF BATON ROUGE, et al

　　　　Defendants



　　　30(b)(6)DEPOSITION OF THE CITY OF
BATON ROUGE, through its designated
representative, SERGEANT ORSCINI BEARD, II,
given via Zoom Videoconferencing in the
above-entitled cause, pursuant to the following
stipulation, before Raynel E. Schule, Certified
Shorthand Reporter in and for the State of
Louisiana, commencing at 9:00 o'clock a.m., on
Thursday, the 19th day of August, 2021.

1                    EXAMINATION INDEX

2                                          Page

3    Caption                               1
     Appearances                           3
4    Agreement of Counsel                  5

5         EXAMINATION OF ORSCINI BEARD, II

6

7         MR. MOST                         7

     Reporter's Certificate               23
8

9                    EXHIBIT INDEX

10        EXHIBIT H                        20

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    APPEARANCES (Via Videoconferencing):
 2
      For the Plaintiffs (Imani v. City of Baton
 3        Rouge):
 4    LAW OFFICES OF WILLIAM MOST
      Attorneys at Law
 5    BY:  WILLIAM MOST, ESQ.
      201 St. Charles Avenue, Suite 114#101
 6    New Orleans, Louisiana   70170
      Email:  williammost@gmail.com
 7
      And
 8
      JOHN ADCOCK, ESQ.
 9    Attorney at Law
      P.O. Box 750621
10    New Orleans, Louisiana   70175
      Email: jnadcock@gmail.com
11
12    For the Plaintiffs (Smith v. City of Baton
          Rouge, Batiste-Swilley v. City of Baton
13        Rouge, and Tennart v. City of Baton
          Rouge):
14
      RODERICK AND SOLANGE MacARTHUR JUSTICE CENTER
15    Attorneys at Law
      BY:  JIM CRAIG, ESQ.
16        MANDISA MOORE-ONEAL, ESQ.
          HANNAH LOMMERS-JOHNSON, ESQ.
17    4400 S. Carrollton Avenue
      New Orleans, Louisiana   70119
18    Email: jim.craig@macarthurjustice.org
19
      For City/Parish of Baton Rouge and Baton Rouge
20        City Police Department Officers:
21    OFFICE OF THE EAST BATON ROUGE PARISH ATTORNEY
      Attorneys at Law
22    BY:  JOSEPH SCOTT, ESQ.
          SARAH S. MONSOUR, ESQ.
23    222 St. Louis Street, 9th Floor
      Baton Rouge, Louisiana   70802
24    Email: joseph@josephscott.com
25
```

```
1    APPEARANCES (Continued):

2

     For Louisiana State Police and Individual State
3        Police Troopers:

4    MESSRS. BURGLASS & TANKERSLEY
     Attorneys at Law
5    BY:  GREGORY FAHRENHOLT, ESQ.
     5213 Airline Drive
6    Metairie, Louisiana    70001-5602
     Email:  gfahrenholt@burglass.com

7

8

9    Reported By:  Raynel E. Schule
                   Certified Shorthand Reporter
10                 State of Louisiana

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          S T I P U L A T I O N

2               It is stipulated and agreed by and

3     among Counsel for the parties hereto that the

4     30(b)(6) Deposition of the CITY OF BATON ROUGE,

5     through its designated representative, SERGEANT

6     ORSCINI BEARD, II, is hereby being taken

7     pursuant to the Federal Rules of Civil Procedure

8     for all purposes in accordance with law;

9               That the formalities of reading and

10    signing are specifically waived;

11              That the formalities of sealing,

12    certification, and filing are hereby

13    specifically waived.

14              That all objections, save those as to

15    the form of the question and responsiveness of

16    the answer, are hereby reserved until such time

17    as this deposition or any part thereof is used

18    or sought to be used in evidence.

19                    * * * * *

20              Raynel E. Schule, Certified

21    Shorthand Reporter in and for the State of

22    Louisiana, officiated in administering the oath

23    to the witness.

24

25

```
 1                    PROCEEDINGS
 2               THE COURT REPORTER:
 3               Will counsel please identify
 4          themselves and their affiliations
 5          and also stipulate that by agreement
 6          of all parties this deposition is
 7          being held via videoconferencing,
 8          and there is no objection to the
 9          witness being sworn in remotely.
10            MR. MOST:
11               This is William Most on behalf of
12          the Imani Plaintiffs, and we so
13          stipulate and agree.
14               MR. CRAIG:
15               Agreed to by the Tennart, Smith,
16          and Batiste-Swilley Plaintiffs who
17          are represented today by myself, Jim
18          Craig and Hannah Lommers-Johnson.
19               MR. FAHRENHOLT:
20               Greg Fahrenholt on behalf of
21          Louisiana State Police, Defendants.
22          We agree to the stipulation.
23               MR. SCOTT:
24               Joseph Scott and Sarah Monsour,
25          Baton Rouge Parish Attorney's Office
```

1              on behalf of the City, Parish, Baton
2              Rouge Police Department, assorted
3              officials and individual defendants
4              in six protest cases.
5          SERGEANT ORSCINI BEARD, II, having
6      been first duly sworn by Raynel E. Schule,
7      Certified Shorthand Reporter, was examined
8      and testified on his oath as follows:
9                    EXAMINATION
10   BY MR. MOST:
11   Q.   All right.  Good morning, Sergeant.  My
12        name is William --
13   A.   Good morning.
14   Q.   Good morning.  My name is William Most.
15        I'm an attorney for the Plaintiffs in the
16        Imani case.  I have with me several other
17        attorneys for related cases, plaintiffs in
18        related cases, and Mr. Fahrenholt
19        represents State Police Defendants.  Could
20        you give us your full name and title for
21        the record.
22   A.   Yes.  Sergeant Orscini Beard, II.
23   Q.   Okay.  Sergeant, I -- I understand you're
24        suffering from a migraine right now.  If
25        there's anything I can do to make that

```
 1        easier on you, please let me know.  So if I
 2        --
 3   A.   No, I'm -- I'm -- I'm good.
 4   Q.   Okay.
 5   A.   I can get through this.
 6   Q.   Okay, but if any point, you get distracted
 7        and need me to repeat a question, that's
 8        fine.  If you want me to talk slower or
 9        talk faster, just let me know.  We'll make
10        this as -- as easy on you as -- as
11        possible, given the circumstances.
12   A.   I appreciate it.
13   Q.   All right.  Sergeant, have you ever given a
14        deposition before?
15   A.   Yes, sir.
16   Q.   Approximately how many depositions have you
17        given?
18   A.   I can't give you an approximate answer, but
19        I've done several.
20   Q.   Okay.  So you understand that your answers
21        here --
22             MR. MOST:
23             Oh, yes, Joe.
24             MR. SCOTT:
25             Mr. Lanser took care of the
```

```
 1              initial deposition of Sergeant
 2              Beard.  This is his second
 3              appearance in the 30(b)(6)
 4              deposition, so if that helps --
 5                   MR. MOST:
 6                   Okay.
 7                   MR. SCOTT:
 8                   -- clear the underbrush.
 9                   MR. MOST:
10                   Okay.  Yeah, then I can -- yeah,
11              that will clear up some issues.
12   BY MR. MOST:
13   Q.   Sergeant, you understand that your answers
14        here today have the same force as if we
15        were in a courtroom with a Judge and Jury?
16   A.   Yes, sir.
17   Q.   And is there anything today, whether it's
18        illness, migraine, medication, fatigue, or
19        anything else that would prevent you from
20        giving us true and complete answers and
21        your full attention today?
22   A.   Not at all.
23   Q.   Okay, and if you need to take a break at
24        any point, please just let us know.  We'll
25        take a break.  I will, however, ask you who
```

1      you talked to during the break even if it's

2      your attorneys, the contents of that

3      conversation, and any documents you

4      reviewed, all right?

5   A.   Yes, sir.

6   Q.   And if I ask a question that is unclear or

7      you don't understand the question, will you

8      agree to tell me that that's the case

9      rather than trying to answer it?

10  A.   Yes, sir.

11  Q.   Okay, and -- and just as the last time you

12     were deposed, you understand that today you

13     are giving the answers for the City of

14     Baton Rouge, and so when I ask a question

15     of you, it's a question to the City of

16     Baton Rouge, and when you give an answer,

17     it's the City of Bat -- it's an answer of

18     the City of Baton Rouge, agreed?

19  A.   Agreed.

20  Q.   Okay.  Sergeant, aside from talking to

21     attorneys, did you talk to anyone to

22     prepare for today's deposition?

23  A.   No, sir.

24  Q.   Okay, and I don't want to know about the

25     contents of your communications with

```
 1        attorneys, but did you talk to attorneys to
 2        prepare for today's deposition?
 3   A.   Yes, sir.
 4   Q.   For approximately how long just roughly did
 5        you talk to attorneys to prepare for
 6        today's deposition?
 7   A.   Maybe ten minutes prior to this deposition.
 8   Q.   Okay.
 9                MR. SCOTT:
10                We had some phone calls
11            yesterday.
12                THE WITNESS:
13                And I had several phone calls
14            yesterday.
15   BY MR. MOST:
16   Q.   And roughly yesterday how long did those
17        phone calls with attorneys last?
18   A.   10, 15 minutes.
19   Q.   Okay, and it -- it looks to me like there's
20        -- are there some documents on the table in
21        front of you?  There's, like, some white
22        spots in front of you.  Are those papers in
23        front of you?
24   A.   Yes, sir.
25   Q.   What -- what papers do you have in front of
```

1        you?

2   A.   The last time I made a deposition, I was

3        asked to research accountabilities from the

4        year of 2016 that mentioned anything about

5        the protests in Baton Rouge.

6   Q.   You were asked to research accountability?

7   A.   We have what we call accountabilities in

8        our office where it doesn't go in front of

9        Chief, the Deputy Chiefs for grievances.

10       It's basically documentation of a

11       complaint.

12  Q.   Okay.  So you have in front of you some

13       documentation about complaints from the

14       July 2016 protests?

15  A.   Well, I actually have one accountability,

16       and then I actually have some language from

17       the union contract as far as expungements,

18       old -- past expungements.

19                MR. MOST:

20                Okay.  Joe, have -- do we have --

21                THE COURT REPORTER:

22                As far as what?

23                THE WITNESS:

24                Past expungements.

25                THE COURT REPORTER:

1          Okay.

2          MR. MOST:

3          Joe, do we -- do we have those --

4     do plaintiffs counsel have those

5     documents that are in front of him?

6          MR. SCOTT:

7          You did not, but --

8          MR. MOST:

9          Okay.

10          MR. SCOTT:

11          -- I'm going to get them, and I

12     will produce them sometime in the

13     next 24 hours.

14          MR. MOST:

15          Sure, but could one of you take

16     them and -- and scan them and email

17     them to us right now so we can see

18     what he's looking at?

19          MS. MONSOUR:

20          He's going to need them.

21          MR. MOST:

22          Sure, but, I mean, we need to

23     know what he's looking at a

24     deposition so -- and we can start

25     with questions that don't address

```
 1              those documents while --
 2                   MR. SCOTT:
 3                   Sergeant Beard, don't break line
 4              of sight.
 5   BY MR. MOST:
 6   Q.   All right.  Well, we -- we can do some
 7        initial questions, and Sergeant, if you
 8        need those documents to answer any of my
 9        questions, we'll just move back to that
10        once they're back in front of you.
11   A.   Okay.
12   Q.   Sergeant, how long have you been a law
13        enforcement officer?
14   A.   20 years.
15   Q.   Okay, and what is your current role?
16   A.   I am supervisor in Internal Affairs
17        Division.
18   Q.   Okay, and your -- your 20 years as a law
19        enforcement officer, was that entirely with
20        Baton Rouge Police Department?
21   A.   Yes, sir.
22   Q.   Okay, and so you're here today to testify
23        about any Baton Rouge Police Department
24        investigations into any inaccurate names or
25        issues with Affidavits of Probable Cause
```

1       during the July 2016 protests.  Are you

2       prepared to testify about that topic?

3    A.   No, I'm not.  I wasn't aware that I would

4       have to go into details as far as names

5       about any of the protests from 2016.

6    Q.   All right.  Maybe I can rephrase.  My

7       understanding is that you're here to

8       testify about generally whether there was

9       any investigation into issues with

10       Affidavits of Probable Cause at the July

11       2016 protests, setting aside any specific

12       names.  Is that -- are you prepared to

13       testify about that?

14              MR. MOST:

15              Joe, do you -- you're raising

16           your hands.  Do you want to clarify

17           perhaps?

18              MR. SCOTT:

19              When Sergeant Beard testified the

20           first time, we went through

21           investigative techniques, areas,

22           issues relating to the training

23           academy, expungements.  The question

24           was raised, "Well, what are these

25           accountability forms," and on a

```
 1              number of these issues, Sergeant
 2              Beard said that he would have to
 3              research in order to provide
 4              accurate information, and he did
 5              research on expungements and
 6              accountability forms in 2016.
 7                   MR. MOST:
 8                   All right.  I mean, Joe, the
 9              email I sent you at 4:57 p.m. last
10              night said, "I understand that you
11              anticipate covering tomorrow:
12              Internal Affairs (re: any
13              investigation into affidavit of
14              probable cause issues," and you told
15              me this morning that appeared
16              accurate.  Is -- is Sergeant Beard
17              the -- the witness for that?
18                   MR. SCOTT:
19                   Sergeant Beard, if there were
20              complaints about preparation of
21              Affidavits of Probable Cause, would
22              it show up in the accountability
23              forms that you reviewed?
24                   THE WITNESS:
25                   Yes, sir.
```

```
 1                    MR. MOST:

 2                    Okay.

 3  BY MR. MOST:

 4  Q.   Okay.  I think that's helpful.  So Sergeant

 5       Beard, you're prepared to testify today

 6       about any investigations that flowed from

 7       the July 2016 protests, agreed?

 8  A.   Agreed.

 9  Q.   Okay.

10                    MR. MOST:

11                    And Sarah, did you email us those

12              documents?

13                    MR. MONSOUR:

14                    Not yet.  I'm --

15                    MR. MOST:

16                    Oh, you're doing it.  Okay.

17                    MS. MONSOUR:

18                    There are personal notes -- his

19              personal notes that I just -- I had

20              -- I hadn't seen them either, so I

21              need to -- and I need your email

22              address.  Joe is going to send it to

23              me.

24                    MR. MOST:

25                    Okay.
```

```
 1              MR. SCOTT:
 2              I'm trying to figure how to do
 3         that on this little bitty device.
 4              MR. MOST:
 5              Well, let's just go off the
 6         record briefly.
 7              (Off the record.)
 8   BY MR. MOST:
 9   Q.   All right.  Sergeant, do you know what an
10        Affidavit of Probable Cause is?
11   A.   It's the same -- I spent years in the
12        Criminal Division.  It's the same probable
13        cause that's used to make an arrest.
14   Q.   Yes, that's my understanding as well.  I'll
15        read you a quote from the Code of Criminal
16        Procedure, and you can let me know if it
17        reflects your understanding of what an
18        Affidavit of Probable Cause is, that is
19        Code of Criminal Procedure 385, quote, "An
20        Affidavit is a written accusation of a
21        crime made under oath and signed by the
22        affiant," end quote.  Is that your
23        understanding of what an Affidavit of
24        Probable Cause is?
25   A.   Yes, sir.
```

1    Q.    Okay, and so one of the elements there is
2          that it is signed by the affiant, agreed?
3    A.    Agreed.
4    Q.    Okay, and so an Affidavit of Probable Cause
5          has to be signed by the person whose name
6          appears on the affiant line, agreed?
7    A.    Agreed.
8    Q.    And so one officer can't sign another
9          officer's name to the affiant line on an
10         Affidavit of Probable Cause, agreed?
11   A.    Agreed.
12   Q.    If they were to do so, that would violate
13         BRPD's policy about falsification of
14         documents, agreed?
15   A.    Agreed.
16   Q.    Okay, and that would be a quite serious
17         matter if there was an officer or officers
18         who weer signing other officers' names to
19         Affidavits of Probable Cause without those
20         officers' knowledge, agreed?
21   A.    Agreed.
22   Q.    Okay, and that would be -- if Baton Rouge
23         Police Department was notified of that kind
24         of problem by an officer, that would be
25         cause for investigation, agreed?

```
 1   A.    Agreed.
 2   Q.    Okay.  That's because that kind of
 3         falsification of documents could be both an
 4         internal disciplinary matter as well as a
 5         potential criminal matter for
 6         investigation, agreed?
 7   A.    Agreed.
 8   Q.    Because an officer forging another
 9         officer's name on an Affidavit of Probable
10         Cause would be a crime, agreed?
11   A.    Agreed.
12   Q.    Sergeant, are you aware that -- that we
13         have heard testimony that multiple BRPD
14         officers have said someone else was signing
15         their names to Affidavits of Probable Cause
16         for the July 2016 protests?
17   A.    No, I was unaware.
18   Q.    Okay.  I'll pull up a document here.  Do
19         you -- this is "Exhibit H."  Do you see
20         that this -- these are responses to
21         discovery requests in the "Imani v. City of
22         Baton Rouge" case?
23   A.    Yes, sir.
24   Q.    Okay.  Let's go down to Page 8 of "Exhibit
25         H," and do you see that Officer Billy
```

1     Walker responds that he did not personally

2     sign the Affidavit of Probable Cause for

3     Raae Pollard?

4                    MR. SCOTT:

5                    William.

6                    MR. MOST:

7                    Yeah.

8                    MR. SCOTT:

9                    We have a bomb threat.

10                   MR. MOST:

11                   Okay.

12                   MR. SCOTT:

13                   We have been advised that we have

14            to evacuate the building.

15                   MR. MOST:

16                   Please evacuate.  We -- we will

17            suspend this.  Please take care of

18            yourselves and stay safe.

19            Let's go off the record.

20                   MS. MONSOUR:

21                   William, it's not emailed -- I

22            didn't do a copy and paste to

23            everybody's email addresses, but I

24            don't know.  I think I may have just

25            sent the document to you --

```
 1              MR. MOST:

 2              That's -- that's okay.

 3              MS. MONSOUR:

 4              -- from my tablet.

 5              MR. MOST:

 6              Just -- just take care of

 7         yourselves, be safe, and we will

 8         take care of all of this today.

 9         Everything else is secondary to your

10         safety.

11              (Break in proceedings.)

12              MR. MOST:

13              All right.  This is William Most.

14         It's -- it's 10:04 a.m., August

15         19th.  This deposition had to be

16         paused due to -- to a report of live

17         explosives in -- at 9000 Airline

18         Highway where the deposition was

19         taking place.  So we are going to

20         pause this deposition and seek an

21         extension of discovery, and

22         hopefully reconvene at a later date

23         if possible.  We'll close the

24         deposition at this time.

25              (Whereupon, the deposition was
```

```
 1              paused.)
 2
 3              C E R T I F I C A T E
 4         THIS CERTIFICATION IS VALID ONLY FOR
    A TRANSCRIPT ACCOMPANIED BY MY ORIGINAL
 5  SIGNATURE AND ORIGINAL REQUIRED SEAL ON THIS
    PAGE.
 6
            I, RAYNEL E. SCHULE, Certified Court
 7  Reporter, #77005, in good standing, in and for
    the State of Louisiana, as the officer before
 8  whom this testimony was taken, do hereby certify
    that SERGEANT ORSCINI BEARD, II, after having
 9  been duly sworn by me upon authority of R.S.
    37:2554, did testify as hereinbefore set forth
10  in the foregoing 22 pages; that this testimony
    was reported by me in stenotype reporting
11  method, was prepared and transcribed by me or
    under my personal direction and supervision, and
12  is a true and correct transcript to the best of
    my ability and understanding; that the
13  transcript has been prepared in compliance with
    transcript format guidelines required by statute
14  or by rules of the Board, that I have acted in
    compliance with the prohibition on contractual
15  relationships, as defined by Louisiana Code of
    Civil Procedure Article 1434 and in rules and
16  advisory opinions of the Board; that I am not of
    counsel, not related to counsel or to the
17  parties herein, nor am I otherwise interested in
    the outcome of this matter.
18
19
20  _____  _____
    Date                Raynel E. Schule, CSR
21                      Certified Shorthand Reporter
                        State of Louisiana
22
23
24
25
```