# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

**BLAIR IMANI, ET AL**             **CIVIL ACTION**

**VERSUS**            **NO.: 3:17-CV-439-JWD-EWD**

**CITY OF BATON ROUGE, ET AL**

### MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

**MAY IT PLEASE THE COURT**,

### *Summary of the Argument*

This case is set for a nine-day jury trial to begin on September 6, 2022. Extensive discovery has been undertaken over the course of five years of litigation. The instant Motion in Limine seeks to exclude or limit the plaintiffs' evidence as follows:

1. *Any testimony, evidence, or argument of unrelated alleged police misconduct.*

Defendants move to prohibit any mention, discussion, reference, argument, or testimony about other, non-related alleged police misconduct, including highly publicized incidents of alleged police brutality or misconduct. However, Defendants recognize that the parties need to provide the jury with context of the subject protest, and therefore, Defendants respectfully request that the Court *limit* evidence, testimony, commentary and/or discussion of the Alton Sterling incident and the Philando Castile incident, for the limited purpose of providing context.

2. *Expert testimony by Louisiana State Police Lieutenant John Clary. No objection to his fact testimony or lay opinions, but the disclosure was late and defective.*

LSP Lieutenant John Clary was identified as a non-retained expert witness by supplement to initial disclosures dated August 18, 2021, prior to the discovery cutoff, but past the cutoff to disclose identities and resumes of experts (ECF Doc. 274, Pg. 1, item 2.C). The disclosure likewise fails to conform with the requirements of the Federal Rules of Civil Procedure and related caselaw.

1

Defendants do not object to Lieutenant Clary's fact testimony, but to his status as an expert pursuant to FRE 701, et seq.

3. *Experts testifying as to the ultimate issues for the trier of fact.*

Plaintiffs timely identified and produced reports from two retained experts, Mr. Robert Pusins and Dr. Peter Kraska. Mr. Robert R. Pusins identifies himself as a "police practices and procedures expert," while Dr. Kraska's precise area of expertise is not as clear, he is a professor and extensive author on "police militarization." Both expert reports are dated May, 2021, prior to the extensive depositions taken for this case, and both expert reports expressly state elements of the alleged claims, impermissibly infringing on the finder of fact's duty to determine liability.

4. *Late-disclosed "supplemental damages discovery"*

As part of an effort at settlement negotiations in the fall of 2021, after the discovery cutoff of August 20, 2021, plaintiffs produced a variety of "supplemental damages discovery" (various documents, photos, etc.), and have continued to try and supplement in 2022. These documents were produced late, are of questionable authenticity, and were produced as evidence relating to settlement negotiations, which appears to run afoul of FRE 408.

5. *Testimony regarding treatment at East Baton Rouge Parish Prison, which is run by the Sheriff, who's out of the suit, and not under the control of the City/Parish.*

In tandem with No. 4, the plaintiffs reported various mistreatment at East Baton Rouge Parish Prison. Defendants do not dispute the fact of incarceration, and do not oppose a simple factual statement regarding duration of incarceration, but strongly suggest that application of the FRE 403 balancing test cuts against admissibility of testimony regarding conditions of confinement or acts by the Sheriff's Office. The risk of issue confusion, the prejudice to the remaining defendants, and misleading the jury strongly outweigh any probative value of evidence

based on treatment by the Sheriff's Office at East Baton Rouge Parish Prison, which is outside of the control of the remaining defendants.

> 6. Exclude the "30(b)(6) chart," as Lieutenant Polito is being called to testify, counsel agreed that there was a backlog of deposition transcripts, officers on scene who hadn't been identified, let alone interviewed, and a standing objection to the chart on the record.

The plaintiffs have listed, as exhibit 198 in the proposed pretrial order (ECF Doc. 354) the "30(b)(6) chart," derived from the deposition testimony of Lieutenant Chris Polito,[1] which was also used in support of plaintiff's motion for partial summary judgment.[2] Defense counsel objected to plaintiffs' counsel creating this chart during the deposition,[3] and had a colloquy with plaintiffs' counsel on the record where all counsel acknowledged that Lieutenant Polito had incomplete information to work with in answering the questions posed.

## *Law & Argument*

*Motions In Limine Generally*

The party objecting to the admission of evidence bears the burden of establishing the inadmissibility of that evidence.[4] "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

[1] ECF Doc. 292-2
[2] ECF Doc. 292-1
[3] ECF Doc. 292-2 at 17:8-19, 30:23-32:6, 35:25-36:12, 47:12-23.
[4] *Lyondell Chem. Co. v. Occidental Chem. Corp.,* 608 F.3d 284, 295 (5th Cir. 2010).

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). To be relevant, "information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The scope of discovery is not without limits, however, and the court may protect a party from responding to discovery when: (i) it is unreasonably cumulative or duplicative, or obtainable from some other less-burdensome source; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2).

*Necessity of Disclosure*

The plaintiff is required under Fed. R. Civ. P. 26(a)(1)(A), to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Additionally, "[p]ursuant to Rule 37 of the Federal Rules of Civil Procedure, a party who fails to provide information or identify a witness as required by Rule 26(a) or (e), 'is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially harmless or justified.'"[5]

### 1. *Any testimony, evidence, or argument of unrelated alleged police misconduct.*

Defendants move to prohibit any mention, discussion, reference, argument, or testimony about other, non-related alleged police misconduct, including highly publicized incidents of alleged police brutality or misconduct, such as the incidents involving Michael Brown, Laquan

---

[5] *Lafleur v. Leglue*, 16-254-BAJ-RLB, 2017 WL 2960541, at Pg. 6, citing *Painter v. Suire*, 2014 WL 4925522, at *2 (M.D. La. Sep. 30, 2014)

McDonald, Breona Taylor, the Black Lives Matter Movement, and any other alleged incidents. Defendants recognize that the parties need to provide the jury with some context of the subject protest, and therefore, Defendants respectfully request that the Court *limit* evidence, testimony, commentary and/or discussion of the Alton Sterling incident, and would submit that the facts established in the Joint Proposed Pretrial Order would suffice. In addition, Defendants respectfully request that the Court *limit* any evidence, commentary and/or discussion of the Philando Castile incident and allow only the basic date and time of the incident to be admitted, since both men tragically lost their lives within days of the subject protest.

These incidents have placed allegations of police misconduct in the public eye by way of extensive media coverage. The result is that law enforcement personnel are often depicted in an unfavorable and even hostile manner. Defendants do not condone any alleged misconduct and should not be forced to defend the conduct of others in this Court.

Further, comments and implied references regarding police misconduct in other unrelated cases have no probative value and are irrelevant to the issues presented in this case. Accordingly, Plaintiffs should be precluded from making any reference to any alleged police misconduct, including highly publicized incidents of such alleged misconduct either here in Baton Rouge or in other jurisdictions.

Courts have held that unrelated allegations and incidents of police misconduct possess minimal, if any, probative value while carrying a great risk of prejudice to police officers. *See, e.g., Johnson v. City of Thibodaux,* No. CV 14-2369, 2016 WL 9412703, at *1 (E.D. La. Sept. 27, 2016) ("Considering the prejudicial nature and irrelevance of any publicized police brutality or misconduct, any mention of the Black Lives Matter movement or any other nationally publicized instance of alleged police brutality or misconduct by Plaintiffs' counsel, Plaintiffs, or any of

5

Plaintiffs' witnesses is prohibited); *Saunders v. City of Chicago,* 320 F.Supp. 2d 735, 740 (N.D. Ill. 2004) (granting defendants' motion to bar testimony or evidence regarding other cases of police misconduct because "this evidence is marginally probative at best, and it is highly inflammatory and prejudicial."); *Ochana v. Flores,* 199 F. Supp. 2d 817, 831 (N.D. Ill. 2002), *aff'd,* 347 F.3d 266 (7th Cir. 2003) (finding in Section 1983 action against police officers alleging that plaintiff was arrested and his vehicle was searched without probable cause or a warrant that any reference to recent publicized events concerning allegations of police misconduct would be unduly prejudicial because it would distract the jury's attention from the conduct at issue); *Maldonado v. Stinar,* 08 C 1954, 2010 *WL* 3075680, at *4 (N.D. Ill. Aug. 5, 2010)[2] (finding that "evidence of police conduct unrelated to the Defendant Officers in this case has only minimal probative value and is highly inflammatory and prejudicial. Outside the voir dire context, such evidence is barred.")

References to other allegations of police misconduct during this trial can only serve to inflame the Jury against the police in general, and against the Defendants in this particular case.

Although Rule 404(b) permits the admission of evidence of other acts, if such evidence is directed toward establishing a matter in issue other than a defendant's propensity to commit the act charged, Plaintiffs will not be able to satisfy its burden under Rule 404(b) of explicitly articulating which exception to the general rule applies. *U.S. v. Zapata*, 871 F.2d 616, 620-21 (7th Cir. 1989). Moreover, even if there were some probative value in admitting this evidence, that probative value would be overwhelmingly outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; see also, *Berkovich v. Hicks*, 1018 922 F.2d 1018, 1022 (2nd Cir.1991) (holding that the admission of evidence of other complaints against officers was irrelevant and overwhelmingly prejudicial to the

defendant); *Lataille v. Ponte*, 754 F.2d 33, 34 (1st Cir. 1985) (prejudicial error to admit past disciplinary record).

## *2. Expert testimony by Louisiana State Police Lieutenant John Clary. No objection to his fact testimony or lay opinions, but the disclosure was late and defective.*

Under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, retained experts must provide comprehensive expert reports. But non-retained experts, such as treating physicians, are typically "subject to a separate, less stringent disclosure regime than their retained counterparts."[6] Under Rule 26(a)(2)(C), the party propounding the testimony of a non-retained expert, such as a treating physician, must provide a disclosure that states "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify."

Exclusion of expert testimony is evaluated on a four-factor test in the Fifth Circuit. The questions are: "(1) the importance of the witnesses' testimony; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order."[7]

LSP Lieutenant John Clary was identified as a non-retained expert witness by supplement to initial disclosures dated August 18, 2021, prior to the discovery cutoff, but past the cutoff to disclose identities and resumes of experts (ECF Doc. 274, Pg. 1, item 2.C). The disclosure likewise fails to conform with the requirements of the Federal Rules of Civil Procedure and related caselaw, in that it did not include "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to

---

[6] *Sheppard v. Liberty Mutual Ins. Co.,* No. 16-CV-2401, 2017 WL 467092, at *1 (E.D. La. Feb. 2, 2017).
[7] *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.,* 73 F.3d 546, 572 (5th Cir. 1996)

which the witness is expected to testify." Efforts to clarify the area of expertise and anticipated facts and opinions were unsuccessful Again, defendants do not object to Lieutenant Clary's fact testimony, but to his status as an expert pursuant to FRE 701, et seq.

*3. Experts testifying as to the ultimate issues for the trier of fact.*

Mr. Robert R. Pusins identifies himself as a "police practices and procedures expert," which is likewise reflected in the letterhead of his report "Robert R. Pusins & Associates, Inc. Police Practices & Procedures Experts." Mr. Pusins' report uniformly states that as to each plaintiff, the officers lacked probable cause to arrest, excessive force was used as to each plaintiff, all defendants failed to intervene, and so on, dictating to the jury what he believes the verdict should be.

Dr. Peter Kraska states that it is his opinion "that the following policy decisions, policy failures, and training failures resulted in the inappropriate and unlawful use-of-force, arrest, processing, and imprisonment of the plaintiffs," in particular that (1) use of Mobile Field Force and Special Response Team units was inappropriate, (2) mass arrest of protesters for behavior unrelated to the reasons stated in the APCs was improper, (3) multiple transfers of detainees and use of pre-printed APCs was improper "even though there is ample evidence the arrestees did not engage in these behaviors," (4) BRPD improperly trained for categorization of public assembly under the "Miami Model," and (5) BRPD's "suspension" of use of force policies in the field by not documenting them properly. Dr. Kraska's opinions are based on his "expertise in the areas of policing protests, police militarization, and police use-of-force," though his C.V. lists only one position in law enforcement, as a juvenile probation officer, for a year or less, while every other position is in academia. As with Mr. Pusins, Dr. Kraska's opinions appear to be an effort to dictate to the jury what the verdict must be.

While FRE 704(a) provides that "An opinion is not objectionable just because it embraces an ultimate issue," but the Court must determine if the proposed testimony impermissibly invades the province of the jury or creates a potential conflict with the jury instructions. The 5th Circuit explains:

> Fed.R.Evid. 704 abolishes the per se rule against testimony regarding ultimate issues of fact. *United States v. Grote*, 632 F.2d 387, 390 (5th Cir.1980), cert. denied, 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981); *United States v. Miller*, 600 F.2d 498, 500 (5th Cir.), cert. denied, 444 U.S. 955, 100 S.Ct. 434, 62 L.Ed.2d 327 (1979). The rule provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." The rule was enacted to change the old view that the giving an opinion on an ultimate issue would "usurp the function" or "invade the province" of the jury. As the notes to Rule 704 point out, the traditional view was unduly restrictive, difficult of application, and generally served only to deprive the trier of fact of useful information.
>
> Rule 704, however, does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions. *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir.1981), cert. denied, 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir.1977). See McCormick, Evidence § 12 (1972). The task of separating impermissible questions which call for overbroad or legal responses from permissible questions is not a facile one. The example given in the Advisory Committee Notes to Rule 704 is helpful. The question "Did T have capacity to make a will?" should be excluded. The question "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" is permissible. The first question is phrased in such broad terms that it could as readily elicit a legal as well as a fact based response. A direct response, whether it be negative or affirmative, would supply the jury with no information other than the expert's view of how its verdict should read. Moreover, allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.
> *Owen v. Kerr-McGee Corp.*, 698 F.2d 236 (5th Cir. 1983) at 239-240

This may be an issue to be resolved by appropriate jury instructions, such that the jury is aware that even if an "expert" gives an opinion, the jury still has to determine the facts, and that expert opinions are only valid to the extent that "(a) the expert's scientific, technical, or other

9

specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." (FRE 702(a)) However, defendants suggest that giving Dr. Kraska and Mr. Pusins carte blanche to opine as to the elements of the alleged torts is inappropriate, and must be addressed, preferably prior to trial, rather than by way of jury instructions, by which time, the jury will have been bombarded with these opinions.

*4. Late-disclosed "supplemental damages discovery"*

During the fall, plaintiffs requested a settlement conference with the Magistrate Judge, and defendants participated. ECF Doc. 313, minute entry, October 18, 2021, provided that "Plaintiffs shall provide any additional documentation regarding damages only to the City/Parish Defendants no later than 11/1/2021." While outside of the discovery cutoff of August 20, 2021, these materials were produced as part of settlement negotiations, and defendants suggest that they are inadmissible, both for late production in violation of Rule 16, but also as settlement negotiation evidence under FRE 408. In particular, FRE 408(a)(2) provides that:

> (a) PROHIBITED USES. Evidence of the following is not admissible— on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (2) conduct or a statement made during compromise negotiations about the claim— except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Defendants suggest that these documents, photographs, and communications are being presented to prove the validity or amount of a disputed claim. Their production through settlement negotiations likewise makes them statements made during compromise negotiations about the claim, placing the materials squarely in the prohibition of FRE 408.

These materials are untimely, almost all them being produced in November, 2021. Those documents include:

- Finn Phoenix's mental health evaluation documents, being seven cell phone photographs of documents dated May, 2017-August, 2017, and a letter from a social worker regarding treatment from 2016-2018.
- Raae Pollard's February 2017 text message about being delayed due to "immigration interrogation/advisory// a delayed flight."
- Blair Imani claims that her arrest in 2016 caused her to be ineligible for a home loan in February 2019, and produced an email by a third party, relation unknown, to that effect.
- Karen Savage claimed to have gotten therapy between August 2019 and January 2020, and provided billing records, but no clinical notes to indicate why she was in therapy, or a diagnosis.
- Leah Fishbein provided billing records regarding treatment by a physical therapist in October-December, 2016, but nothing indicating what the injury was or how it was received.
- Nadia Salazar Sandi produced a December, 2019, letter, purporting to be from the Montgomery County (Maryland) Public Schools system, stating that she needed to "follow up" because of her arrest record, such that she was denied employment.

All of these were produced in relation to attempts at mediation with the Magistrate Judge in October and November, 2021. No reasons were offered as to why the materials were not produced prior to the discovery cutoff, when the plaintiffs might have been deposed. In response to interrogatories, each plaintiff referred the City to the allegations of the Complaint, and claimed to have suffered other damages to "include emotional distress and trauma damages that are not itemizable." This is inadequate notice under FRCP 26, and the late "supplemental damages" which could have been provided in a timely manner were not.

***5. Testimony regarding treatment at East Baton Rouge Parish Prison, which is run by the Sheriff, who's out of the suit, and not under the control of the City/Parish.***

Defendants move this Court to bar any argument or comments concerning any duty or failure to provide medical care by the Defendants or individuals at EBRPP because such arguments are irrelevant and unduly prejudicial. Plaintiff failed to properly and timely allege any such claim against Defendants. Rather, Plaintiffs complain that EBRPP personnel did not provide them with medical treatment, or treated them roughly, or exposed them to pepper spray,[8] and based on their (limited) discovery responses, may have additional specific complaints that were not properly disclosed prior to trial. Plaintiff Reference to these unsupported allegations is facially and unfairly prejudicial to Defendants because they are not the subject of the allegations, nor were they ever made aware that such a claim existed. Moreover, such argument and testimony is highly likely to confuse the jury because the Sherriff's Office is not a party to this litigation (ECF Doc. 231). Plaintiffs should be barred from testifying or arguing that Defendants or Sherriff's Office personnel failed to provide medical care to Plaintiffs or otherwise caused injuries to Plaintiffs. Defendants do not dispute the fact of incarceration, and do not oppose a simple factual statement regarding duration of incarceration, but strongly suggest that application of the FRE 403 balancing test cuts against admissibility of testimony regarding conditions of confinement or acts by the Sheriff's Office. The risk of issue confusion, the prejudice to the remaining defendants, and misleading the jury strongly outweigh any probative value of evidence based on treatment by the Sheriff's Office at East Baton Rouge Parish Prison, which is outside of the control of the remaining defendants.

---

[8] Tammy and Alexus Cheney, Complaint (ECF Doc. 189-1) Paragraphs 152-155, 210-211, Antonio Castanon-Luna and Nadia Salazar-Sandi, Complaint (ECF Doc. 189-1) Paragraphs 173-178, 213, Soni Nichols, Complaint (ECF Doc. 189-1) Paragraph 205, Karen Savage, Complaint (ECF Doc. 189-1) Paragraphs 229-230, Cherri Foytlin, Complaint (ECF Doc. 189-1) Paragraph 240, Finn Phoenix, Complaint (ECF Doc. 189-1) Paragraph 248.

***6. Exclude the "30(b)(6) chart," as Lieutenant Polito is being called to testify, counsel agreed that there was a backlog of deposition transcripts, officers on scene who hadn't been identified, let alone interviewed, and a standing objection to the chart on the record.***

The plaintiffs have listed, as exhibit 198 in the proposed pretrial order (ECF Doc. 354) the "30(b)(6) chart," derived from the deposition testimony of Lieutenant Chris Polito,[9] which was also used in support of plaintiff's motion for partial summary judgment.[10] Defense counsel objected to plaintiffs' counsel creating this chart during the deposition,[11] and had a colloquy with plaintiffs' counsel on the record where all counsel acknowledged that Lieutenant Polito had incomplete information to work with in answering the questions posed.

> MR. SCOTT: Of course, we have a transcript backlog. We've agreed to reserve some amendment when those transcripts come through, because that would also be known to the City, but I just don't have it in a format that I can isolate at the moment.
> MR. MOST: Sure. Just to be clear, Joe, I'm not agreeing in advance to any amendment to the City's testimony, but I'm certainly willing to meet and confer, because **I want things to be as accurate as possible**.
> MR. SCOTT: Of course.
> MR. MOST: All right. Then, I think that's all the questions I have for you. I'm going to pause the recording, and we can go off the record.
> (ECF Doc. 292-2 at 52:19-53:15, emphasis added.)

Rather than agreeing to supplement the record, or correct testimony that was missed, plaintiffs' counsel has filed a Motion in Limine (ECF Doc. 348) seeking to bar accurate testimony as to what the City knows now or could have known in August, 2021, but for a backlog of deposition transcripts. Not every defendant was deposed, and further depositions conducted in related cases gave defense counsel additional information relevant to the claims in *Imani*.

The City believes that the information available at the time of trial is the most accurate compilation of data for the City's representative. The Chart was inaccurate at the time it was composed, leaving out statements in depositions that hadn't been transcribed at the time, and which

---

[9] ECF Doc. 292-2
[10] ECF Doc. 292-1
[11] ECF Doc. 292-2 at 17:8-19, 30:23-32:6, 35:25-36:12, 47:12-23.

had been defended by another attorney in the office, such that the attorney defending the 30(b)(6) deposition didn't have knowledge of the statements. Additional interviews and review of exhibits has allowed the City to identify more witnesses with relevant information, and officers who were deposed for *Imani*, but late, including former officers Nicholas Collins and Richard McCloskey, testified about July 10, 2016, at the behest of plaintiffs' counsel. To exclude their testimony, in particular, would be grossly unfair to the defendants.

## Conclusion

For the foregoing reasons, Defendants respectfully request that the foregoing Omnibus Motion in Limine be granted and Plaintiffs be prohibited from, or limited in, introducing evidence, testimony or argument as set forth above.

**RESPECTFULLY SUBMITTED**:

**By Attorneys:
Anderson O. "Andy" Dotson
Parish Attorney**

**/s/ Joseph K. Scott, III
Joseph K. Scott, III (#28223)
Sarah S. Monsour (#30957)
A. Gregory Rome (#21062)
222 St. Louis Street, 9th Floor
Baton Rouge, LA 70802
Telephone: (225) 389-3114
Facsimile: (225) 389-8736
Email:** jkscott@brla.gov
**Email**: ssmonsour@brla.gov

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BLAIR IMANI, ET AL** | **CIVIL ACTION** |
| **VERSUS** | **NO.: 3:17-CV-439-JWD-EWD** |
| **CITY OF BATON ROUGE, ET AL** | |

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing *Memorandum in Support of Motion in Limine* was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Notice will be mailed to any party or counsel not participating in the Court's CM/ECF system by this date depositing same in the United States Mail, first class postage prepaid, and properly addressed.

    Baton Rouge, Louisiana this **4th** day of **August,** 2021.

                               /s/ Joseph K. Scott, III
                                 Joseph K. Scott III